DARIN SNYDER (CA S.B. #136003)
dsnyder@omm.com
LUANN L. SIMMONS (CA S.B. #203526)
lsimmons@omm.com
MARK LIANG (CA S.B. # 278487)
mliang@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:    +1 415 984 8700

*Attorneys for Plaintiff*
*GOOGLE LLC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>            Plaintiff,<br><br>v.<br><br>AGIS HOLDINGS, INC., ADVANCED GROUND INFORMATION SYSTEMS, INC., AND AGIS SOFTWARE DEVELOPMENT LLC,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Google LLC ("Google") brings this action for declaratory judgment against Defendants AGIS Holdings, Inc. ("AGIS Holdings"), Advanced Ground Information Systems, Inc. ("AGIS, Inc."), and AGIS Software Development LLC ("AGIS Software") (collectively "AGIS" or "AGIS Entities") and alleges:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment of non-infringement, invalidity, and unenforceability of U.S. Patent No. 8,213,970 ("'970 Patent") against AGIS pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the patent laws of the United States, 35 U.S.C. § 100 et seq., and for other relief the Court deems just and proper.

2.      Google requests this relief because AGIS has asserted in multiple cases that Google and others infringe the '970 Patent based on Google's Find My Device ("FMD") application.

3.      In 2017, AGIS asserted infringement of the '970 Patent based on FMD in cases filed in the Eastern District of Texas ("EDTX"), against Huawei, LG, ZTE, and HTC.  *See AGIS Software Development LLC v. ZTE Corp.*, 2:17-cv-00517 (E.D. Tex.); *AGIS Software Development LLC v. LG Elecs. Inc..*, 2:17-cv-00515 (E.D. Tex.); *AGIS Software Development LLC v. HTC Corp.*, 2:17-cv-00514 (E.D. Tex.); *AGIS Software Development LLC v. Huawei Device USA Inc.*, 2:17-cv-00513 (E.D. Tex.).  As part of those actions, AGIS served a subpoena to Google seeking discovery relating to FMD.

4.      In 2019, AGIS filed a complaint against Google in the Eastern District of Texas ("EDTX") asserting, among other claims, the '970 Patent against FMD.  *AGIS Software Development LLC v. Google LLC*, EDTX, No. 2:19-CV-00361-JRG ("AGIS I").  While AGIS I was pending, AGIS amended the claims of the '970 Patent to overcome prior art asserted during an *ex parte* reexamination ("EPR") of the patent.  After the EPR proceedings concluded, Google filed a Rule 12(b)(1) motion to dismiss AGIS's claims regarding the '970 Patent for lack of subject matter jurisdiction because AGIS had substantively amended the patent's asserted claims to avoid prior art.  Before the EDTX court resolved that motion, the Federal Circuit ordered the case transferred to the Northern District of California ("NDCA").  *In re Google LLC*, No. 2022-

COMPLAINT FOR DECLARATORY JUDGMENT

1    140-42, 2022 WL 1613192, at *1 (Fed. Cir. May 23, 2022).

2        5.    The case was assigned to Judge Beth Labson Freeman in this District.  *AGIS*

3    *Software Development LLC v. Google LLC*, NDCA, No. 5:22-CV-04826-BLF ("the NDCA

4    Case").  Google then refiled in this District its motion to dismiss the '970 Patent for lack of

5    subject matter jurisdiction.  In response, AGIS dismissed the '970 Patent with prejudice.  *See*

6    NDCA Case, Dkts. 437, 438.  The remainder of the NDCA Case remains pending before Judge

7    Freeman.

8        6.    Before AGIS agreed to dismiss the '970 Patent with prejudice from the NDCA

9    case, it filed a duplicative action against Google in the Western District of Texas, asserting the

10   amended claims of the '970 Patent against the same Google FMD application.  *AGIS Software*

11   *Development LLC v. Google LLC*, No. 6:23-CV-00160-DC-DTG ("the WDTX Case").

12       7.    On April 4, 2023, the WDTX granted Google's unopposed motion to stay the

13   WDTX Case.  *See* WDTX Case, Dkt. 11.  As stated in the unopposed motion to stay, AGIS

14   agreed to transfer the WDTX Case to this District following the stay:  "[t]he parties have agreed

15   that if and after the requested stay has been lifted, AGIS will not oppose a motion by Google to

16   transfer this case to the Northern District of California following the stay."  *See* WDTX Case,

17   Dkt. 10 at 3 n.1.

18       8.    On July 20, 2023, while the case was still stayed, AGIS voluntarily dismissed the

19   WDTX Case without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  *See*

20   WDTX Case, Dkt. 12.

21       9.    Google denies that it has infringed or is infringing any claims of the '970 Patent,

22   denies that any claim of the '970 Patent is valid or enforceable, and denies that AGIS can assert

23   any claim of the '970 Patent against Google.

24       10.   An actual and justiciable controversy therefore exists under 28 U.S.C. §§ 2201-

25   2202 between Google and AGIS regarding the '970 Patent.

26                           **THE PARTIES**

27       11.   Plaintiff Google LLC is a subsidiary of Alphabet Inc. with its principal place of

28   business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

COMPLAINT FOR DECLARATORY
JUDGMENT

12. According to Florida public records, Defendant AGIS Holdings, Inc. is organized and existing under the laws of the State of Florida, and maintains its principal place of business at 92 Lighthouse Drive, Jupiter, FL 33469.

13. According to Florida public records, Defendant AGIS, Inc. is organized and existing under the laws of  the State of Florida, and maintains its principal place of business at 92 Lighthouse Drive, Jupiter, FL 33469.

14. On information and belief, Defendant AGIS Software is an agent and alter ego of AGIS, Inc.  According to AGIS Software's allegations in another litigation between the parties, AGIS software is a Texas limited liability company, having its principal place of business at 100 W. Houston Street, Marshall, Texas 75670.  Exhibit K ¶ 1.

## JURISDICTION AND VENUE

15. This is a declaratory judgment action for patent non-infringement, invalidity, and unenforceability arising under the patent laws of the United States, Title 35, United States Code, Section 100 *et seq*.  This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

### I.      AGIS Accused Google of Infringing the '970 Patent Based on FMD

16. AGIS asserted the '970 Patent against FMD and Google in AGIS I, which was transferred to the NDCA and became the NDCA Case, in International Trade Commission ("ITC") Investigation No. 337-TA-1347 ("ITC Action"), and in the WDTX Case.  AGIS dismissed its '970 Claims from the NDCA case and voluntarily dismissed the WDTX case.

### II.     Google Seeks Declaratory Judgments That It Does Not Infringe The '970 Patent and That The '970 Patent Is Invalid and Unenforceable

17. Google denies that it infringes or has infringed the '970 Patent through the making, using, distributing, sale, offering for sale, exportation, or importation of FMD or any related services for FMD or through the making, using, distributing, sale, offering for sale, exportation, or importation of devices that a may be configured to run FMD.

18. AGIS's infringement allegations, asserted in related actions, threaten actual and imminent injury to Google that can be redressed by judicial relief and warrants the issue of a

COMPLAINT FOR DECLARATORY
JUDGMENT

declaratory judgment, under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*.

19.     An actual and justiciable controversy with respect to the '970 Patent exists between Google and AGIS Software, and between Google and AGIS Inc., and AGIS Holdings under an alter ego theory.

**III.     AGIS Software is Subject to the Specific Jurisdiction of This Court**

20.     AGIS Software is subject to this Court's specific jurisdiction, pursuant to due process and/or the California Long Arm Statute based on: (1) AGIS's agreement in the WDTX Case to transfer the very dispute that is the subject of this declaratory judgment action to the NDCA; (2) the activities of AGIS over a long period of time purposefully directed at the state of California, including at residents of this state; (3) AGIS having over a long period of time performed purposeful acts intended to harm residents of the state of California; (4) AGIS having engaged in business-related activities over a long period of time that are directed to customers and potential customers in the state of California such that AGIS has purposefully availed itself of the privilege of doing business in this state; and (5) the claims asserted herein arise out of or relate to activities by AGIS within and directed at this forum.  Further, the assertions of personal jurisdiction are reasonable and fair.

**A.     AGIS Software Purposefully Directed Its Patent Licensing Activities to California Companies Subjecting It To Specific Jurisdiction Under *Trimble***

21.     AGIS Software is a patent licensing company that licenses its patent portfolio, including the '970 Patent.

22.     AGIS Software has no employees.

23.     AGIS Software's principal source of revenue is from patent licenses with California companies and other companies operating in the State of California.

24.     AGIS Software or its predecessor-in-interest has taken purposeful steps to enforce the '970 Patent and/or obtain licenses to the '970 Patent and/or related patents with companies having principal places of business and operations in this judicial district, including Lyft, Apple Inc. ("Apple"), WhatsApp LLC ("WhatsApp"), Facebook, Inc. ("Facebook"), Uber Technologies, Inc. d/b/a UBER ("Uber"), and Life360, Inc. ("Life360"), and with companies or their affiliates

COMPLAINT FOR DECLARATORY
JUDGMENT

1    having operations and offices in the State of California, including ZTE (USA) Inc. ("ZTE"), HTC

2    Corporation ("HTC"), T-Mobile US, Inc. ("TMobile"), Huawei Device USA Inc. ("Huawei"), LG

3    Electronics, Inc. ("LG"), and Samsung Electronics America, Inc ("Samsung"), and Smith Micro

4    Software ("Smith Micro").

5           25.    On information and belief, AGIS Software or its predecessor-in-interest has taken

6    purposeful steps to enforce the '970 Patent and/or obtain licenses to the '970 Patent and/or related

7    patents with Smith Micro, a company having operations and offices in the State of California.

8           26.    AGIS Software or its predecessor-in-interest alleged infringement of the '970

9    Patent and/or related patents through communications directed at companies with principal places

10   of business in this judicial district, including Google, Facebook, and Life360.

11          27.    AGIS Software or its predecessor-in-interest enforced the '970 Patent and/or

12   related patents against companies with principal places of business in this judicial district,

13   including Lyft, Google, Apple, WhatsApp, Uber, Life360, and against companies or their

14   affiliates having operations and offices in the State of California, including ZTE, HTC, T-Mobile,

15   Huawei, LG, and Samsung.

16          28.    On information and belief, AGIS Software negotiated a license agreement

17   involving the '970 Patent and/or related patents through communications with Smith Micro, a

18   company having operations and offices in the State of California.

19          29.    AGIS Software or its predecessor-in-interest have negotiated and communicated

20   with Google in an attempt to enter into license agreements for the '970 Patent and/or related

21   patents.

22          30.    AGIS Software's communications, including through telephone, mail, and/or other

23   means, with companies having principal places of business, offices, and/or operations in the State

24   of California to enforce and to negotiate licenses the '970 Patent and/or related patents creates

25   specific personal jurisdiction over AGIS Software.  *See Trimble Inc. v. PerDiemCo LLC*, 997

26   F.3d 1147, 1155 (Fed. Cir. 2021).

27          31.    AGIS Software's non-exclusive licenses to the '970 Patent with companies having

28   principal places of business, offices, and operations in the State of California are sufficiently

COMPLAINT FOR DECLARATORY
JUDGMENT

1   related to this declaratory judgment action concerning the same patents to support a finding of

2   specific jurisdiction. *Id.* at 1156.

3       **i.**  **AGIS Entities' Past License With Apple and Related Negotiations**

4      32.  On June 21, 2017, AGIS Software sued Apple, a California corporation with its

5   principal place of business in this District in Cupertino, California, alleging infringement of

6   the '970 Patent and other patents related to the '970 Patent. *See AGIS Software Development LLC*

7   *v. Apple Inc.*, Civil Action No. 2:17-cv-00516 (E.D. Tex.), Dkt. 1 ¶¶ 6-9, 18, 27, 41, 55.

8      33.  On information and belief, Apple currently has or previously had headquarters at 1

9   Apple Park Way Cupertino, California 95014.

10     34.  On information and belief, in or around March 2019, AGIS Software, AGIS, Inc.,

11  and/or AGIS Holdings entered into a license agreement with Apple ("Apple License") covering

12  all patents and patent applications assigned to, owned by, or controlled by the AGIS Entities,

13  including the '970 Patent.

14     35.  On information and belief, AGIS Software negotiated, including through

15  numerous written email and/or other communications, with Apple to obtain the Apple License.

16      **ii.**  **AGIS Software's Patent License With Huawei and Related Negotiations**

17     36.  On June 21, 2017, AGIS Software sued Huawei Device USA Inc., Huawei

18  Technologies USA Inc., and Huawei Technologies Co., Ltd. alleging infringement of patents,

19  including the '970 Patent. *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, Civil Action No.

20  2:17-cv-00513 (E.D. Tex.), Dkt. 1 ¶¶ 8-11, 20, 29, 42, 55.

21     37.  On information and belief, Huawei currently has or previously had an affiliate

22  office in California.

23     38.  On information and belief, in or around March 2019, AGIS Software entered into a

24  license agreement with Huawei ("Huawei License") covering all patents and patent applications

25  owned or controlled by AGIS Software or its affiliates.

26     39.  On information and belief, AGIS Software negotiated, including through

27  numerous written email and/or other communications, with Huawei to obtain the Huawei

28  License.

- 7 -

COMPLAINT FOR DECLARATORY
JUDGMENT

### iii.    AGIS Software Patent License With HTC and Related Negotiations

40.    On June 21, 2017, AGIS Software sued HTC Corporation alleging infringement of patents, including the '970 Patent. *AGIS Software Dev. LLC v. HTC Corp.*, Civil Action No. 2:17-cv-00514 (E.D. Tex.), Dkt. 1 ¶¶ 6-9, 18, 27, 40, 53.

41.    On information and belief, HTC currently has or previously had an affiliate office in California.

42.    On information and belief, in or around July of 2019, AGIS Software entered into a license agreement with HTC ("HTC License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.

43.    On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with HTC to obtain the HTC License.

### iv.    AGIS Software Patent License With LG and Related Negotiations

44.    On June 21, 2017, AGIS Software sued LG Electronics, Inc. alleging infringement of patents, including the '970 Patent. *AGIS Software Development LLC v. LG Electronics, Inc.*, Civil Action No. 2:17-cv-00515 (E.D. Tex.), Dkt. 1 ¶¶ 6-9, 18, 27, 40, 53.

45.    On information and belief, LG currently has or previously had an affiliate office in California.

46.    On information and belief, in or around July 2019, AGIS Software entered into a license agreement with LG ("LG License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.

47.    On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with LG to obtain the LG License.

### v.    AGIS Software Patent License With ZTE and Related Negotiations

48.    On June 21, 2017, AGIS Software sued ZTE Corporation and ZTE (TX) Inc. alleging infringement of patents, including the '970 Patent. *AGIS Software Dev. LLC v. ZTE Corp. et al.*, No. 2:17-cv-00517-JRG (E.D. Tex.), Dkt. 1 ¶¶ 7-10, 19, 28, 41 54.

49.    On October 17, 2017, AGIS Software filed an amended complaint, adding ZTE (USA) Inc. as a defendant to this litigation and alleging infringement of an additional related

COMPLAINT FOR DECLARATORY JUDGMENT

patent, the '829 patent. *AGIS Software Dev. LLC v. ZTE Corp., et al.*, No. 2:17-cv-00517-JRG (E.D. Tex.), Dkt. 32  ¶¶ 3 & 73.

50.      On information and belief, ZTE or a ZTE affiliate currently has or previously had an office located in California.

51.      On information and belief, in or around October 2019, AGIS Software entered into a license agreement with ZTE ("ZTE License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.

52.      On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with ZTE to obtain the ZTE License.

### vi.      AGIS Software Patent License with WhatsApp and Facebook and Related Negotiations

53.      On January 29, 2021, AGIS Software sued WhatsApp, a corporation having its principal place of business in this District in Menlo Park, California, alleging infringement of patents related to the '970 Patent. *See AGIS Software Dev. LLC v. WhatsApp, Inc.*, No. 2:21-cv-00029 (E.D. Tex.), Dkt. 1 ¶¶ 7-12, 21, 40, 59, 78, 97, 116.

54.      On information and belief, WhatsApp currently has or previously had an office in California.

55.      In or around September 2021, AGIS Software entered into a license agreement with WhatsApp and Facebook ("WhatsApp/Facebook License") covering all patents and patent applications held or controlled by AGIS Software, including the '970 Patent.

56.      On information and belief, Facebook currently has or previously had an office in California.

57.      On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with WhatsApp and/or Facebook to obtain the WhatsApp/Facebook License.

### vii.      AGIS Software Patent License With Uber and Related Negotiations

58.      On January 29, 2021, AGIS Software sued Uber alleging infringement of the '970 Patent. *AGIS Software Dev. LLC v. Uber Techs. Inc., d/b/a Uber*, No. 2:21-cv-00026 (E.D. Tex.),

COMPLAINT FOR DECLARATORY JUDGMENT

Dkt. 1 ¶¶ 18-22, 30, 46, 62, 77, 95.

59.     On information and belief, Uber currently has or previously had an office in California.

60.     On information and belief, in or around March of 2022, AGIS Software entered into a license agreement with Uber ("Uber License") covering all patents and patent applications held or controlled by AGIS Software, including the '970 Patent.

61.     On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with Uber to obtain the Uber License.

### viii.     AGIS Software Patent License With T-Mobile and Related Negotiations

62.     On March 3, 2021, AGIS Software sued T-Mobile alleging infringement of patents related to the '970 Patent. *AGIS Software Dev. LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-00072 (E.D. Tex.), Dkt. 1 ¶¶ 7-12, 24, 46, 67, 98, 120, 147.

63.     On information and belief, T-Mobile or a T-Mobile affiliate currently has or previously had an office in California.

64.     On information and belief, in or around November of 2021, AGIS Software entered into a license agreement with T-Mobile ("T-Mobile License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.

65.     On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with T-Mobile to obtain the -Mobile License.

### ix.     AGIS Software Patent License with Smith Micro and Related Negotiations

66.     On May 17, 2021, Smith Micro sued AGIS Software for a declaratory judgment that Smith Micro did not infringe patents related to the '970 Patent, and that said patents were invalid. *Smith Micro Software, Inc. v. AGIS Software Development LLC*, No. 5:21-cv-03677 (N.D.Cal.), Dkt. 1 ¶¶ 16, 50, 55, 60, 65, 70, 75, 81, 88, 96, 103, 110, 117.

67.     On information and belief, Smith Micro currently has or previously had an office located in California.

COMPLAINT FOR DECLARATORY JUDGMENT

68.     On information and belief, in or around October 2021, AGIS Software entered into a license agreement with Smith Micro ("Smith Micro License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.

69.     On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with Smith Micro to obtain the Smith Micro License.

### x.     AGIS, Inc.'s Negotiations With Life360

70.     On information and belief, AGIS, Inc. sent a letter to Life360, a company headquartered in San Francisco, California, on May 13, 2014 alleging infringement of AGIS's patents, expressing a willingness to engage in discussions regarding "royalty bearing licensing terms," and stating that "Life360 and its customers must cease and desist from further infringement" in the absence of a license. *See Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, No. 9:14-cv-80651 (S.D. Fla.), Dkt. 181 (Transcript of Jury Trial Proceedings Day 1 held on Mar. 9, 2015) at 87:2-7.

71.     Three days later, on May 16, 2014, AGIS, Inc. sued Life360 alleging infringement of patents related to the '970 Patent. *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, No. 9:14-cv-80651 (S.D. Fla.), Dkt. 1 ¶¶ 2, 16, 25, 34, 43.

72.     On information and belief, Life360 currently has or previously had an office located in California.

73.     On information and belief, AGIS, Inc. negotiated, including through numerous written email and/or other communications, with Life360 to attempt to license AGIS's patents.

### B.     AGIS Software is a Sham Entity Created to Avoid Jurisdiction and the Corporate Structure Should Be Ignored Under Dainippon

74.     On June 1, 2017, twenty days before filing a patent infringement lawsuit against Apple and ZTE, AGIS Software was created as a Texas LLC to hold and manage intellectual property assets previously owned by AGIS, Inc.

75.     On June 15, 2017, AGIS, Inc. assigned the '970 Patent to AGIS Holdings.

76.     On the same day, AGIS Holdings assigned the '970 Patent to AGIS Software.

COMPLAINT FOR DECLARATORY JUDGMENT

77.   Both AGIS, Inc. and AGIS Software are wholly owned subsidiaries of AGIS Holdings.

78.   Malcom K. Beyer, Jr., the named inventor of the '970 Patent, is the CEO of AGIS Software, AGIS Holdings, and AGIS, Inc.

79.   On information and belief, AGIS Software shares business addresses with AGIS Holdings and AGIS, Inc. at 92 Lighthouse Drive, Jupiter, FL 33469, and all of AGIS Software's board members and shareholders are employees, officers, board members, or shareholders of AGIS Inc.

80.   AGIS, Inc. has regular contacts with California as discussed above.

81.   AGIS, Inc. cannot create AGIS Software to insulate itself from declaratory jurisdiction, as it is an improper use of the corporate structure and should be disregarded for the jurisdictional analysis.  *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998); *Google Inc. v. Rockstar Consortium U.S. LP*, No. C 13-5933-CW, 2014 WL 1571807, at *4 (N.D. Cal. Apr. 17, 2014).

**C.    AGIS Software, AGIS, Inc., and/or AGIS Holdings are Alter Egos of Each Other**

82.   AGIS Software, AGIS, Inc., and/or AGIS Holdings are alter egos of each other, and contacts with the State of California by any of the AGIS Entities should be considered in the personal jurisdiction analysis.

83.   On information and belief, AGIS Software self-describes as an "inanimate entity."

84.   On information and belief, AGIS Software is inadequately capitalized.

85.   AGIS Software's principal source of revenue is from patent licenses.

86.   AGIS Software, AGIS Holdings, and AGIS, Inc. commingle funds and other assets.

87.   On information and belief, AGIS, Inc. and AGIS Holdings transfer funds between their bank accounts to pay expenses when one does not have an adequate revenue source for a particular time period.

88.   On information and belief, proceeds from lawsuits filed by AGIS Software

COMPLAINT FOR DECLARATORY JUDGMENT

involving the '970 Patent and related patents were paid to AGIS, Inc. or AGIS Holdings rather than AGIS Software.

89.     AGIS Software and AGIS, Inc. each claim the LifeRing products to be their product, and each represent that the LifeRing products practice at least one claim of the '970 Patent.

90.     On information and belief, AGIS Software, AGIS Holdings, and AGIS, Inc. disregard corporate formalities and fail to maintain an arm's length relationship.

91.     On information and belief, AGIS, Inc. transferred patents and patent applications, including the '970 Patent, to AGIS Holdings without consideration.

92.     On information and belief, AGIS Holdings. transferred patents and patent applications, including the '970 Patent, to AGIS Software without consideration.

93.     On information and belief, electronic inquiries submitted to AGIS Software's website are transmitted to AGIS, Inc.

94.     On information and belief, AGIS, Inc. pays for office expenses at the business location in Jupiter, Florida.

95.     AGIS Software, AGIS Holdings, and AGIS, Inc. use the same employees.

96.     AGIS Software has no employees of its own, and employees of AGIS, Inc. perform work for AGIS Software.

97.     On information and belief, AGIS Holdings has no employees of its own, and employees of AGIS, Inc. perform work on behalf of AGIS Holdings.

98.     On information and belief, AGIS Software does not hold regular officer, board, or other company meetings, and does not record and maintain regular minutes from officer, board, or other company meetings.

99.     On information and belief, AGIS, Inc. does not hold regular officer, board, or other corporate meetings and does not record and maintain regular minutes from officer, board, or other corporate meetings.

100.     AGIS Software, AGIS Holdings, and AGIS, Inc. have identical directors and/or officers.

COMPLAINT FOR DECLARATORY JUDGMENT

101.     AGIS, Inc., AGIS Software, and AGIS Holdings have overlapping officers. Malcolm K. Beyer Jr. is the CEO of AGIS Software, the CEO/Director/Chairman of AGIS Holdings, and the CEO/Director/Chairman of AGIS, Inc. Margaret Beyer is the Secretary of AGIS Software, the Secretary/Director of AGIS Holdings, and the Secretary/Director of AGIS, Inc. Ronald Wisneski is the CFO/Treasurer of AGIS Software, the CFO/Treasurer of AGIS Holdings, and the CFO/Treasurer of AGIS, Inc. Sandel Blackwell is the President of AGIS Software, the President/Director of AGIS Holdings, and the President of AGIS, Inc.

102.     Because there is a unity of interest and ownership between AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr. the separate personalities of the entities no longer exist, and the corporate structure should be disregarded. *See, e.g. City & Cnty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020).

103.     Failure to disregard the separate identities of AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr. would result in fraud or injustice to Google's ability to seek the declaratory judgment relief it seeks with this complaint and to recover any damages resulting from this lawsuit. *See, e.g., Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1009 (N.D. Cal. 2020) ("To establish inequity in the absence of alter ego liability, a plaintiff must plead facts sufficient to demonstrate that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form."); *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1072 (N.D. Cal. 2019).

104.     Because Malcom K. Beyer, Jr. and/or AGIS, Inc. controls the actions of the AGIS Software and AGIS Holdings such that AGIS Software and AGIS Holdings are mere alter egos of AGIS, Inc., the Court may exercise jurisdiction collectively over the AGIS entities.

**D.     AGIS, Inc. Has Regular Contacts With California Involving the '970 Patent**

105.     AGIS, Inc. has intentionally directed activities and communications to the State of California.

106.     On information and belief, AGIS, Inc. maintains or maintained a bank account in California.

COMPLAINT FOR DECLARATORY JUDGMENT

107.     AGIS, Inc. communicated with California companies, including Google and Facebook, to pursue joint ventures, acquisition, or patent licensing agreements involving the '970 Patent and/or related patents.

108.     On information and belief, AGIS, Inc. formed partnerships with one or more California companies or individuals involving products that allegedly embody the '970 Patent including the LifeRing products.

109.     On information and belief, AGIS, Inc. entered into non-disclosure agreements with California companies and organizations to pursue business opportunities involving products and/or services that embody the '970 Patent, including the LifeRing products.

110.     AGIS, Inc. sent a letter to California-based company Life360 alleging infringement of and seeking a license to one or more of the '970 Patent and/or related patents.

111.     On information and belief, AGIS, Inc. marketed and continued to market its LifeRing product, which allegedly embodies the '970 Patent, in California.

112.     On information and belief, AGIS, Inc. marketed LifeRing, which allegedly embodies the '970 Patent, to California companies CornerTurn LLC, Integrity Applications and American Reliance, Inc. *See Life360, Inc. v. Advanced Ground Info. Sys., Inc.*, No. 15-cv-00151-BLF, 2015 WL 5612008, at *3 (N.D. Cal. Sept. 21, 2015).

113.     On information and belief, AGIS, Inc. has also marketed LifeRing, which allegedly embodies the '970 Patent to first responders, military agencies, and/or military contractors, including those in the State of California.

114.     On information and belief, AGIS, Inc. provides or has provided downloads and updates of its LifeRing product, which allegedly embodies the '970 Patent, in California.

115.     On information and belief, AGIS, Inc. provided downloads of its LifeRing product, which allegedly embodies the '970 Patent, to United States Navy personnel and contractors at the United States Navy, SPAWAR Systems Center Pacific, in San Diego, California.  *See Life360, Inc.*, 2015 WL 5612008, at *3.

116.     AGIS, Inc. allows companies and individuals, including California companies and individuals, a trial of the LifeRing product, which allegedly embodies the '970 Patent.

COMPLAINT FOR DECLARATORY JUDGMENT

117.    On information and belief, AGIS Software has licensed the '970 Patent and/or related patents to end users residing in California who downloaded the LifeRing product, which allegedly embodies the '970 Patent.

118.    On information and belief, AGIS, Inc. demonstrates or has demonstrated its LifeRing product, which allegedly embodies the '970 Patent, in California or to individuals or entities residing in or operating out of California, respectively.

119.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at a U.S. military exercise in San Diego, California.  *See Life360, Inc.*, 2015 WL 5612008, at *3.

120.    On information and belief, Malcolm K. Beyer, Jr. discussed the LifeRing Product, which allegedly embodies the '970 Patent, with California companies including ADI Technology and Maven Consulting.  *See Life360, Inc.*, 2015 WL 5612008, at *3.

121.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at the National Incident Management System (NIMS) Test, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

122.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at a Coalition Warrior Interoperability Demonstration, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

123.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at Army Network Integration Evaluation, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

124.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at various U.S. Joint Commission Chief of Staff exercises, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

COMPLAINT FOR DECLARATORY JUDGMENT

125.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at the Defense Intelligence Agency's Plugfest, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

126.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at various SOCOM TNT exercises, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

127.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at U.S. NATO Bold Quest, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

128.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at Joint-Interagency Field Experimentation (JIFX) exercises, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

129.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at the Army Expeditionary Warrior Experiment, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

130.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, at Jolted Tactics, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.

131.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the '970 Patent, to various individuals affiliated with the U.S. Navy that reside in California and/or which occurred in California.

132.    As a result of the foregoing, AGIS Software either individually or as an alter ego of AGIS, Inc. and/or AGIS Holdings is subject to personal jurisdiction within this judicial district.

133.    Indeed, AGIS previously agreed to having the very disputes presented in this Complaint litigated in this judicial district. *See* WDTX Case, Dkt. 10 at 3 n.1.

COMPLAINT FOR DECLARATORY JUDGMENT

134.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts giving rise to the claim occurred in this judicial district, and because AGIS is subject to personal jurisdiction in this district.  This venue is also a convenient forum for all parties for the reasons discussed by the Federal Circuit in *In re Google LLC*, No. 2022-140-42, 2022 WL 1613192, at *1 (Fed. Cir. May 23, 2022).

## **INTRADISTRICT ASSIGNMENT**

135.     Pursuant to Civil L.R. 3-2(c) and 3-5(b), this is an Intellectual Property Rights Action subject to assignment on a district-wide basis.

## **FACTUAL BACKGROUND**

136.     Google's headquarters at 1600 Amphitheatre Parkway, Mountain View, California 94043 are located in this District.

137.     Google's mission is to organize the world's information and make it universally accessible and useful.  Over the past two decades, in service of that mission, Google has become one of the world's most innovative technology companies.

138.     Google has also developed applications, including FMD, that can be installed on devices that run the Android operating system.

139.     FMD is a service that allows an individual to remotely trace, locate, and wipe devices, including Android powered smartphones and tablets.

140.     Starting in 2017, AGIS began its patent litigation campaign targeting Google applications.  In 2017, AGIS sued ZTE, LG, HTC, and Huawei for infringement of the '970 Patent, among other patents.  In particular, AGIS asserted that devices manufactured by ZTE, LG, HTC, or Huawei infringed the '970 Patent devices based on the alleged inclusion of FMD on those devices.  Each of these cases settled in 2019.

141.     Later in 2019, AGIS filed a second round of lawsuits targeting FMD, this time against Google and Samsung.  AGIS against alleged infringement of the '970 Patent, among other patents, against Google.  AGIS alleged that FMD and devices running FMD infringed the '970 Patent.  AGIS further alleged that Samsung devices running FMD infringed U.S. Patent No. 9,749,829 ("'829 Patent"), which is related to the '970 Patent.  This second round of cases

COMPLAINT FOR DECLARATORY
JUDGMENT

proceeded in the EDTX until the Federal Circuit ordered transfer to the NDCA on May 23, 2022. On April 7, 2023, AGIS and Google jointly moved pursuant to Rule 41(a)(1)(A)(ii) and (a)(1)(B) for a stipulation and order dismissing AGIS's allegations based on the '970 patent claims 2 and 10-13 with prejudice. On April 10, 2023, the Court granted the joint motion and dismissed AGIS's allegations based on the '970 patent claims 2 and 10-13 with prejudice. The remainder of these cases are still pending before Judge Freeman.

142. On November 16, 2022, AGIS filed an ITC action against Google, Samsung, and eleven other respondents, along with parallel actions against the other eleven respondents in district court cases filed in the EDTX. In both sets of actions, AGIS asserted the '970 Patent, among others, and alleged that each respondents' devices running FMD infringed the '970 Patent. AGIS later voluntarily moved to terminate this ITC action. But the district court cases in the EDTX, which were stayed pending the ITC action, remain pending.

143. On March 1, 2023, AGIS filed a new action against Google, this time in the WDTX, asserting the '970 Patent against FMD. On July 20, 2023, AGIS voluntarily dismissed this case without prejudice.

144. On June 16, 2023, just one day after voluntarily moving to terminate its ITC action, AGIS filed an amended complaint in a preexisting case against Samsung in EDTX. AGIS initially filed this case against Samsung in July 2022, asserting the '970 Patent, but not against FMD. But in its June 16, 2023 amended complaint, AGIS added allegations of infringement of the '970 Patent against Samsung devices running FMD. AGIS also filed a motion for leave to amend its infringement contentions to add its claims based on FMD, which Samsung opposed. That motion is still pending in the EDTX.

145. As this litigation history demonstrates, AGIS has engaged and continues to engage in a course of conduct that shows a preparedness and a willingness to enforce the '970 Patent against Google and its Android partners based on FMD. Thus, there is a substantial risk that Google will face harm from further assertions of the '970 Patent against FMD.

146. FMD and devices running FMD do not directly or indirectly infringe any claims of the '970 Patent, either literally or under the doctrine of equivalents. Google has not caused,

COMPLAINT FOR DECLARATORY JUDGMENT

directed, requested, or facilitated any such infringement, and has never had any specific intent to do so.

## <u>COUNT I</u>
### (Declaratory Judgment of Non-Infringement of the '970 Patent by FMD)

147.    Google hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 146 of this Complaint as if fully set forth herein.

148.    AGIS claims to own all right, title, and interest in the '970 Patent.

149.    In both the NDCA Case and the WDTX Case, AGIS alleged that Google infringed the '970 Patent based on its design, development, and distribution of FMD.  *See, e.g.*, Exhibit K ¶¶ 14, 15.  AGIS further alleged that Google devices running FMD infringe the '970 Patent.  *Id.*

150.    FMD and Google products running FMD do not include or practice multiple claim limitations of the claims of the '970 Patent, including, but not limited to:

  a.    "a predetermined network of participants, wherein each participant has a similarly equipped PDA/cell phone that includes a CPU and a touch screen display a CPU and memory,"

  b.    "a forced message alert software application program including a list of required possible responses to be selected by a participant recipient of a forced message response loaded on each participating PDA/cell phone,"

  c.    "a sender PDA/cell phone and at least one recipient PDA/cell phone for each electronic message; a forced message alert software application program including a list of required possible responses to be selected by a participant recipient of a forced message response loaded on each participating PDA/cell phone,"

  d.    "means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient

COMPLAINT FOR DECLARATORY JUDGMENT

1            PDA/cell phone to transmit an automatic acknowledgment to the sender

2            PDA/cell phone as soon as said forced message alert is received by the

3            recipient PDA/cell phone,"

4    e.    "means for requiring a required manual response from the response list by

5        the recipient in order to clear recipients response list from recipients cell

6        phone display,"

7    f.    "means for receiving and displaying a listing of which recipient PDA/cell

8        phones have automatically acknowledged the forced message alert and

9        which recipient PDA/cell phones have not automatically acknowledged the

10       forced message alert,"

11    g.    "means for periodically resending said forced message alert to said

12        recipient PDA/cell phones that have not automatically acknowledged the

13       forced message alert,"

14    h.    "means for receiving and displaying a listing of which recipient PDA/cell

15        phones have transmitted a manual response to said forced message alert

16        and details the response from each recipient PDA/cell phone that

17       responded,"

18    i.    "means for transmitting the acknowledgment of receipt to said sender

19        PDA/cell phone immediately upon receiving a forced message alert from

20       the sender PDA/cell phone,"

21    j.    "means for allowing a manual response to be manually selected from the

22        response list or manually recorded and transmitting said manual response

23       to the sender PDA/cell phone,"

24    k.    "means for clearing the text message and a response list from the display of

25        the recipient PDA/cell phone or stopping the repeating voice message and

26        clearing the response list from the display of the recipient PDA/cell phone

27       once the manual response is transmitted,"

28    l.    "A method of receiving, acknowledging and responding to a forced

- 21 -

message alert from a sender PDA/cell phone to a recipient PDA/cell phone, wherein the receipt, acknowledgment, and response to said forced message alert is forced by a forced message alert software application program,"

m.  "transmitting an automatic acknowledgment of receipt to the sender PDA/cell phone, which triggers the forced message alert software application program to take control of the recipient PDA/cell phone and show the content of the text message and a required response list on the display recipient PDA/cell phone or to repeat audibly the content of the voice message on the speakers of the recipient PDA/cell phone and show the required response list on the display recipient PD A/cell phone,"

n.  "transmitting a selected required response from the response list in order to allow the message required response list to be cleared from the recipient's cell phone display, whether said selected response is a chosen option from the response list, causing the forced message alert software to release control of the recipient PDA/cell phone and stop showing the content of the text message and a response list on the display recipient PDA/cell phone and or stop repeating the content of the voice message on the speakers of the recipient PDA/cell phone," and

o.  "providing a list of the recipient PDA/cell phones have automatically acknowledged receipt of a forced alert message and their response to the forced alert message,"

151. Google does not infringe literally or under the doctrine of equivalents claims 2 and 10-13 of the '970 Patent, directly or indirectly, contributorily or otherwise through its or its user's activities in conjunction with FMD.

152. As set forth above, an actual and justiciable controversy therefore exists between Google and AGIS regarding whether FMD or any Google devices running FMD have infringed any of the asserted claims of the '970 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '970 patent.

COMPLAINT FOR DECLARATORY
JUDGMENT

153.    Google seeks a judgment declaring that Google does not directly or indirectly infringe claims 2 and 10-13 of the '970 patent, either literally or under the doctrine of equivalents.

## COUNT II
### (Declaratory Judgment of Invalidity of the '970 Patent)

154.    Google hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 146 of this Complaint as if fully set forth herein.

155.    AGIS claims to own all right, title, and interest in the '970 Patent, including the right to assert all causes of action arising under that patent and the right to any remedies for infringement of it.

156.    The original claims 1 and 3-9 of the '970 patent were already found invalid in view of prior art as part of an *inter partes* review proceeding, IPR2018-01079, and the Federal Circuit affirmed that finding.  See *AGIS Software Development, LLC v. Google LLC*, No. 2020-1401 (Fed. Cir.).  The remaining original claims 2 and 10-13 were found to be invalid in USPTO Reexamination Control Number 90/017,507 in view of the same or similar prior art as that presented in the *inter partes* review proceeding.  In response to office actions rejecting those original claims, AGIS amended claims 2 and 10-13 to overcome those references to add new claim limitations, which the USPTO allowed.

157.    Google has a reasonable apprehension that AGIS will assert the '970 Patent's amended claims 2 and 10-13 against Google in the United States for alleged infringement based on FMD.

158.    Each of the claims 2 and 10-13 of the '970 patent that has not been invalidated is invalid for failure to comply with at least one or more conditions for patentability set forth in one or more provisions of 35 U.S.C. §§ 101, 102, 103 and/or 112.

159.    For example, claims 2 and 10-13 are invalid as obvious in view of one or more of the following prior art references, either alone or in combination with each other:

a.    U.S. Patent No. 5,325,310 to Johnson et al. ("Johnson")

b.    U.S. Patent No. 5,742,905 to Pepe et al. ("Pepe")

c.    U.S. Patent No. 6,854,007 to Hammond ("Hammond")

COMPLAINT FOR DECLARATORY JUDGMENT

1        d.     U.S. Patent Publication No. 2006/0218232 to Kubala et al. ("Kubala")

2        e.     U.S. Patent No. 7,031,728 ("Beyer '728")

3        f.     U.S. Patent Publication No. 2006/0199612 ("Beyer '612")

4        g.     U.S. Patent Publication No. 2006/0223518 ("Haney")

5        h.     U.S. Patent Publication No. 2007/0150444 ("Chesnais")

6        i.     U.S. Patent Publication No. 2007/0281689 ("Altman '689")

7        j.     U.S. Patent Publication No. 2008/0070593 ("Altman '593")

8        k.     U.S. Patent No. 7,330,112 ("Emigh")

9        l.     U.S. Patent Publication No. 2008/0132243 ("Spalink")

160.     An actual and justiciable controversy therefore exists between Google and AGIS regarding whether FMD or any Google devices running FMD have infringed any of the asserted claims of the '970 patent.  A judicial declaration is necessary to determine the parties' respective rights regarding the '970 patent.

161.     Google seeks a judgment declaring that the '970 Patent is invalid and unenforceable under one or more provisions of 35 U.S.C. §§ 101, 102, 103 and/or 112.

**<u>COUNT III</u>**

**(Declaratory Judgment of Claim Preclusion / Res Judicata / Preclusion Under Kessler Doctrine)**

162.     Google hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 146 of this Complaint as if fully set forth herein

163.     The doctrine of claim preclusion or res judicata bars AGIS's claims against Google based on the '970 Patent in whole or in part, because AGIS twice voluntarily dismissed under Federal Rule of Civil Procedure 41 prior actions asserting '970 Patent claims against Google.

164.     The first dismissal occurred in AGIS's NDCA action against Google.  On April 7, 2023, AGIS and Google jointly moved pursuant to Rule 41(a)(1)(A)(ii) and (a)(1)(B) for a stipulation and order dismissing AGIS's lawsuit asserting the '970 Patent's original 2 and 10-13. *AGIS Software Dev. LLC v. Google LLC*, No. 5:22-cv-04826-BLF, Dkt. 437 (N.D. Cal.).  On April 10, 2023, this Court granted the joint motion dismissing AGIS's allegations based on the

1  original claims of the '970 Patent with prejudice. *Id.*, Dkt. 438. Because that dismissal was with

2  prejudice, it operates as a dismissal on the merits and is res judicata as to all further suits based on

3  the same cause of action.

4       165.    The second dismissal was AGIS's dismissal of its WDTX action against Google,

5  where AGIS had asserted the amended claims 2 and 10-13 of the '970 Patent against FMD. On

6  July 20, 2023, AGIS filed a notice of voluntary dismissal without prejudice pursuant to Rule

7  41(a)(1)(A)(i). *AGIS Software Dev. LLC v. Google LLC*, No. 6:23-cv-00160-DC-DTG, Dkt. 12

8  (W.D. Tex.).

9       166.    Although AGIS stated that its notice of dismissal of the WDTX action is without

10  prejudice, its notice does not take into account the full requirements of Rule 41(a)(1)(B), which

11  states, inter alia, "if the plaintiff previously dismissed any federal- or state-court action based on

12  or including the same claim, a notice of dismissal operates as an adjudication on the merits." Fed.

13  R. Civ. P. 41(a)(1)(B). Courts have held that such a dismissal is "an adjudication on the merits"

14  and effectively operates as a dismissal with prejudice. *Realtime Adaptive Streaming LLC v.*

15  *Netflix, Inc.*, No. CV 19-6359-GW-JCX, 2020 WL 7889048, at *2 (C.D. Cal. Nov. 23, 2020); *see*

16  *also Realtime Adaptive Streaming LLC v. Netflix, Inc.*, 41 F.4th 1372, 1381 (Fed. Cir. 2022)

17  (Reyna, J., concurring in part) ("Pursuant to Rule 41(a)(1)(B), and as a matter of law, the second

18  voluntary dismissal operates as an adjudication on the merits," and "[s]uch an adjudication

19  undeniably changes the legal relationship of the parties, even if the full scope of any resulting

20  claim preclusion is not determined until a third action is filed.").

21       167.    To the extent AGIS argues that claim preclusion does not bar its '970 Patent

22  claims that were amended by reexamination proceedings, those arguments are without merit.

23  Claims that emerge from reexamination do not create a new cause of action that did not exist

24  before. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1342 (Fed. Cir. 2012)

25  (rejecting argument that the issuance of amended and new claims negated the res judicata effect

26  of the prior litigation under the original patent claims); *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d

27  1344, 1353 (Fed. Cir. 2014) ("We conclude, as the court did in Aspex, that the claims in this case

28  that emerged from reexamination do not create a new cause of action that did not exist before.

COMPLAINT FOR DECLARATORY
                                                JUDGMENT

1    Senju cannot sue Apotex on the same patent twice.").

2         168.    Accordingly, AGIS has twice dismissed its actions asserting the '970 Patent

3    against Google.  AGIS's first dismissal of the '970 Patent with prejudice precludes AGIS from

4    asserting the same patent against the same party and same product FMD again in this lawsuit.

5    And under Federal Rule of Civil Procedure 41(a)(1)(B), AGIS's second dismissal "operates as an

6    adjudication on the merits" and thus precludes AGIS from asserting the '970 Patent's amended

7    claims 2 and 10-13 against Google and FMD.  Each of AGIS's dismissals on the merits also

8    preclude AGIS from accusing Google's FMD under the Kessler doctrine, to the extent that AGIS

9    were to allege that Google has engaged in infringement after the adjudications on the merits.  *See*

10   *In re PersonalWeb Technologies*, 961 F.3d 1365 (Fed. Cir. 2020).

## COUNT IV
### (Unenforceability of the '970 Patent Due to Inequitable Conduct)

13        169.    Google hereby restates and incorporates by reference the allegations set forth in

14   paragraphs 1 through 146 of this Complaint as if fully set forth herein.

15        170.    For example, at least the '970 patent is unenforceable because of inequitable

16   conduct committed during reexamination of the '970 patent and in particular AGIS's withholding

17   of information regarding an earlier litigation in which a district court determined and the Federal

18   Circuit affirmed that claims of AGIS's earlier U.S. Patent No. 7,031,728 ("the '728 patent,"

19   attached hereto as Exhibit A) were invalid as indefinite because the claim term "symbol generator"

20   invoked means-plus-function claiming under 35 U.S.C. § 112, ¶ 6, but the specification of the '728

21   patent failed to disclose adequate structure corresponding to the "symbol generator" claim term.

22   Notwithstanding this determination, AGIS amended independent claim 2 of the '970 patent during

23   reexamination to incorporate a comparable means-plus-function term (i.e., "means for presenting a

24   recipient symbol on the geographical map corresponding to a correct geographical location of the

25   recipient PDA/cell phone") and cited the '728 patent as providing support for this amendment

26   because the '728 patent is incorporated by reference in the '970 patent. AGIS representatives

27   involved in the reexamination had personal knowledge of the '728 patent's litigation history as a

28   result of having entered appearances in the district court litigation and/or on appeal to the Federal

COMPLAINT FOR DECLARATORY
                                                             JUDGMENT

Circuit following the district court's determination that claims incorporating the term "symbol generator" were indefinite. Had the AGIS representatives disclosed the '728 patent's litigation history during reexamination of the '970 patent, the Patent Office would not have issued a reexamination certificate including amended claim 2 with the phrase "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" corresponding to the "symbol generator" language previously found to be indefinite for lack of supporting structure. By failing to disclose the '728 patent's litigation history during reexamination of the '970 patent, the AGIS representatives breached their duty of candor. The single most reasonable inference from the failure of the AGIS representatives to disclose the '728 patent's litigation history—despite having identified the '728 patent as providing support for the proposed amended—is that the AGIS representatives intended to deceive the Patent Office into issuing a claim they knew to be unpatentable as indefinite in view of the earlier determinations by the district court and the Federal Circuit that the analogous "symbol generator" term was likewise indefinite for lack of supporting structure.

171.    On May 15, 2020, Google filed a reexamination request (later assigned the 90/014,507 control number) concerning claims 2 and 10-13 of the '970 patent. Google's reexamination request detailed why (1) claims 2 and 10-13 were not entitled to an effective filing date before the actual November 26, 2008 filing date of the '970 patent, such that the Kubala, Hammond, Johnson, and Pepe references all constituted prior art to the '970 patent; (2) the combination of the Kubala and Hammond prior art references presented a substantial new question of patentability as to claims 2 and 10-13; and (3) the combination of the Hammond, Johnson, and Pepe prior art references presented a second substantial new question of patentability as to those claims. Excerpts of the reexamination history are attached hereto as Exhibit B.

172.    On or about July 27, 2020, the Patent Office granted Google's reexamination request. The examiners assigned to the request (including the primary examiner as well as two additional conferees) "agree[d] with the contentions and evidentiary support in [Google's] request...that none of the earlier-filed applications provide sufficient written description support for at least a forced-message alert software-application program," as all of the independent claims of

COMPLAINT FOR DECLARATORY
JUDGMENT

the '970 patent required." Accordingly, the examiners agreed with Google's explanation that the '970 patent was only "entitled to a priority date of November 26, 2008." The examiners also agreed with Google that "a substantial new question of patentability as to claims 2 and 10-13 of the '970 patent [was] raised by Kubala and Hammond" and likewise that a separate "substantial new question of patentability as to claims 2 and 10-13 of the '970 patent [was] raised by Hammond, Johnson, and Pepe." Ex. B at pp. 1669 & 1671.

173.     Subsequently, on or about March 3, 2021, the examiners issued an office action rejecting claims 2 and 10-13. The examiners again agreed with Google's explanation that the '970 patent was only "entitled to a priority date of November 26, 2008." The examiners in turn rejected claims 2 and 10-13 under pre-AIA § 103(a) as unpatentable over Kubala and Hammond, and likewise as unpatentable over Hammond, Johnson, and Pepe. Ex. B at pp. 1689, 1693-94 & 1713.

174.     Following the office action, attorneys for AGIS—including Vincent Rubino, Enrique Iturralde, and Jialin Zhong—conducted an interview with the PTO examiners on or about May 17, 2021. As reflected in the reexamination interview summary included in the reexamination file history, AGIS's representatives and the PTO examiners discussed but did not reach agreement concerning claim 2. AGIS's representatives and the examiners also discussed proposed new claims 14-16, including claims 15 and 16. Proposed claim 15 depended from claim 2 while including additional limitations including "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone." AGIS's representatives "indicated that the corresponding disclosure" for this limitation was "found in the '728 patent, incorporated by reference into the '970 patent disclosure." Ex. B at pp. 1766-68.

175.     Later, on or about June 3, 2021, AGIS's representatives responded to the office action and traversed the obviousness rejections while also introducing dependent claim 14 (depending from claim 2) and dependent claim 15 (depending from claim 10). Aside from the renumbering, claims 14 and 15 corresponded exactly to proposed claims 15 and 16 as discussed during the above-noted interview during which AGIS's representatives "indicated that the corresponding structure" for the new claims was "found in the '728 patent, incorporated by

COMPLAINT FOR DECLARATORY JUDGMENT

reference into the '970 patent disclosure." As part of the June 2021 response, AGIS's representatives asserted that "new claims 14 and 15 do not add new matter and are supported by the original disclosure of the patent," which included the '728 patent incorporated by reference. Ex. B at p. 1791.

176.    On or about August 19, 2021, the examiners issued a final office action that maintained the rejections concerning original claims 2 and 10-13 of the '970 patent. The examiners also concluded that AGIS's proposed claims 14 and 15 were patentable over the prior art cited in Google's request, which had been directed to the original claims 2 and 10-13 rather than AGIS's subsequently-proposed claims 14 and 15. In particular, as to claim 14 (depending from claim 2), the examiners concluded that:

> The prior art cited in the Request fails to teach or fairly suggest means for obtaining location and status data associated with the recipient PDA/cell phone (i.e., the algorithm described in the '970 patent at col. 3, lines 52-67) and ***means for presenting a recipient symbol on the geographical map (displayed on the means for displaying ... , i.e., on the LCD display of the sender PDA/cell phone, described in the '970 patent at col. 4, lines 12-16) corresponding to a correct geographical location of the recipient PDA/cell phone (i.e., the algorithm described in the '970 patent at col. 5, lines 28-44), in the context of parent claim 2***.

Ex. B at p. 1893 (emphasis added).

177.    Following the final office action, representatives for AGIS—including Enrique Iturralde and Jialin Zhong—conducted an additional interview with the PTO examiners on or about September 13, 2021.

178.    As reflected in the reexamination interview summary included in the reexamination file history, AGIS's representatives and the PTO examiners discussed claims 14 and 15 and a proposed amendment that would include all of the features of the parent claims. Ex. B at pp. 1899-1900.

179.    On or about October 19, 2021, AGIS responded to the final office action by amending independent claims 2 and 10 "to include the patentable subject matter recited in claims 14 and 15." Claim 2 as amended therefore included the requirement of a "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the

COMPLAINT FOR DECLARATORY
JUDGMENT

recipient PDA/cell phone."

180.    AGIS's response summarized the earlier examiner interview and noted that Enrique Iturralde and Jialin Zhong had discussed with the examiners "different forms of amendments to claims for taking the patentable subject matter recited in claims 14 and 15..." Ex. B at p. 1918.

181.    On or about November 15, 2021, the examiners issued a "Notice of Intent to Issue *Ex Parte* Reexamination Certificate" and noted that "[previously proposed claims 14 and 15 have been cancelled, their subject matter being incorporated into the proposed amendments to claims 2 and 10, respectively."

182.    The examiners concluded that claims 2 and 10 along with claims 11-13 (dependent on claim 10) were patentable over the prior art cited in Google's request, which had been directed to the original claims 2 and 10-13 rather than AGIS's subsequently proposed amendment. The examiners' "statement of reasons for patentability" stated that:

> The prior art cited in the Request fails to teach or fairly suggest means for obtaining location and status data associated with the recipient PDA/cell phone (i.e., the algorithm described in the '970 patent at col. 3, lines 52-67) and ***means for presenting a recipient symbol on the geographical map (displayed on the means for displaying ... , i.e., on the LCD display of the sender PDA/cell phone, described in the '970 patent at col. 4, lines 12-16) corresponding to a correct geographical location of the recipient PDA/cell phone (i.e., the algorithm described in the '970 patent at col. 5, lines 28-44), in the context of independent claim 2***.

Ex. B at p. 1928 (emphasis added).

183.    The reexamination file history does not reflect any response by AGIS to the examiners' statement of reasons for patentability.

184.    The Patent Office issued an *Ex Parte* Reexamination Certificate on December 9, 2021.

185.    Throughout the pendency of the reexamination, AGIS's representatives had a "duty of candor and good faith in dealing with the [Patent] Office, which include[d] a duty to disclose to the Office all information known to that individual to be material to patentability in [the] reexamination proceeding." 37 C.F.R. § 1.555. In particular, "information is material to patentability in a reexamination proceeding when it is not cumulative to information of record or

COMPLAINT FOR DECLARATORY
JUDGMENT

being made of record in the reexamination proceeding, and . . . refutes, or is inconsistent with, a

position the patent owner takes in...[a]sserting an argument of patentability." Manual of Patent

Examining Procedure (MPEP) § 2280. Such information material to patentability can include

information from litigation proceedings. MPEP § 2001.06(c) ("Where the subject matter for

which a patent is being sought is or has been involved in litigation and/or a trial proceeding, or

the litigation and/or trial proceeding yields information material to currently pending applications,

the existence of such litigation and any other material information arising therefrom must be

brought to the attention of the examiner or other appropriate official at the U.S. Patent and

Trademark Office.").

186.    The litigation history of the '728 patent was material to patentability of at least

amended claim 2 of the '970 patent because the U.S. District Court for the Southern District of

Florida and the U.S. Court of Appeals for the Federal Circuit made determinations adverse to

AGIS concerning the '728 patent, which is incorporated by reference in the '970 patent. Those

determinations refuted and were inconsistent with AGIS's position that claim 2 of the '970 patent

was patentable and complied with all statutory requirements, including 35 U.S.C. § 112.

187.    On or about May 16, 2014, AGIS sued Life360, Inc. ("Life360") in the U.S.

District Court for the Southern District of Florida (Case Number 14-cv-80651) and asserted that

Life360 infringed the '728 patent.

188.    In response, Life360 asserted that the term "symbol generator" in claims 3 and 10

of the '728 patent invoked means-plus-function treatment under pre-AIA 35 U.S.C. § 112(6), but

was indefinite because the '728 patent did not disclose an algorithm concerning how the required

symbols were generated.

189.    The district court agreed with Life360 and ruled in a November 21, 2014

Markman Order that "symbol generator" was subject to pre-AIA 35 U.S.C. § 112(6) and was

indefinite for lack of supporting structure. A copy of the district court's order is attached hereto as

Exhibit C. The district court rejected AGIS's contention that the following passage (from column

10, lines 44-46 of the '728 patent) sufficiently disclosed "structure" corresponding to the claimed

symbol generator:

COMPLAINT FOR DECLARATORY
JUDGMENT

1
2
3
4

> The communication device is also given a database that includes a geographical display on the LCD display and software that coordinates the x and y coordinates on the LCD display touch screen with the geographical display. There is also software that places the symbols on the geographical display that represent other cellular phone users that are part of the communications net.

5
6
7
8
9
10
11
12
13
14
15
16

Ex. C at p. 11. The district court determined that while the '728 patent described in general terms that the symbols were "generated based on the latitude and longitude of the participants," it failed to contain an "algorithm" or description of how those symbols were actually generated. Citing the Federal Circuit's decision in *Aristocrat Technologies Australia v. International Game Technology*, 521 F.3d 1328 (Fed. Cir. 2008), the district court explained that "[t]he mere disclosure of a general purpose computing device in the '728 Patent is not structurally sufficient because such devices 'can be programmed to perform very different tasks in very different ways,' and 'simply disclosing a computer as the structure' [was] insufficient." Ex. C at p. 11. In particular, "the disclosure of 'software that coordinates the x and y coordinates on the LCD display touch screen'" described a "function, not structure." Ex. C at p. 12.

17
18
19
20
21

190.    In reaching this determination, the district court considered but found unpersuasive AGIS's reference in its claim construction brief to column 7, lines 31-37; column 8, lines 45-50; and column 10, lines 40-46 of the '728 patent. In its Rebuttal Claim Construction Brief filed with the district court on October 2, 2014 (attached hereto as Exhibit D), AGIS had argued that these passages supported the "symbol generator" term in claims 3 and 10 of the '728 patent:

22
23
24

> Utilizing these steps, the symbol generator generates and displays symbols on the display screen that represent other participants. See Goldberg Decl., ¶ 22. These algorithmic steps describe examples of how the symbol generator can generate symbols that represent each of the participants' cell phones in the communication network on the display screen…

25
26
27

Ex. D at p. 5. However, these passages simply refer to the x and y coordinates discussed by the district court:

28

COMPLAINT FOR DECLARATORY JUDGMENT

The display x, y coordinates of the touched point are known by a CPU in the PDA section of the communication system that can coordinate various information contained in the PDA portion relative to the x, y coordinate position on the screen. Inside housing 12 is contained the conventional cellular phone elements including a modem, a CPU for use with a PDA and associated circuitry connected to a speaker 24 and a microphone 38.

'728 patent (Ex. A), 7:31-38.

The screen display 16b, which is a touch screen, provides x and y coordinates of the screen 16b to the CPU's software. The software has an algorithm that relates the x and y coordinates to latitude and longitude and can access a communications net participant's symbol or an entity's symbol as being the one closest to that point

*Id.*, 8:45-50.

The communication device is also given a database that includes a geographical display on the LCD display and software that coordinates the x and y coordinates on the LCD display touch screen with the geographical display. There is also software that places symbols on the geographical display that represent other cellular phone users that are part of the communications net

*Id.*, 10:40-46. As the district court explained, however, "[t]he disclosure of 'software that coordinates the x and y coordinates on the LCD display touch screen" described a "function, not structure." Ex. C at p. 12.

191. The Federal Circuit later affirmed the district court's determination that claims 3 and 10 of the '728 patent were invalid as indefinite based on the "symbol generator" term. A copy of the Federal Circuit's decision is attached hereto as Exhibit E. The Federal Circuit first held that "because the term 'symbol generator' does not describe anything structural, the district court was correct to conclude that the asserted claims which recite the term 'symbol generator' [were] subject to 35 U.S.C. § 112, ¶ 6." Ex. E at p. 11. The Federal Circuit also agreed with the district court that the '728 patent failed to disclose adequate structure corresponding to the symbol generator requirement:

The specifications of the patents-in-suit do not disclose an operative algorithm for the claim elements reciting "symbol generator." The function of generating symbols must be performed by some component of the patents-in-suit; however, the patents-in-suit do not describe this component. Although the specification of the '728 patent

COMPLAINT FOR DECLARATORY JUDGMENT

suggests that these symbols are generated via "a map database and a database of geographically referenced fixed locations... with a specified latitude and longitude[,]... [and] [a] database with the constantly updated GPS location," '728 patent col. 3 ll. 35-41, this only addresses the *medium* through which the symbols are generated. A patentee cannot claim a means for performing a specific function and subsequently disclose a "general purpose computer as the structure designed to perform that function" because this "amounts to pure functional claiming." *Aristocrat Techs.*, 521 F.3d at 1333. Accordingly, because the specifications of the patents-in-suit do not disclose sufficient structure for the "symbol generator" function and the asserted claims include this term, the asserted claims are indefinite under 35 U.S.C. § 112, ¶ 2.

*Id.* at 13 (emphasis original).

192.     The district court and Federal Circuit's determinations were material to the patentability of amended claim 2 in the '970 patent because they refuted and were inconsistent with positions AGIS took during the reexamination concerning amended claim 2 and in particular the required "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone." Had AGIS disclosed the Life360 litigation history—and in particular the district court and Federal Circuit's determinations that "symbol generator" was indefinite for lack of supporting structure—the examiners would not have found amended claim 2 of the '970 patent to be patentable and issued a reexamination certificate incorporating claim 2.

193.     By AGIS's own account in the earlier litigation, the "symbol generator" as claimed in the '728 patent is simply an alternative description for the "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" as recited in amended claim 2 of the '970 patent following reexamination. For example, as noted above, AGIS's Rebuttal Markman brief in the Life360 litigation explained that the "symbol generator" as claimed in the '728 patent "generates and displays symbols on the display screen that represent other participants." Ex. D at p. 5. Similarly, AGIS's expert witness testified that that "the symbol generator renders symbols on the display screen that represent other participants" (emphasis added). September 17, 2014 Declaration of Dr. Benjamin Goldberg in Support of Plaintiff's Advanced Ground Information Systems, Inc.'s Opening Claim Construction

COMPLAINT FOR DECLARATORY JUDGMENT

Brief (attached hereto as Exhibit F) ¶ 22. During the November 2014 Markman hearing, the expert further testified that the "symbol generator" is "the software that displays the symbols on the screen in the appropriate place." Exhibit G (November 4, 2014 Transcript of Markman Hearing) at 11:19-21. AGIS's expert later reiterated that the "symbol generator" is "software...for displaying the symbols, the images for each user on the screen." *Id*. at 50:11-16; *see also id*. at 52:19-21 ("[T]he symbol generator here is just what draws the symbols on the screen at the specified x and y coordinates."); *id*. at 57:16-17 (describing "symbol generator" as the "the software for displaying the symbols on the screen"); *id*. at 58:11-12 (describing "symbol generator" as "software provided on every machine for--exactly for displaying symbols on the screen"). AGIS reiterated this description on appeal to the Federal Circuit. AGIS's opening brief (attached hereto as Exhibit H) cited the expert's testimony that a person of ordinary skill could have utilized "standard software modules that generate symbols on a display." Ex. H at pp. 20-21.

194.     Had AGIS disclosed these materials during reexamination, the examiners would have recognized that AGIS's proposed "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" was simply another description for the "symbol generator" in claims 3 and 10 of the '728 patent.

195.     Yet the AGIS representatives (including Vincent Rubino, Enrique Iturralde, and Jialin Zhong) did not disclose these materials—nor anything else concerning the Life360 litigation history—even though Rubino, Iturralde, and Zhong had conducted an interview with the PTO examiners on or about May 17, 2021 and "indicated that the corresponding disclosure" for the "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" was "found in the '728 patent, incorporated by reference into the '970 patent disclosure." *See* above (quoting Ex. B at pp. 1766-68).

196.     Without the benefit of the Life360 litigation materials, the '970 reexamination examiners instead concluded that this term was associated with "the algorithm described in the '970 patent at col. 5, lines 28-44." As noted above, the examiners referred to column 5, lines 28-44 in

COMPLAINT FOR DECLARATORY
JUDGMENT

both the final office action (on or about August 19, 2021) and the notice of intent to issue a

reexamination certificate (on or about November 15, 2021). Yet this passage (reproduced below)

merely describes how "[t]he software has an algorithm that relates the x and y coordinates to latitude

and longitude and can access a communications net participant's symbol:"

> Also shown on the display screen 16, specifically the geographical display 16b, is a pair of different looking symbols 30 and 34, a small triangle and a small square, which are not labeled. These symbols 30 and 34 can represent communication net participants having cellular phones in the displayed geographical area that are part of the overall cellular phone communications net, each participant having the same device 10 used. The latitude and longitude of symbol 30 is associated within a database with a specific cell phone number and, if available, its IP address and E-mail address. ***The screen display 16b, which is a touch screen, provides x and y coordinates of the screen 16b to the CPU's software from a map in a geographical database. The software has an algorithm that relates the x and y coordinates to latitude and longitude and can access a communications net participant's symbol or a fixed or movable entity's symbol as being the one closest to that point***.

'970 patent, 5:28-44 (emphasis added). This passage concerns the same disclosures the district

court and Federal Circuit deemed insufficient to support the corresponding "symbol generator"

term in the '728 patent. As the district court explained in its Markman Order, "the disclosure of

'software that coordinates the x and y coordinates on the LCD display touch screen'" described a

"function, not structure." Ex. C at p. 12. The district court's holding—later confirmed by the

Federal Circuit—is material to the patentability of at least claim 2 of the '970 patent as amended

during reexamination given the inclusion of the "means for presenting a recipient symbol on the

geographical map corresponding to a correct geographical location of the recipient PDA/cell

phone" term.

197.    The examiners' citation to column 5, lines 28-44 of the '970 patent confirms the

materiality of the Life360 litigation materials, including the district court's Markman Order and

the Federal Circuit's opinion affirming the finding of indefiniteness, as well as AGIS's briefs and

expert witness testimony indicating the equivalence between "symbol generator" and "means for

presenting a recipient symbol on the geographical map corresponding to a correct geographical

COMPLAINT FOR DECLARATORY
JUDGMENT

location of the recipient PDA/cell phone" Indeed, the relevant passage (i.e., column 5, lines 2844

of the '970 patent) corresponds almost exactly to column 8, lines 35-50 of the '728 patent); the

only differences (highlighted in yellow) are insubstantial:

| Column 5, lines 28-44 of the '970 patent | Column 8, lines 35-50 of the '728 patent |
|---|---|
| Also shown on the display screen 16, specifically the geographical display 16b, is a pair of different looking symbols 30 and 34, a small triangle and a small square, which are not labeled. These symbols 30 and 34 can represent communication net participants having cellular phones in the displayed geographical area that are part of the overall cellular phone communications net, each participant having the same device 10 used. The latitude and longitude of symbol 30 is associated within a database with a specific cell phone number and, if available, its IP address and E-mail address. The screen display 16b, which is a touch screen, provides x and y coordinates of the screen 16b to the CPU's software from a map in a geographical database. The software has an algorithm that relates the x and y coordinates to latitude and longitude and can access a communications net participant's symbol or a fixed or movable entity's symbol as being the one closest to that point. | Also shown on the display screen 16, specifically the geographical display 16b, is a pair of different looking symbols 30 and 34, a small triangle and a small square, which are not labeled. These symbols 30 and 34 can represent communication net cellular phone users in the displayed geographical area that are part of the overall cellular phone communications net used in this invention wherein each of the users has a similar cellular phone to the one shown in FIG. 1. The latitude and longitude of symbol 30 is associated within a database along with a specific phone number. The screen display 16b, which is a touch screen, provides x and y coordinates of the screen 16b to the CPU's software. The software has an algorithm that relates the x and y coordinates to latitude and longitude and can access a communications net participant's symbol or an entity's symbol as being the one closest to that point. |

Moreover, this passage includes the portion AGIS specifically cited to the district court in the Life360

litigation (as noted above, referencing column 8, lines 45-50 of the '728 patent) and which the district

court nevertheless determined to be insufficient to provide supporting structure for "symbol

generator." Had the Life360 litigation materials been disclosed during reexamination, claim 2 would

not have been allowed as amended and the reexamination certificate would not have issued. Indeed,

as the district court had determined, "the disclosure of 'software that coordinates the x and y

coordinates on the LCD display touch screen'" described a "function, not structure." Ex. C at p. 12.

And as the Federal Circuit held when affirming the district court's finding of indefiniteness, the

disclosure that symbols are generated via "'a map database and a database of geographically

COMPLAINT FOR DECLARATORY
JUDGMENT

referenced fixed locations... with a specified latitude and longitude[,]... [and] [a] database with the constantly updated GPS location' . . . only addresses the *medium* through which the symbols are generated" and does not disclose a sufficient supporting structure. Ex. E at p. 13 (emphasis original).

198.   On information and belief, AGIS representatives Vincent Rubino, Enrique Iturralde, Jialin Zhong, and Peter Lambrianakos each acted with intent to deceive the Patent Office by failing to disclose the Life360 litigation history during the reexamination despite the duty of candor each owed under 37 C.F.R. § 1.555.

199.   Lambrianakos and Zhong each signed submissions on behalf of AGIS during the reexamination.

200.   Moreover, Zhong, Rubino, and Iturralde each participated in one or more examiner interviews—including the interview on or about May 17, 2021 (during which Zhong, Rubino, and Iturralde all attended and indicated that the proposed claim with the "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" was supported by "corresponding disclosure...in the '728 patent, incorporated by reference into the '970 patent disclosure), a subsequent interview on or about September 13, 2021 (during which Zhong and Iturralde attended and further discussed that claim, which the examiners had "previously found allowable" without having considered the Life360 litigation history), and a further interview on or about October 12, 2021 (during which Zhong and Iturralde attended).

201.   Rubino had knowledge of the Life360 litigation history as a result of having participated in both the district court and Federal Circuit proceedings.

202.   Rubino entered appearances in both proceedings.

203.   Rubino also was listed in the signature block for AGIS's district court claim construction brief, district court rebuttal claim construction brief, Federal Circuit opening brief, and Federal Circuit reply brief.

204.   Further, Rubino attended the above-discussed November 4, 2014 Markman hearing

COMPLAINT FOR DECLARATORY
JUDGMENT

during which AGIS's expert explained that the "symbol generator" term in the '728 patent was "the software that displays the symbols on the screen in the appropriate place."

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                    Case No. 14-CV-80651-MIDDLEBROOKS
 3

 4   ADVANCED GROUND INFORMATION )
     SYSTEMS, INC.,              )
 5                               )
                Plaintiff,       )
 6                               )
          -v-                    )
 7                               )
     LIFE360, INC.,              )
 8                               )
                Defendant.       )   West Palm Beach, Florida
 9                               )   November 4, 2014
     _____ )   1:28 a.m.
10

11              TRANSCRIPT OF MARKMAN HEARING

12          BEFORE THE HONORABLE DONALD M. MIDDLEBROOKS

13                    U.S. DISTRICT JUDGE

14   Appearances:

15

     For the Plaintiff:        KENYON & KENYON, LLP
16                             BY:  GEORGE BADENOCH, ESQ.
                               BY:  TOM MAKIN, ESQ.
17                             BY:  VINCENT RUBINO, ESQ.
```

Ex G at 1, 11:19-21.

205.    Lambrianakos had knowledge of the Life360 litigation history as a result of having entered an appearance on December 22, 2016 in related Federal Circuit proceedings (*Advanced Ground Information v. Life360, Inc.* CAFC-16-1332) during which AGIS unsuccessfully appealed the district court's determination under 35 U.S.C. § 285 that the case was exceptional and AGIS was therefore obligated to pay Life360's attorneys fees.

COMPLAINT FOR DECLARATORY JUDGMENT

206.    On information and belief, Iturralde had knowledge of the Life360 litigation history as a result of having represented AGIS in over forty subsequent proceedings filed before May 17, 2021 (i.e., the date of the first interview with the '970 patent examiners, in which Itrurralde represented AGIS along with Rubino and Lambrianakos) and in which Rubino and/or Lambrianakos had also represented AGIS alongside Iturralde.

207.    For example, in *AGIS Software Development LLC v. T-Mobile USA, Inc. et al*, 2-21-cv-00072 (EDTX), Defendants' Responsive Claim Construction Brief (served on September 28, 2021, while the '970 reexamination was still underway and Itrurralde continued to have a duty of candor) specifically referenced the Life360 litigation and how the Federal Circuit had affirmed the district court's finding of indefiniteness as to the '728 patent claims including the "symbol generator" phrase.

208.    Itrurralde had entered an appearance in the T-Mobile case and therefore was served with the brief referencing the litigation history.

209.    On information and belief, Zhong had knowledge of the Life360 litigation history as a result of having worked with Rubino, Lambrianakos, and Iturralde during the reexamination of the '970 patent and other AGIS patents.

210.    In response to the reexamination request, the Patent Office conducted a litigation search concerning the '970 patent. This search is reflected in the reexamination file history. However, there is no indication in the file history that the Patent Office conducted a litigation search concerning the '728 patent. Nor is there any other reference to the Life360 litigation history in the reexamination file history.

211.    Accordingly, Rubino, Iturralde, Zhong, and Lambrianakos each had a duty to disclose the Life360 litigation history (including the district court and Federal Circuit decisions attached hereto as Exhibits C and E) given its above-discussed materiality. *Cf.* MPEP § 2280 ("The duty to disclose all information known to be material to patentability in a reexamination proceeding is deemed to be satisfied if all information known to be material to patentability of any claim in the patent after issuance of the reexamination certificate was cited by the Office or submitted to the Office in an information disclosure statement.").

212.   Rubino did not disclose the Life360 litigation history during the reexamination of the '970 patent—thereby violating Rubino's duty of candor under 37 C.F.R. § 1.555.

213.   Iturralde did not disclose the Life360 litigation history during the reexamination of the '970 patent—thereby violating Iturralde's duty of candor under 37 C.F.R. § 1.555.

214.   Zhong did not disclose the Life360 litigation history during the reexamination of the '970 patent—thereby violating Zhong's duty of candor under 37 C.F.R. § 1.555.

215.   Lambrianakos did not disclose the Life360 litigation history during the reexamination of the '970 patent—thereby violating Lambrianakos's duty of candor under 37 C.F.R. § 1.555.

216.   The single most reasonable inference from their failures to disclose the Life360 litigation history is that each of Rubino, Iturralde, Zhong, and Lambrianakos acted with intent to deceive the Patent Office and in particular to convince the Patent Office to issue a reexamination confirming the patentability of claim 2 of the '970 patent as amended (i.e., requiring a "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone") even though the district court had ruled and the Federal Circuit had affirmed in the Life360 litigation that the corresponding "symbol generator" term (i.e., "the software that displays the symbols on the screen in the appropriate place," as AGIS's own expert in the Life360 litigation described the "symbol generator") was indefinite for lack of corresponding structure. Rubino, Iturralde, Zhong, and Lambrianakos each remained silent even after the examiners cited column 5, lines 28-44 of the '970 patent in connection with the "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" term.

217.   Given their knowledge of the Life360 litigation, Rubino, Iturralde, Zhong, and Lambrianakos each knew that the reference in column 5, lines 28-44 to the "latitude and longitude" of symbols and a "software algorithm...that relates the x and y coordinates to latitude and longitude" corresponded exactly to disclosures in the '728 patent that the district court and Federal Circuit had deemed insufficient to support the "symbol generator" term.

218.   Yet Rubino, Iturralde, Zhong, and Lambrianakos failed to inform the Patent Office

COMPLAINT FOR DECLARATORY
JUDGMENT

that the district court and Federal Circuit had concluded that such generic disclosures failed to provide sufficient structure. Indeed, as the district court determined (but Rubino, Iturralde, Zhong, and Lambrianakos failed to disclose to the Patent Office), the '728 patent's "disclosure of 'software that coordinates the x and y coordinates on the LCD display touch screen" concerned "a function, not structure."

219.    Similarly, as the Federal Circuit explained when affirming the district court decision (but Rubino, Iturralde, Zhong, and Lambrianakos again failed to disclose to the Patent Office), the '728 patent's discussion of a "map database and a database of geographically referenced fixed locations . . . with a specified latitude and longitude" did not disclose adequate structure and instead merely concerned the "*medium* through which the symbols are generated" (emphasis original).

220.    Moreover, during their interview with the Patent Office on or about May 17, 2021, Rubino, Iturralde, and Zhong referred to the '728 patent as providing the "corresponding disclosure" for the "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" term. Ex. B at 1767-68. This reference to the '728 patent without any corresponding acknowledgment of the '728 patent's litigation history further confirms that Rubino, Iturralde, and Zhong acted with intent to deceive the Patent Office.

221.    As a result of this inequitable conduct committed by Rubino, Iturralde, Zhong, and Lambrianakos during reexamination of the '970 patent, the '970 patent is unenforceable against Google.

## COUNT V
### (Unenforceability of the '970 Patent Due to Unclean Hands)

222.    Google hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 146 of this Complaint as if fully set forth herein.

223.    The '970 patent is unenforceable as against Find My Device, and other functionalities developed by Google, as well as any products that AGIS accuses of infringement based on functionalities developed by Google, as a result of AGIS's deceit and bad faith during reexamination of the '970 patent, when AGIS violated the protective order entered by the United States District for the Eastern District of Texas in *AGIS Software Development LLC v. Google*

COMPLAINT FOR DECLARATORY
JUDGMENT

*LLC*, Case No. 2:19-cv-000361-JRG ("AGIS 1"). Despite the requirements of the protective order in AGIS 1, AGIS attorneys who had reviewed confidential documentation produced or otherwise made available by Google in AGIS 1 participated in the process of amending the claims of the '970 patent during the reexamination and prosecuting those amended claims to obtain the reexamination certificate that issued on December 9, 2021. This violation of the protective order—detailed below—is directly related to AGIS's assertion of the '970 patent against Google importing or selling products incorporating Google functionalities because all of the claims in the '970 patent that AGIS asserts either (1) were amended during reexamination (when AGIS attorneys violated the protective order in the AGIS 1), or (2) depend from claims that were amended during reexamination. Moreover, AGIS's violation of the protective order injured Google and affects the balance of equities between Google on one hand, and AGIS on the other hand. The purpose of the protective order was to facilitate discovery in AGIS 1—including highly confidential information concerning the operation of Google functionalities such as "Find My Device," which AGIS had accused of infringement in AGIS 1) while ensuring that AGIS did not use such highly confidential information to obtain additional patent claims or amend existing claims that purportedly cover Google functionalities. Yet AGIS did precisely what the protective order prohibits. AGIS attorneys who signed the protective order violated it by participating in the amendment of claims 2 and 10 of the '970 patent, which AGIS contends to read on Google technologies about which the AGIS attorneys obtained detailed and highly confidential technical information pursuant to the protective order. Given the protective order violations, it would be inequitable to permit AGIS to assert the remaining claims of the '970 patent following reexamination against Find My Device or other Google functionalities.

224.    On November 4, 2019, AGIS sued Google in the Eastern District of Texas and asserted claims of the '970 patent and other patents.

225.    AGIS and Google subsequently negotiated a protective order to govern discovery in AGIS 1. While certain aspects were disputed and submitted to the Eastern District of Texas court for resolution, AGIS and Google agreed that:

COMPLAINT FOR DECLARATORY JUDGMENT

Absent written consent from the designating Party, any person associated or affiliated with a Party and permitted to receive said Party's Protected Material that is designated RESTRICTED - ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, said Party's HIGHLY SENSITIVE MATERIAL under this Order shall not: (i) prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application before any foreign or domestic agency, including the United States Patent and Trademark Office pertaining to the field of invention of the patents-in-suit.

Ex. I at pp. 12-13.

226.    They also agreed that while this language was "not intended to and shall not preclude counsel who obtains, receives, or otherwise learns of, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature from participating directly or indirectly in reexamination" proceedings:

any attorney who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature produced by another Party *may not, directly or indirectly, advise, consult, or participate in the drafting of amended or substitute claims in the proceeding, and will not use any of the producing Party's Protected Material in the proceeding.*

Ex. I at p. 13 (emphasis added).  To this end, AGIS and Google also agreed that:

[t]o ensure compliance with the purpose of this provision, *each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL of a technical nature and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patents-in-suit.*

Ex. I at p. 13 (emphasis added).

227.    Following the joint motion, the district court entered a protective order on April 22, 2020 (attached hereto as Exhibit J).  Paragraph 11 of the protective order provided that:

Absent written consent from the designating Party, any person associated or affiliated with a Party and permitted to receive said Party's Protected Material that is designated RESTRICTED - ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, said Party's HIGHLY SENSITIVE MATERIAL under this Order shall

not: (i) prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application before any foreign or domestic agency, including the United States Patent and Trademark Office pertaining to the field of invention of the patents-in-suit on behalf of the receiving Party or its acquirer, successor, predecessor, or Affiliate during the pendency of this Action and for two years after its conclusion, including any appeals except with respect to the acquisition, licensing, or any other transaction involving the patents-in-suit and/or all patents and patent applications related thereto. Nothing in this Order shall prohibit the acquisition or patents or patent applications for any entity other than a party. The prohibitions in this Paragraph are not intended to and shall not preclude counsel who obtains, receives, or otherwise learns of, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature from participating directly or indirectly in reexamination, inter partes review, interference proceedings, or covered business method review proceedings, provided that *any attorney who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature produced by another Party may not, directly or indirectly, advise, consult, or participate in the drafting of amended or substitute claims in the proceeding,* and will not use any of the producing Party's Protected Material in the proceeding. To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL of a technical nature and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patents-in-suit. The provision shall not bar entire firms, rather only the individuals who actually receive and review a Party's HIGHLY SENSITIVE MATERIAL.

Ex. J at pp. 12-13 (emphasis added).

228.    On November 22, 2019, Vincent Rubino and Enrique Iturralde entered appearances on behalf of AGIS in AGIS 1.  Rubino and Iturralde subsequently obtained "Highly Sensitive Material" of a technical nature from Google as defined in the April 22, 2020 protective order and pursuant to the restrictions in that order.  For example, Google produced hundreds of technical documents in AGIS 1 that qualified as "Highly Sensitive Material," including engineering documents and specifications, as well as source code.  On information and belief, Rubino and Iturralde received and accessed such technical documents, which constitute "Highly Sensitive Material" of a technical nature.  For example, on December 22, 2020, Iturralde defended the deposition of AGIS's technical expert witness Joseph McAlexander.  McAlexander had reviewed numerous Google technical materials–including source code–concerning, *inter alia*,

COMPLAINT FOR DECLARATORY
JUDGMENT

Google's Find My Device applications.  During the McAlexander deposition that Itrurralde defended, McAlexander was asked detailed technical questions concerning multiple exhibits that qualify as "Highly Sensitive Material" of a technical nature under the protective order.  The deposition itself likewise constitutes "Highly Sensitive Material" of a technical nature.  Likewise, on November 6, 2020, Rubino took the deposition of Amanda Moore, who held the position of product manager at Google.  During the Moore deposition, Rubino asked detailed technical questions and Moore provided testimony that qualified as "Highly Sensitive Material" of a technical nature.  Further, Rubino utilized multiple exhibits that qualify as "Highly Sensitive Material" of a technical nature.   Likewise, on October 27, 2020, Rubino took the deposition of Jonathan Brunsman, who held the position of Distinguished Engineer at Google and worked on the Find My Device application.  During the Brunsman deposition, Rubino asked detailed technical questions and Brunsman provided testimony that qualified as "Highly Sensitive Material" of a technical nature.  Further, Rubino utilized multiple exhibits that qualify as "Highly Sensitive Material" of a technical nature.

229.    Despite having obtained such "Highly Sensitive Material" from Google, Rubino and Iturralde participated in an examiner interview on or about May 17, 2021 during the reexamination of the '970 patent that had been requested by Google and ordered by the Patent Office.  According to the agenda submitted by AGIS, the agenda for the interview included "proposed new claims 14-16."  The ex parte reexamination interview summary subsequently prepared by the examiners confirmed that "Patent Owner's representatives" (i.e., including one or both of Rubino and Iturralde, in addition to Jialin Zhong, who also attended the interview) discussed proposed claims 15 and 16 in particular and "indicated that the corresponding disclosure is found in the '728 patent."

230.    Iturralde subsequently participated in an additional examiner interview on or about September 13, 2021, when the sole agenda item was "entry of proposed amendments to claims 14-15 and new claims 16-21."

231.    The single most reasonable inference from the record is that Iturralde and Rubino each "advise[d], consult[ed], [and] participate[d] in the drafting of amended or substitute claims"

COMPLAINT FOR DECLARATORY
JUDGMENT

during the reexamination of the '970 patent even though paragraph 11 of the protective order entered by the E.D. Texas court expressly prohibited each of those activities given that Iturralde and Rubino had received "Highly Sensitive Material" of a technical nature from Google.  As a result, Iturralde and Rubino were able to assist Jialin Zhong in pursuing amended claims that they believed would cover Google functionalities while purportedly overcoming the prior art Google had identified in its reexamination request.  This conduct violated the protective order and has an immediate and necessary connection to AGIS's assertion of the reexamined claims of the '970 patent in this suit.  Accordingly, the equities require that AGIS be barred from enforcing the '970 patent against any products that AGIS accuses of infringement based on functionalities developed by Google given that Iturralde and Rubino advised, consulted, and participated in the drafting of amended claims in the '970 patent despite having received highly confidential technical information concerning those functionalities.

## **PRAYER FOR RELIEF**

WHEREFORE, Google prays for judgment as follows:

A.      Declaring that FMD and Google devices running FMD do not directly or indirectly infringe any asserted claims of the '970 Patent, either literally or under the doctrine of equivalents;

B.      Declaring that each claim of the '970 Patent is invalid and unenforceable;

C.      Declaring that the AGIS is barred from asserting the '970 Patent against Google or FMD under Claim Preclusion, Res Judicata, and the *Kessler* Doctrine;

D.      Declaring that judgment be entered in favor of Google and against AGIS on Google's claims;

E.      Finding that this is an exceptional case under 35 U.S.C. § 285;

F.      Awarding Google its costs and attorneys' fees in connection with this action; and

G.      Awarding Google such other and further relief as the Court deems just and proper.

COMPLAINT FOR DECLARATORY JUDGMENT

1

## **JURY DEMAND**

2

      Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Google demands

3

a jury trial on all issues and claims so triable.

4

5

Dated:  July 21, 2023

O'MELVENY & MYERS LLP

6

7

By:    /s/ *Luann L. Simmons*

8

        Luann L. Simmons

9

10

DARIN SNYDER
LUANN L. SIMMONS
MARK LIANG

11

*Attorneys for Plaintiff Google LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY
JUDGMENT