Alfred R. Fabricant (pro hac vice)
ffabricant@fabricantllp.com
Peter Lambrianakos (pro hac vice)
plambrianakos@fabricantllp.com
Vincent J. Rubino, III (pro hac vice)
vrubino@fabricantllp.com
Enrique Iturralde (pro hac vice)
eiturralde@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Ave., Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796
Benjamin T. Wang (CA SBN 228712)
bwang@raklaw.com
Minna Y. Chan (CA SBN 305941)
mchan@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-9226
*Attorneys for Defendants AGIS Holdings, Inc.,*
*Advanced Ground Information Systems, Inc.,*
*and AGIS Software Development LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| GOOGLE LLC | Case No. 5:23-cv-03624-BLF |
| *Plaintiff,* | **Hon. Judge Beth L. Freeman** |
| v. | **NOTICE OF MOTION AND MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF TEXAS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| AGIS HOLDINGS, INC., ADVANCED GROUND INFORMATION SYSTEMS, INC., AND AGIS SOFTWARE DEVELOPMENT LLC, | |
| *Defendants.* | Date: March 21, 2024<br>Time: 9:00 a.m.<br>Location: Courtroom 3 |
| | *[Declaration of Malcolm K. Beyer, Jr; and Proposed Order filed concurrently herewith]* |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................................ 1

STATEMENT OF THE ISSUES TO BE DECIDED ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 2

I.      INTRODUCTION ...................................................................................................... 2

II.     FACTUAL BACKGROUND ..................................................................................... 3

       A.     The Parties .................................................................................................... 3

       B.     Prior Enforcement Actions ........................................................................... 4

III.    LEGAL STANDARDS ............................................................................................... 5

       A.     Dismissal for Lack of Personal Jurisdiction ................................................ 5

       B.     Inequitable Conduct ...................................................................................... 7

       C.     *Kessler* Doctrine and Claim Preclusion ...................................................... 8

       D.     Unclean Hands .............................................................................................. 8

       E.     Transfer ......................................................................................................... 9

IV.    PERSONAL JURISDICTION DOES NOT EXIST OVER DEFENDANTS IN CALIFORNIA ........................................................................................................... 9

       A.     Specific Jurisdiction Does Not Exist Over Each Defendant in California ......... 10

V.     COUNT III SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS GOOGLE CANNOT RELY ON A PRIOR DISMISSAL OF ORIGINAL PRE-REEXAMINATION CLAIMS AS PRECLUSIVE OF FUTURE INFRINGEMENT CLAIMS CONCERNING POST-REEXAMINATION CLAIMS ..................................................................................... 16

VI.    COUNT IV SHOULD BE DISMISSED BECAUSE IT FAILS TO MEET THE HEIGHTENED PLEADING STANDARD FOR INEQUITABLE CONDUCT ......... 17

VII.   COUNT V SHOULD BE DISMISSED BECAUSE GOOGLE HAS NOT SUFFICIENTLY PLED UNCONSIONABLE CONDUCT BY AGIS OR ITS ATTORNEYS .............................................................................................................. 19

VIII.  IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS ........................................................................................................................ 21

       A.     This Action Could Have Been Brought in the Eastern District of Texas ........... 21

B.       This Action Should Be Transferred to the Eastern District of Texas ................. 22

IX.      CONCLUSION............................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*,
5
    830 F.3d 1341 (Fed. Cir. 2016)................................................................................1, 18, 19

6

*Aerielle, Inc. v. Monster Cable Prods., Inc.*,
7
    No. 2:06-cv-382 (TJW), 2007 WL 951639 (E.D. Tex. Mar. 26, 2007)...............................24

8

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
    689 F.3d 1358 (Fed. Cir. 2012)...........................................................................................6

9

*AGIS Software Dev. LLC v. Apple, Inc.*,
10
    No. 2:17-cv-516 (E.D. Tex.)................................................................................................4

11

*AGIS Software Dev. LLC v. Google LLC*,
    Case No. 22-cv-04826-BLF (N.D. Cal.)...........................................................................23

12

13

*AGIS Software Dev. LLC v. Google LLC*,
    No. 2:19-cv-361 (E.D. Tex.)................................................................................................4

14

*AGIS Software Dev. LLC v. Google LLC*,
15
    No. 5:22-cv-04826-BLF (N.D. Cal.), Dkt. 437 .........................................................16, 17

16

*AGIS Software Dev. LLC v. HTC Corp.*,
    No. 2:17-cv-514 (E.D. Tex.)................................................................................................4

17

18

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
    No. 2:17-cv-513 (E.D. Tex.)................................................................................................4

19

*AGIS Software Dev. LLC v. LG Elecs., Inc.*,
20
    No. 2:17-cv-515 (E.D. Tex.)................................................................................................4

21

*AGIS Software Dev. LLC v. Lyft, Inc.*,
    Case No. 2:21-cv-24 (E.D. Tex.)..............................................................................5, 12, 15

22

*AGIS Software Dev. LLC v. Samsung Electronics Co., Ltd., et al.*,
23
    No. 2:22-cv-263 (E.D. Tex.)...................................................................................2, 5, 22

24

*AGIS Software Dev. LLC v. T-Mobile USA, Inc.*,
25
    No. 2:21-cv-72 (E.D. Tex.)..................................................................................................5

26

*AGIS Software Dev. LLC v. Uber Technologies, Inc.*,
    No. 2:21-cv-26 (E.D. Tex.)..................................................................................................5

27

28

*AGIS Software Dev. LLC v. Waze Mobile Limited*,
    No. 2:19-cv-359 (E.D. Tex.) ................................................................................4

*AGIS Software Dev. LLC v. WhatsApp, Inc.*,
    No. 2:21-cv-29 (E.D. Tex.) ................................................................................5

*AGIS Software Dev. LLC v. ZTE Corp. et al.*,
    Case No. 2:17-cv-517 (E.D. Tex.) ................................................................4, 15

*Allphin v. Peter K. Fitness, LLC*,
    2014 WL 6997653 (N.D. Cal. Dec. 11, 2014) ...........................................15

*Aloft Media, LLC v. Adobe Sys. Inc.*,
    No. 6:07-cv-355, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008) ...................24

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
    551 F.2d 784 (9th Cir. 1977) ................................................................6

*Ameranth, Inc. v. Menusoft Sys. Corp.*,
    No. 2:07-CV-271-TJW-CE, 2010 WL 11530949 (E.D. Tex. June 18, 2010) ...........7

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
    269 F.3d 1369 (Fed. Cir. 2001) ................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................20

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009) ................................................6, 10, 12

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008) ................................................5, 6, 11, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................20

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006) ................................................................10

*Brian Life, LLC v. Elekta Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014) ................................................................8

*Celgard, LLC v. SK Innovation Co.*,
    792 F.3d 1373 (Fed. Cir. 2015) ................................................14, 16

*Certainteed Gypsum, Inc. v. Pacific Coast Bldg. Prod., Inc.*,
    No. 19-CV-00802-LHK, 2021 WL 1405477 (N.D. Cal. Apr. 14, 2021) ...............18

*CommVault Sys., Inc. v. PB&J Software,*
　　LLC, 2013 WL 3242251 (N.D. Cal. June 25, 2013) ...............................................13

*Ctr. For Biological Diversity v. Kempthorne,*
　　No. C 08-1339 CW, 2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) ........................9

*Data Disc, Inc. v. Systems Tech. Assocs. Inc.,*
　　557 F.2d 1280 (9th Cir. 1977) ..............................................................................7

*Decker Coal Co. v. Commonwealth Edison Co.,*
　　805 F.2d 834 (9th Cir. 1986) .................................................................................9

*DocuSign, Inc. v. Clark,*
　　2022 WL 225623 (N.D. Cal. Jan. 25, 2022) .................................................11, 12

*Elecs. For Imaging, Inc. v. Coyle,*
　　340 F.3d 1344 (Fed. Cir. 2003), *cert. denied,* 540 U.S. 1111 (2004) ....................6

*Eon Corp. IP Hldgs., LLC v. T-Mobile USA, Inc.,*
　　No. 6:10-CV-379-LED-JDL, 2011 WL 13134896 (E.D. Tex. Dec. 13, 2011) ..................7, 19

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.,*
　　No. 2:15-CV-1202-WCB, 2017 WL 275465 (E.D. Tex. Jan. 20, 2017) ...............................21

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
　　575 F.3d 1312 (Fed. Cir. 2009)......................................................................7, 8, 18

*Fitbit, Inc. v. Koninklijke Philips N.V.,*
　　336 F.R.D. 574 (N.D. Cal. 2020)...................................................................9, 23

*Gaudioso v. Mellon,*
　　269 F.2d 873 (3d Cir. 1959).................................................................................21

*Goodyear Dunlop Tires Ops., S.A. v. Brown,*
　　131 S. Ct. 2846 (2011).........................................................................................6

*Hansell v. TracFone Wireless Inc.,*
　　No. C-13-3440-EMC, 2013 WL 6155618 (N.D. Cal. Nov. 22, 2013) ....................24

*Hildebrand v. Steck Mfg. Co.,*
　　279 F.3d 1351 (Fed. Cir. 2002)............................................................................13

*iFLY Holdings LLC v. Indoor Skydiving Germany GmbH,*
　　No. 2:14- CV-1080-JRG-RSP, 2016 WL 3675136 (E.D. Tex. Mar. 25, 2016) ..................8, 9

*Kyocera Int'l, Inc. v. Semcon IP, Inc.,*
　　No. 3:18-CV-1575-CAB-MDD, 2018 WL 51112056 (S.D. Cal. Oct. 19, 2018)..............11, 12

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
    89 F.R.D. 497 (C.D. Cal. 1981) .......................................................................................23

*Lyft, Inc. v. AGIS Software Dev. LLC*,
    Case No. 21-CV-04653-BLF, 2022 WL 267409 (N.D. Cal. Jan. 28, 2022) ................5, 12, 15

*Monarch Networking Solutions LLC v. Cisco Sys., Inc.*,
    No. 2:20-Cv-00015-JRG ...............................................................................................25

*NuCal Foods, Inc. v. Quality Egg LLC*,
    887 F. Supp. 2d 977 (E.D. Cal. 2012)...............................................................................7

*P.I.C. Int'l Inc. v. Miflex 2 SpA*,
    No. 3:17-CV-0556-CAB-WVG, 2017 WL 3583122 (S.D. Cal. Aug. 17, 2017) ....................5

*In re PersonalWeb Techs. LLC*,
    961 F.3d 1365 (Fed. Cir. 2020).......................................................................................17

*Radio Sys. Corp. v. Accession, Inc.*,
    638 F.3d 785 (Fed. Cir. 2011)....................................................................................10, 11

*Ranza v. Nike*,
    793 F.3d 1059 (9th Cir. 2015) ....................................................................................14, 15

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998).......................................................................................13

*Regents of Univ. of al. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997).......................................................................................22

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) .............................................................................15

*Saleh v. Titan Corp.*,
    361 F. Supp. 2d 1152 (S.D. Cal. 2005).............................................................................23

*Seven Networks v. Google LLC*,
    No. 2:17-cv-00442-JRG, 2018 WL 4026760 (E.D. Tex. Aug. 14, 2018) .............................25

*SimpleAir, Inc. v. Google LLC*,
    884 F.3d 1160 (Fed. Cir. 2018)........................................................................................8

*SpeedTrack, Inc. v. Off Depot, Inc.*,
    791 F.3d 1317 (Fed. Cir. 2015)........................................................................................8

*Stewart v. Screen Gems- EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ............................................................................14, 15

*Tafolla v. City of Tustin*,
  885 F.2d 1473 (9th Cir. 1989) .................................................................................................25

*Target Training Int'l, Ltd. v. Extended Disc N Am., Inc.*,
  645 Fed. App'x. 1018 (Fed. Cir. 2016) .............................................................................16, 17

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  581 U.S. 258 (2017)...............................................................................................................22

*Therasense, Inc. v. Becton Dickson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) .........................................................................8, 18

*Trimble Inc. v. PerDiemCo LLC*,
  997 F.3d 1147 (Fed. Cir. 2021).........................................................................................11, 12

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) .................................................................................................................9

*Walden v. Fiore*,
  571 U.S. 277 (2014).................................................................................................................6

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
  No. C 11-0671 SI, 2011 WL 3206686 (N.D. Cal. July 27, 2011) .......................................5, 13

**Statutes**

28 U.S.C. §§ 1331, 1338(a), 2201, and 2202....................................................................................22

28 U.S.C. §§ 1391 and 1400(b) .......................................................................................................22

28 U.S.C. § 1404(a) ......................................................................................................................2, 9

**Other Authorities**

37 C.F.R. § 1.555 ............................................................................................................................18

Fed. R. Civ. P. 41(a)(l)(B) .............................................................................................................17

Fed. R. Civ. P. 12(b)(2)...................................................................................................................5

Rule 8 ...............................................................................................................................................7

Rule 9(b) ...............................................................................................................................3, 7, 18

Rule 12(b)(6).......................................................................................................................16, 18, 20

Rule 12(c)...........................................................................................................................16, 18, 20

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 21, 2024, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Beth L. Freeman, located at 280 South 1st Street, San Jose, California 95113, Defendants AGIS Holdings, Inc. ("AGIS Holdings"), Advanced Ground Information Systems, Inc. ("AGIS, Inc."), and AGIS Software Development LLC ("AGIS Software") (collectively, "Defendants") will and hereby move the Court for: (1) an order dismissing the Complaint for Declaratory Judgment filed by Plaintiff Google LLC ("Google") for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure; (2) an order dismissing Counts III, IV, and V of Google's Complaint; and (3) in the alternative to dismissal pursuant to Rule 12(b)(2), to transfer to the Eastern District of Texas pursuant to 28 U.S.C. §§ 1404(a). The Motion will be and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration, the pleadings and papers filed herein, as well as upon such other and further matters, papers, and arguments as may be presented to the Court.

**STATEMENT OF THE ISSUES TO BE DECIDED**

1. Whether this Court lacks personal jurisdiction when Defendants have no contacts in California.

2. Under Count III, whether Google failed to adequately plead a viable claim under the *Kessler* doctrine or claim preclusion with respect to U.S. Patent No. 8,213,970 (the "'970 Patent") post-reexamination claims when a prior dismissal was limited to '970 pre-reexamination claims.

3. Under Counts IV and V, whether Google failed to adequately plead materiality and intent to deceive in alleging the non-disclosure of a prior *Life360* litigation order concerning the non-asserted '728 Patent and non-recited "symbol generator" term during the reexamination of the '970 Patent which does not recite the "symbol generator" term.

4. Under Count V, whether Google failed to adequately plead sufficient facts to allege that AGIS or its counsel are guilty of fraud, deceit, unconscionability, or bad faith in connection with Fabricant LLP's attendance in examiner interviews during the reexamination of the '970 Patent, which is conduct expressly permitted under the protective order in question.

5. Whether this action should be transferred to the Eastern District of Texas.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **INTRODUCTION**

Google's declaratory action must be dismissed because this Court lacks personal jurisdiction over each Defendant. AGIS Software is a Texas corporation with a principal place of business in Texas, while AGIS Holdings and AGIS Inc. are Florida corporations with principal places of business in Florida. Defendants are not registered to conduct business in California; do not have a registered agent for service of process in California; do not have offices, employees, equipment, bank accounts or other assets in California; are not subject to taxes in California; do not manufacture or sell products in California; do not solicit or engage in business in California; do not sign contracts in California; do not recruit employees in California; and do not own, lease or rent any property in California. The sole activities identified by Google are enforcement actions filed *outside of California*, licenses resulting from settlement of *out-of-state* enforcement actions, and bare bone allegations that "AGIS Software, AGIS, Inc. and/or AGIS holdings are alter egos of each other." None of these activities are sufficient to show that each Defendant purposefully directed any activities related to the enforcement or defense of the '970 Patent at California.

In the alternative, Defendants request transfer under 28 U.S.C. § 1404(a) to the Eastern District of Texas ("EDTX") because it is clearly the most convenient forum. Notably, EDTX's familiarity with the '970 Patent extends to numerous earlier-filed cases that were litigated up to the pre-trial conferences. To date, EDTX has issued three claim construction orders regarding the '970 Patent and will issue a fourth claim construction order following a November 3, 2023 Markman hearing in *AGIS Software Dev. LLC v. Samsung Electronics Co., Ltd.*, *et al.*, No. 2:22-cv-263 (E.D. Tex.). Transfer will significantly improve the convenience of parties and witnesses and is in the interests of justice, and EDTX has a relative easier access to sources of proof. EDTX-resident AGIS Software and its relevant information are in EDTX. Google FMD witnesses and sources of proof are in London, England.

Count III should be dismissed for failure to plead a viable claim under the *Kessler* doctrine or claim preclusion. Google premises Count III on a prior joint dismissal that limited dismissal to original pre-reexamination claims and excluded new reexamination-amended claims. Further, in seeking that dismissal, Google conceded that the reexamination-amended claims contained substantiative, material

2

differences from their original form, and therefore, the prior joint dismissal cannot support preclusion.

Counts IV and V are deficient for failure to meet the materiality requirement and for futility. Google alleges the '970 Patent is unenforceable due to inequitable conduct failure to disclose during reexamination a prior indefiniteness determination concerning the term "symbol generator" of a different non-asserted U.S. Patent No. 7,031,728 (the "'728 Patent"). However, the non-asserted '728 Patent is not at issue. The term "symbol generator" is not recited in the '970 Patent claims. The prior determination is not material to patentability. Google fails to meet the heightened pleading standard of Rule 9(b).

Further to Count V, Google alleges a protective order violation based on the presence of Fabricant LLP at examiner interviews during reexamination.  But the protective order in question expressly permits attorney participation in reexamination proceedings when it states that nothing in the protective order is intended to preclude Fabricant "from participating directly or indirectly in reexamination."

## II.    FACTUAL BACKGROUND

### A.    The Parties

AGIS Software is the sole and exclusive owner of all right, title, and interest in and to the '970 Patent. Decl. of Malcolm K. Beyer, Jr. ("Beyer Decl.") at 3 ¶ 11. AGIS Software is a limited liability company organized and existing under the laws of the state of Texas, with a principal place of business at 100 W. Houston Street, Marshall, Texas 75670. *Id.* at 3-4 ¶ 13. AGIS Software has been doing business in Marshall, Texas since its formation in 2017. *Id.* at 5 ¶ 31. AGIS Software has a data center in the EDTX, located at 1005 Stuart Lane, Marshall, Texas 75672. *Id.* at 5 ¶ 32. AGIS Software is not registered to conduct business in California; does not have a registered agent for service of process in California; does not have offices, employees, equipment, bank accounts, or other assets in California; is not subject to taxes in California; does not manufacture or sell products in California; does not solicit or engage in business in California; does not sign contracts in California; does not recruit employees in California; and does not own, lease, or rent any property in California. Beyer Decl. at 4-5 ¶¶ 18-28. Further, no lawsuit has ever been filed by AGIS Software in California for any reason. *Id.* at 5 ¶¶ 29-30. AGIS Software's Chief Executive Officer, Mr. Malcolm K. Beyer, Jr., resides in Florida. *Id.* at 2 ¶ 4. In 2004, Mr. Beyer founded Advanced Ground Information Systems, Inc. ("AGIS, Inc."), a Florida corporation. *Id.* at 3 ¶ 7. In 2013, AGIS, Inc. began a corporate restructuring plan for business growth purposes. *Id.*

at 3 ¶ 9. By 2017, AGIS, Inc.'s board of directors approved the restructuring plan which resulted in the formation of a parent corporation, AGIS Holdings, Inc. ("AGIS Holdings"), a Florida corporation. *Id.* AGIS Holdings consists of two subsidiaries: AGIS, Inc. and AGIS Software Development LLC. *Id.* Each is a separate corporate entity and maintains separate corporate formalities, maintains separate bank accounts, and keeps separate business records. *Id.*

Google LLC alleges it is a California corporation with its principal place of business located in Mountain View, California. Dkt. 42 at 4. Google alleges it develops FMD, which can be installed on devices that run the Android operating system. Based on discovery produced by Google to AGIS in other cases, all witnesses, and sources of proof for the current versions of FMD are located in London, England. To the extent Google disputes these facts, AGIS intends to request the production of that discovery in this case for the Court's consideration of this Motion.

**B.     Prior Enforcement Actions**

The '970 Patent has an extensive prior litigation history in the EDTX. In 2017, AGIS Software filed five patent infringement actions in the EDTX involving the '970 Patent, four of which were litigated before Judge Gilstrap from filing through pre-trial conferences. *See AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-cv-516 (E.D. Tex.); *AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-cv-514 (E.D. Tex.); *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513 (E.D. Tex.); *AGIS Software Dev. LLC v. ZTE Corp. et al.*, Case No. 2:17-cv-517 (E.D. Tex.) ("ZTE"); and *AGIS Software Dev. LLC v. LG Elecs., Inc.*, No. 2:17-cv-515,  (E.D. Tex.) (collectively, "*AGIS I* Cases"). AGIS Software reached settlements in the *AGIS I* cases before the pre-trial conferences for each respective defendant.

In 2019, AGIS Software filed three patent infringement actions involving the '970 Patent in the EDTX. *See AGIS Software Dev. LLC v. Google LLC*, No. 2:19-cv-361 (E.D. Tex.); *AGIS Software Dev. LLC v. Samsung Elecs. Co.*, No. 2:19-cv-361 (E.D. Tex.); and *AGIS Software Dev. LLC v. Waze Mobile Limited*, No. 2:19-cv-359 (E.D. Tex.) (collectively, "*AGIS II* Cases"). The *AGIS II* cases proceeded through discovery in EDTX until May 2022, when the Federal Circuit ordered transfer to the NDCA based on Google's material misrepresentations and omissions to EDTX and the Federal Circuit regarding the location of sources of proof for FMD.

In 2021, AGIS Software filed four infringement actions involving the '970 Patent in the EDTX. *See AGIS Software Dev. LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-72 (E.D. Tex.); *AGIS Software Dev. LLC v. Uber Technologies, Inc.*, No. 2:21-cv-26 (E.D. Tex.); *AGIS Software Dev. LLC v. Lyft, Inc.*, Case No. 2:21-cv-24 (E.D. Tex.); and *AGIS Software Dev. LLC v. WhatsApp, Inc.*, No. 2:21-cv-29 (E.D. Tex.) (collectively, "*AGIS III* Cases"). AGIS Software reached settlements in the *AGIS III* cases.

In 2022, AGIS Software filed an infringement action against Samsung involving the '970 Patent in the EDTX. *AGIS Software Development LLC v. Samsung Elecs. Co.*, No. 2:22-cv-263 (E.D. Tex.) ("*AGIS IV*"). On June 16, 2023, AGIS Software filed a second amended complaint accusing FMD of infringing the '970 Patent based on information discovered during a June 15, 2023 deposition of a Google engineer. *Id.* at Dkt. 69. On August 24, 2023, EDTX granted AGIS Software leave to amend its contentions to address FMD. *Id.* at Dkt. 115. In that case, Google has produced discovery, including the materials related to the June 15, 2023 deposition, and Google has agreed to produce additional discovery, including documents and source code, by the end of October 2023.

## III.   LEGAL STANDARDS

### A.   Dismissal for Lack of Personal Jurisdiction

Fed. R. Civ. P. 12(b)(2) requires a district court to dismiss an action when the court lacks personal jurisdiction over a defendant. "Federal Circuit law governs the personal jurisdiction analysis in a declaratory judgment action for patent non-infringement." *Lyft, Inc. v. AGIS Software Dev. LLC*, Case No. 21-CV-04653-BLF, 2022 WL 267409, *2-5 (N.D. Cal. Jan. 28, 2022) (concluding Lyft failed to establish specific jurisdiction over AGIS Software); *see also Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) ("[W]e apply Federal Circuit law because the jurisdictional issue is 'intimately involved with the substance of patent laws.'") (citation omitted). Where, like here, an action seeks a declaration of patent non-infringement, invalidity, and unenforceability personal jurisdiction is required "over the owner, assignee, or exclusive licensee of the patent." *Xilinx, Inc. v. Invention Inv. Fund I LP*, No. C 11-0671 SI, 2011 WL 3206686, at *4 (N.D. Cal. July 27, 2011) (citing *Avocent*, 552 F.3d at 1329-30).

Personal jurisdiction over a non-resident defendant is proper if permitted by a state's long-arm statute and the exercise of jurisdiction does not violate federal Due Process. *P.I.C. Int'l Inc. v. Miflex 2*

*SpA*, No. 3:17-CV-0556-CAB-WVG, 2017 WL 3583122, at *2 (S.D. Cal. Aug. 17, 2017) (citing *Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010)). "[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (citation omitted); *see also* Cal. Civ. Proc. Code § 410.10.

To satisfy federal Due Process: (1) the defendant must have established certain minimum contacts with the forum state; and (2) the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quotations omitted)). Jurisdiction may be either "general or all-purpose jurisdiction" or "specific or case-linked jurisdiction." *Id.* at 2851 (citation omitted). "Specific jurisdiction . . . must be based on activities that arise out of or relate to the cause of action." *Autogenomics*, 566 F.3d at 1017 (citation omitted). However, "it is essential in each case that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities *within the forum State*, thus invoking the benefits and protections of its laws." *Avocent*, 552 F.3d at 1329 (quoting *Hanson v. Deckla*, 357 U.S. 253 (1958)) (emphasis added). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (citation omitted). Moreover, the "'minimum contacts' analysis looks to the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added).

The plaintiff bears the burden of making a *prima facie* showing that each defendant is subject to personal jurisdiction if the parties have not conducted discovery and there has been no evidentiary hearing. *See Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004). The plaintiff cannot "simply rest on the bare allegations of its complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Additionally, although the court must accept uncontested allegations as true, it need not consider "bare formulaic accusations" that a defendant maintains sufficient contacts with the forum state. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*,

689 F.3d 1358, 1365 (Fed. Cir. 2012); *see also NuCal Foods, Inc. v. Quality Egg LLC,* 887 F. Supp. 2d 977, 988 (E.D. Cal. 2012) ("[T]he court need not consider merely conclusory claims, or legal conclusions in the complaint as establishing jurisdiction."). The court also "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Systems Tech. Assocs. Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

B.   **Inequitable Conduct**

Inequitable conduct may be established by providing clear and convincing evidence of: "(1) material prior art, (2) knowledge chargeable to the patent applicant of prior art and its materiality, and (3) the applicant's failure to disclose the prior art to the PTO with intent to mislead." *Ameranth, Inc. v. Menusoft Sys. Corp.*, No. 2:07-CV-271-TJW-CE, 2010 WL 11530949, at *1 (E.D. Tex. June 18, 2010) (quoting *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 972 (Fed. Cir. 2010)). In evaluating the sufficiency of inequitable conduct allegations on a motion to dismiss, the Court looks to Federal Circuit precedent, not regional circuit law. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). In the Federal Circuit, "inequitable conduct allegations meet the heightened pleading standard in Rule 9(b) by identifying 'the specific, who, what, when, where, and how' of the alleged inequitable conduct occurred." *Eon Corp. IP Hldgs., LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-379-LED-JDL, 2011 WL 13134896, at *2 (E.D. Tex. Dec. 13, 2011) (citing *Exergen*, 575 F.3d at 1326). While a court must accept as true the factual allegations in a pleading, "the court is not obligated to accept legal conclusions as true." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Thus, even under Rule 8, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To plead "knowledge" and "intent," the Federal Circuit states that:

[A]lthough "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen Corp.*, 575 F.3d at 1328-29. "Intent and materiality are separate requirements," and a "district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa" because "the materiality required to establish inequitable conduct is but-for materiality." *Therasense, Inc. v. Becton Dickson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (*en banc*).

   C.   ***Kessler* Doctrine and Claim Preclusion**

   "The *Kessler* doctrine bars a patent infringement action against *a customer of a seller* who has previously prevailed against the patentee because of invalidity or noninfringement of the patent." *SpeedTrack, Inc. v. Off Depot, Inc*., 791 F.3d 1317, 1323 (Fed. Cir. 2015) (citation omitted and emphasis added). Preclusion under the *Kessler* doctrine is only intended to "bar assertion of the claims at issue against essentially the same products made or sold after the judgment of noninfringement in the earlier case, *i.e.*, products that claim preclusion could not reach because of their timing." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed. Cir. 2018) (citation omitted).

   "The Ninth Circuit has held that claim preclusion applies where the prior suit: (1) involved the same claim or cause of action as the later suit; (2) reached a final judgment on the merits; and (3) involved the same parties or privies." *Brian Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir. 2014) (citations omitted); *see also SimpleAir*, 884 F.3d at 1165 ("Our cases generally follow the Restatement (Second) of Judgments (1982) (hereinafter Restatement), which defines a cause of action based on the transactional facts from which it arises.").

   D.   **Unclean Hands**

   The doctrine of unclean hands is based on the principle that "he who comes into equity must come with clean hands." *iFLY Holdings LLC v. Indoor Skydiving Germany GmbH*, No. 2:14- CV-1080- JRG-RSP, 2016 WL 3675136, at *1 (E.D. Tex. Mar. 25, 2016) (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814 (1945)). To prove unclean hands, "a [party] must show that the patentee conducted itself as to shock the moral sensibilities of the judge, or stated otherwise, that the patentee's conduct was offensive to the dictates of natural justice." *Id*. (citation omitted). To invoke "unclean hands," there must be an "unconscionable act by the patentee that has an 'immediate and necessary relation to the equity' of the relief the patentee seeks," which must be proven by clear and

convincing evidence. *Id*. at *2 (citing *Keystone Driller Co. v. General Excavator Co*., 290 U.S. 240, 245-56 (1933) and *Aptix Corp. v. Quickturn Design Sys., Inc*., 269 F.3d 1369, 1375 (Fed. Cir. 2001)).

E.   **Transfer**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). The purpose is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation omitted). The court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The *Decker* court identified public-interest factors including (a) relative degrees of court congestion, (b) local interest in deciding local controversies, (c) potential conflicts of laws, and (d) burdening citizens of an unrelated forum with jury duty. *Decker Coal*, 805 F.2d at 843.

Northern District of California courts commonly examine the following factors to determine convenience and fairness under § 1404(a) (some of which overlap with *Decker*): (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the ease of access to the evidence, (5) the familiarity of each forum with the applicable law, (6) the feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum. *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 580 (N.D. Cal. 2020). Courts may examine all these factors, but "[n]o single factor is dispositive." *Id.*; *Ctr. For Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008). The weighing of the factors for and against transfer is best left to the discretion of the trial judge. *Id.* (citing *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007)).

## IV.   PERSONAL JURISDICTION DOES NOT EXIST OVER DEFENDANTS IN CALIFORNIA

Google has not and cannot present facts to support a *prima facie* case for personal jurisdiction over *each* of AGIS Software, AGIS Holdings, and AGIS Inc. in California. Here, Google does not allege or plead the Court has general jurisdiction and solely alleges "specific jurisdiction." *See* Dkt. 42 at 5-6.

As to AGIS Software and AGIS Inc., Google erroneously relies on each entity's respective *out-of-state* actions and subsequent licenses to invoke specific jurisdiction. As to AGIS Holdings, Google's sole basis for specific jurisdiction is a barebone, formulaic recitation of an unsupported alter ego theory involving AGIS Software and AGIS Inc. Exercising personal jurisdiction over Defendants would not comport with fair play and substantial justice. Google's action should be dismissed.

### A.    Specific Jurisdiction Does Not Exist Over Each Defendant in California

Specific jurisdiction focuses on the "relationship among the defendant, the forum, and the litigation." *Daimler AG*, 571 U.S. at 126. To establish specific jurisdiction, the plaintiff must demonstrate that "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). Where a patentee is sued for a declaratory judgment of non-infringement or invalidity, the only activities that can give rise to specific jurisdiction over the patentee are those related to the enforcement or defense of the patent. *Radio Sys. Corp. v. Accession, Inc*., 638 F.3d 785, 789 (Fed. Cir. 2011). Thus, the Court must "examine the jurisdictional facts for conduct whereby the patentee 'may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent.'" *Autogenomics*, 566 F.3d at 1020 (citation omitted) (emphasis added).

### 1.    Enforcement Actions in Texas Against Alleged California Entities Do Not Support Jurisdiction Over Any AGIS Entity in California

Google erroneously suggests specific jurisdiction is proper over AGIS Software based on patent infringement actions involving the '970 Patent against entities allegedly "having principal places of business and operations in this judicial district" and "with companies or their affiliates having operations and offices in the State of California." Dkt. 42 at 11 ¶ 67. However, AGIS Software has only sought to enforce its rights in the '970 Patent through case filings initiated in the EDTX and WDTX. Similarly, AGIS Inc.'s only suit seeking to enforce the '970 Patent occurred nearly a decade ago and was filed in Florida. Dkt. 42 at 19 ¶ 125. Google's barebone allegations fail to support specific jurisdiction.

The Federal Circuit "made clear" in *Avocent* and reiterated in *Radio Systems Corporation* that "enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in

the forum." *Radio Sys. Corp.*, 638 F.3d at 792; *see also Avocent*, 552 F.3d at 1339. In accordance with this precedent, district courts routinely reject personal jurisdiction premised solely on judicial actions initiated in other states even when brought against a forum resident. *See DocuSign, Inc. v. Clark*, 2022 WL 225623, at *5 (N.D. Cal. Jan. 25, 2022) (citing *Adobe Sys. Inc. v. Tejas Research, LLC*, No. C-14-0868 EMC, 2014 WL 4651654, at *4 (N.D. Cal. Sept. 17, 2014)) (emphasis added); *see also Kyocera Int'l, Inc. v. Semcon IP, Inc.*, No. 3:18-CV-1575-CAB-MDD, 2018 WL 51112056, at *3 (S.D. Cal. Oct. 19, 2018) (concluding filing enforcement actions in Texas, even if against California entities, was insufficient to establish personal jurisdiction in California); *Juniper Networks, Inc. v. SSL Servs., LLC*, No. C08-5758 SBA, 2009 WL 3837266 (N.D. Ca. Nov. 16, 2009), *aff'd*, 2010 WL 5140471 (Fed. Cir. Dec. 13, 2010). Google has not and cannot demonstrate any "other activities" are present here.

Google's reliance on *Trimble* fails and is distinguishable. In *Trimble*, the defendant exchanged twenty-two communications with the resident-plaintiff in California and its wholly owned subsidiary over three months, including: an *unfiled complaint*; an offer to enter binding mediation; and a detailed threat of litigation that "went so far as to identify the counsel it retained to sue…and the venue in which it planned to file suit." *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156-57 (Fed. Cir. 2021). The Federal Circuit concluded that "PerDiemCo's attempts to extract a license…[we]re much more akin to 'an arms-length negotiation in anticipation of a long-term continuing business relationship[.]" *Trimble*, at 1157. Here, Google has failed to allege any facts present in *Trimble* showing AGIS Software (or any AGIS entity) engaged in "extensive" pre-suit contacts seeking to extract a license. Furthermore, Google's reliance on a post-suit third-party subpoena and post-suit mediation run counter to *Trimble* and fail to support the exercise of jurisdiction because those events occurred after the filing of, and in connection with, a complaint and did not seek to extract a license. *See* Dkt. 42 at 10-11 ¶¶ 59-66. Regarding the July 11, 2023 mediation before Mr. Kichaven, the parties agreed on Mr. Kichaven after Google repeatedly insisted on retaining a California-based mediator and after Google declined AGIS's requests to continue mediation with Dallas-based Judge David Folsom. Permitting Google to use this fact would discourage mediation. Finally, Google's reliance on alleged pre-suit communications regarding the '728 Patent, a 2011-2012 license, a venue clause in a 2011 non-disclosure agreement, and email communications that are unrelated to the instant action and pre-date the issuance of the '970 Patent

do not support the exercise of jurisdiction over any AGIS entity. *Compare* Dkt. 42 at 17-18 113-119 *with Autogenomics*, 566 F.3d at 1020 (The Court must "examine the jurisdictional facts for conduct whereby the patentee 'may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent.'").

More recently, in *DocuSign*, this Court distinguished *Trimble* and concluded that a single pre-suit email was insufficient to establish specific jurisdiction because "there must be other activities by [defendant] directed at California and related to the cause of action to establish jurisdiction." *DocuSign, Inc. v. Clark*, 2022 WL 225623, at *5 (N.D. Cal. Jan. 25, 2022). This Court reiterated that "[w]hile initiating judicial enforcement of a patent supports personal jurisdiction, it does so *only when the defendant initiates such enforcement within the forum state*." *Id.* (citation omitted and emphasis added). Here, Google fails to allege any other activities AGIS Software directed at California or any judicial enforcement initiated in California.

Similarly, in *Lyft*, this Court concluded that Lyft failed to show it had specific jurisdiction over AGIS Software under similar scant allegations. *See Lyft, Inc. v. AGIS Software Development LLC*, 2022 WL 267409 at *3 (N.D. Cal. Jan. 28, 2022). There, "AGIS Software argued that since its negotiations were related to infringement actions outside of the Northern District of California, such negotiations are insufficient for a showing of personal jurisdiction." *Id.* The Court agreed and concluded Lyft failed to meet its burden under *Trimble* because "Lyft can only generally allege licensing negotiations between AGIS Software and California companies." *Id.* As in *Lyft*, Google generally alleges communications and negotiations related to infringement actions initiated outside of the Northern District of California. Dkt. 42 at 12 ¶ 68.

Consistent with governing precedent, the same analysis applies here: AGIS Software's out-of-state activities are insufficient to show it *purposefully availed* itself of the "privilege of conducting activities within [California], thus invoking the benefits and protections of its laws," as required for the exercise of personal jurisdiction." *Kyocera*, 2018 WL 5112056, at *3; *see also Juniper Networks*, 2009 WL 3837266, at *3-*4 (rejecting "novel argument that the act of filing a [patent infringement] lawsuit against an alleged California resident—in a Texas district court—is sufficient to make a prima facia showing that [the defendant] has purposefully availed itself of the privilege of conducting activities

within [California]."). Accordingly, Google has failed to meet its burden supporting the exercise of specific jurisdiction and should be dismissed.

### 2.   Exercising Personal Jurisdiction Over AGIS Software Would Not Comport With Fair Play and Substantial Justice

As shown, AGIS Software has not purposefully directed any conduct constituting the requisite "other activities" at California related to the enforcement or defense of the '970 Patent sufficient to show that exercising jurisdiction would be fair. Indeed, this District has held that "[g]rounding personal jurisdiction on [a patent infringement lawsuit filed by the defendant against a forum resident in a different forum] alone would not comport with principles of fairness." *CommVault Sys., Inc. v. PB&J Software*, LLC, 2013 WL 3242251, at *2 (N.D. Cal. June 25, 2013). Further, "[s]tandards of fairness demand that [the defendant] be insulated from personal jurisdiction in a distinct foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355, 1361 (Fed. Cir. 1998); *see also Hildebrand v. Steck Mfg. Co*., 279 F.3d 1351, 1356 (Fed. Cir. 2002) (dismissing declaratory judgment action for lack of personal jurisdiction despite patentee's efforts to license products to plaintiffs in the forum state because all "documented contacts were for the purpose of warning against infringement or negotiating license agreements, and [the plaintiff] lacked a binding obligation in the forum."); *Avocent*, 552 F.3d at 1333-34.

Accordingly, exercising personal jurisdiction over AGIS Software would not comport with notions of fairness and substantial justice. Because personal jurisdiction is required "over the owner, assignee, or exclusive licensee of the patent" for a declaratory action such as here, and personal jurisdiction does not exist over AGIS Software, Google's complaint must be dismissed. *Xilinx, Inc.*, 2011 WL 3206686, at *4.

### 3.   Google Fails to Meet Its Burden To Establish Imputation is Warranted

Google fails to include a single allegation supporting an imputation theory of personal jurisdiction. *See generally* Dkt. 42. Devoid of any support, Google states "AGIS Software, AGIS, Inc., and/or AGIS Holdings are alter egos of each other[.]" *Id.* at 6 ¶ 22. Google does not allege a single fact regarding the relationship between AGIS, Inc., AGIS Holdings, and AGIS Software or any facts showing that AGIS Software has any contacts with California. Instead, Google merely recites the purported

1  activities of AGIS Inc. in California and states in conclusory fashion that "[a]s a result of the foregoing,

2  AGIS Software either individually or as an alter ego of AGIS, Inc. and/or AGIS Holdings is subject to

3  personal jurisdiction within this judicial district." *See* Dkt. 42 at 23 ¶ 160.

4      Google has failed to meet its burden to show that imputing the purported contacts of AGIS, Inc.

5  to AGIS Software and/or AGIS Holdings is warranted. The law is well-settled that "the corporate entity

6  should be recognized and upheld, unless specific, unusual circumstances call for an exception . . ." *3D

7  *Sys., Inc. v. Aarotech Labs.*, Inc., 160 F.3d 1373, 1380 (Fed Cir. 1998) (declining to find an alter ego

8  relationship or impute activities). Moreover, the existence of a parent-subsidiary or mere sister-sister

9  entity relationship "is not sufficient to establish personal jurisdiction over the parent on the basis of the

10  subsidiaries' minimum contacts with the forum." *Stewart v. Screen Gems- EMI Music, Inc*., 81 F. Supp.

11  3d 938, 954 (N.D. Cal. 2015) (citing *Doe v. Unocal Corp*., 248 F.3d 915, 925 (9th Cir. 2001)).

12      The actions of a third party may be imputed to a defendant under the alter ego exception. *Celgard,*

13  *LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015); *accord Stewart*, 81 F. Supp. 3d at 954

14  (recognizing that contacts may be imputed where an "alter ego relationship exists among sister

15  companies that are alter egos of each other and operate as part of a single enterprise"). To establish

16  jurisdiction under an alter ego theory, "a plaintiff must make out a *prima facie* showing: (1) that there is

17  such unity of interest and ownership that the separate personalities of the two corporations no longer

18  exist; and (2) if the acts are treated as those of only one of the corporations, an inequitable result will

19  follow." *Stewart*, 81 F. Supp. 3d at 960. This theory envisions "pervasive control" over the affiliate

20  entity, "such as when a parent corporation dictates every facet of the subsidiary's business—from broad

21  policy decisions to routine matters of day-to-day operations." *Ranza v. Nike*, 793 F.3d 1059, 1073 (9th

22  Cir. 2015). In evaluating whether a "unity of interest" exists, courts may consider the commingling of

23  funds and other asserts of the entities, the holding out by one entity that it is liable for the debts of the

24  other, the use of one entity as a mere shell or conduit for the affairs of the other, inadequate capitalization,

25  disregard of corporate formalities, and lack of segregation of corporate records. *Id*. "Total ownership

26  and shared management personnel are alone insufficient to establish the requisite level of control."

27  *Ranza*, 793 F.3d at 1073.

28

Here, Google fails to allege facts sufficient to make out a *prima facie* case that AGIS Software, AGIS, Inc. and AGIS Holdings are alter egos. *See generally* Dkt. 42. For example, Google's barebone recitations fail to allege facts relating to whether a sufficient unity of interest exists. *Compare* Dkt. 42 ¶¶ 43-44 *with Ranza*, 793 F.3d at 1073 (shared management personnel are insufficient). Whether AGIS Software, AGIS Inc., and AGIS Holdings share common officers does not support Google's alter ego theory because "in the absence of evidence of actual control, courts generally presume that directors can and do 'change hats' to represent each corporation separately, despite their overlapping obligations as officers or directors for more than one entity." *Stewart,* 81 F. Supp. 3d at 954; *see also Allphin v. Peter K. Fitness, LLC,* 2014 WL 6997653, at *5 (N.D. Cal. Dec. 11, 2014) ("Courts generally presume that directors are wearing their subsidiary hats and not their parent hats when acting for the subsidiary."). Further, Google fails to allege facts relating to whether failure to attribute the acts to the three entities would lead to an inequitable result, much less any facts amounting to bad faith, past fraudulent conduct, or injustice. *See Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1009 (N.D. Cal. 2020) (granting motion to dismiss and concluding plaintiff "failed to meet his burden in showing any conduct that would make it inequitable for this Court to observe the corporate distinction…"). Finally, this Court has rejected Google's barebone alter ego allegations, including Google's unfounded allegations that AGIS Software is a "sham" entity through the assignment of the '970 Patent and the proximity of AGIS Software's formation. *See Lyft, Inc. v. AGIS Software Development LLC*, 2022 WL 267409, at *4 (N.D. Cal. Jan. 28, 2022) (citing *ZTE (USA) Inc. v. AGIS Software Dev. LLC*, No. 18-cv-06185-HSG, ECF No. 114, at 5 (N.D. Cal. Sep. 12, 2019) ("[T]he Federal Circuit has not held that the mere assignment of patents to a subsidiary renders that assignee a sham entity.")). As in *Lyft* and *ZTE*, Google fails to allege a single fact or legal basis that supports AGIS Software is a "sham" entity created to circumvent jurisdiction or merely an alter ego of its sister entity, AGIS, Inc. *Compare id. with* Dkt. 42 at 9 ¶¶ 46-54.

Accordingly, Google has failed to allege sufficient facts showing AGIS Software, AGIS Inc., and AGIS Holdings are alter egos, and the purported contacts must be disregarded. *See 3D Sys.*, 160 F.3d at 1380 ("[T]he corporate form is not to be lightly cast aside."); *Celgard*, 792 F.3d at 1379 ("[Plaintiff] has not alleged facts sufficient to base jurisdiction on the acts of an alter ego.").

**V.    COUNT III SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS GOOGLE CANNOT RELY ON A PRIOR DISMISSAL OF ORIGINAL PRE-REEXAMINATION CLAIMS AS PRECLUSIVE OF FUTURE INFRINGEMENT CLAIMS CONCERNING POST-REEXAMINATION CLAIMS**

Under Rule 12(b)(6), or in the alternative, Rule 12(c), Count III fails as a matter of law and should be dismissed because Google failed to plead a viable claim under the *Kessler* doctrine or claim preclusion. Dkt. 42 at 30 ¶¶ 189-204. Neither the *Kessler* doctrine nor claim preclusion can be applicable because Google relies on a first dismissal of the original pre-reexamination claims of the '970 Patent. *See AGIS Software Dev. LLC v. Google LLC*, No. 5:22-cv-04826-BLF (N.D. Cal.) ("*Google I*"), Dkt. 437 (Joint Motion and Stipulation for Dismissal); *id.*, Dkt. 438 (Dismissal Order). The prior dismissal was based on Google's contention that issuance of the reexamination claims of the '970 Patent extinguished the cause of action related to the original pre-reexamination claims of the '970 Patent. *See Google I*, Dkt. 425 at 2, 8. Google contended that the original, pre-reexamination claims of the '970 Patent no longer existed as a matter of law. *Id.* To ensure AGIS Software preserved its rights as to post-reexamination claims of the '970 Patent, the parties agreed that the prior dismissal was limited to the pre-reexamination claims and did not extend to the post-reexamination claims. *Id.*, Dkt. 437, Dkt. 438. Based on the parties' agreement as to the scope of the prior dismissal and the record memorialized in the prior dismissal, Google's allegations as to claim preclusion are unsupportable. A dismissal for mootness of infringement claims based on patent claims which have been substantively amended in reexamination does not operate as a final judgment on the merits. *Target Training Int'l, Ltd. v. Extended Disc N Am., Inc.*, 645 Fed. App'x. 1018, 1025-26 (Fed. Cir. 2016) ("A dismissal for lack of jurisdiction is not a dismissal on the merits. Rather, the Supreme Court has specifically rejected deciding the merits of a case where the court lacks jurisdiction because jurisdiction is a threshold question, and '[w]ithout jurisdiction the court cannot proceed at all in any cause .... In addition, we have held that, in patent cases, res judicata does not apply to bar the assertion of new claims acquired during the pendency of a litigation that could have been, but were not, litigated or adjudicated in the action.'"). That is exactly what happened in the first dismissal. Google itself argued that "AGIS amended those claims in parallel EPR proceedings to

add several new features found nowhere in the original claims," rendering the original '970 Patent claim allegations "extinguished." *See Google I*, Dkt. 425 at 2. (emphasis added) (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc*., 721 F.3d 1330, 1340 (Fed. Cir. 2013)). Because the amendments to the '970 Patent extinguished AGIS's original cause of action against Google (as Google itself argued), and in so doing extinguished the Court's jurisdiction over those claims, the first dismissal was not a dismissal on the merits under *Target Training*. As such, the *Google II* voluntary dismissal without prejudice cannot have preclusive effect under Fed. R. Civ. P. 41(a)(l)(B). The facts here largely mirror *Target Training.* The parties dismissed claims based on the original '970 claims against Google because they were moot, as Google itself argued. *See Google I*, Dkt. 425 at 2, Dkt. 437, Dkt. 438.

Furthermore, the first dismissal was not a dismissal on the merits for infringement under the amended '970 Patent claims because those claims were explicitly excluded from that dismissal. The dismissal order explicitly noted: "***The Parties agree that this stipulation and motion to dismiss concern the asserted claims of the '970 Patent that issued on July 3, 2012. This dismissal does not cover the reexamination-amended claims of the '970 Patent that issued on December 9, 2021 and that are not asserted in this action***." *Google I*, Dkt. 438 at 1, n.1. (emphasis added). Thus, the amended claims of the '970 Patent were not subject to the dismissal in the prior NDCA case, which cannot implicate Fed. R. Civ. P. 41(a)(l)(B). Therefore, neither the *Kessler* doctrine, nor claim preclusion, can be applicable.

The Federal Circuit has held that parties to a voluntary with-prejudice dismissal stipulation can limit its preclusive effect so long as the limitations are clear. *See In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1379 (Fed. Cir. 2020). In the prior dismissal, Google admitted the reexamination-amended claims of the '970 Patent contained substantive and material differences as compared to the original claims of the '970 Patent. Thus, Google cannot contend that the prior-dismissed claims were identical to the post-reexamination claims or that the post-reexamination claims were ever asserted in the prior-dismissed case. Accordingly, Count III fails as a matter of law and should be dismissed.

## VI.   COUNT IV SHOULD BE DISMISSED BECAUSE IT FAILS TO MEET THE HEIGHTENED PLEADING STANDARD FOR INEQUITABLE CONDUCT

Under Rule 12(b)(6), or in the alternative, Rule 12(c), Count IV fails as a matter of law because Google failed to plead "but-for materiality" with sufficient particularity. *See Exergen Corp.*, 575 F.3d at

1328 ("In sum, to plead the 'circumstances of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."); *see also Therasense*, 649 F.3d at 1291. Google's allegations are based on an alleged breach of a duty of candor and good faith pursuant to 37 C.F.R. § 1.555, which has a heightened standard. *See Exergen*, 575 F.3d at 1328-29.

Google failed to plead inequitable conduct with the requisite particularity because it failed to identify "how" the prior finding that the "symbol generator" term in the '728 Patent was indefinite was material to the allowability of claims incorporating the "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" term in the '970 Patent reexamination. *Certainteed Gypsum, Inc. v. Pacific Coast Bldg. Prod., Inc.*, No. 19-CV-00802-LHK, 2021 WL 1405477, at *9 (N.D. Cal. Apr. 14, 2021) (citing *Therasense*, 649 F.3d at 1291) ("However, Plaintiff's complaint is devoid of specific allegations that could support a finding that 'the PTO would not have allowed a claim had it been aware of the undisclosed [related litigation].").

Google's identification of the *Life360* case is irrelevant to the patentability of the '970 Patent. The Federal Circuit found that the term "symbol generator" of the non-asserted '728 Patent was subject to § 112, ¶ 6 and denoted a computer-implemented function of generating symbols. *See Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1349 (Fed. Cir. 2016). The court held that "symbol generator" was indefinite because the specification of the patent in suit did not disclose an algorithm for generating symbols. *Id*. The '728 Patent is not part of this suit. Instead, this case involves the '970 Patent, which was not the subject of the *Life360* order identified by Google.

The '970 Patent reexamination amended claims include the term "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone." The term "symbol generator" is not recited within this or any other limitation of the '970 Patent. There can be no serious dispute that the "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" term does not involve the function of "generating a symbol." The claim term does not include the term "generating" or similar words that suggest the generation or creation of a symbol. Rather, the "means for presenting a recipient symbol" calls for presenting (or placing or showing) a symbol on a location of

a map which is displayed on an LCD display. Importantly, the Examiner did not find that the "means for presenting" included the functionality of "generating a symbol." The Examiner's reasons for allowance presumed the existence or availability of a symbol for display. Given that the "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" term does not involve symbol generation, Google  cannot demonstrate any materiality of the "symbol generator" construction to the allowability of claims to the "means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone" term or any other claim limitation of the '970 Patent. Further, Google's general statement that "the district court and Federal Circuit's determinations were material to the patentability of claim 2 in the '970 patent because they refuted and were inconsistent with positions AGIS took during the reexamination concerning amended claim 2" are unsupported, and Google has pointed to no inconsistent positions that AGIS has taken in comparison to the plaintiff in the *Life360* Litigation. *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc*., No. 6:10-CV-379-LED-JDL, 2011 WL 13134896, at *5 (E.D. Tex. Dec. 13, 2011) ("While Eon is correct that merely indicating that the inventor was aware of both references is insufficient in and of itself to raise a reasonable inference of deceptive intent, the pleadings suggest that Dinkins continued to withhold the information while simultaneously making arguments to the PTO that could be contradicted by the withheld reference."). The claim term "symbol generator" was not at issue in the '970 Patent reexamination, nor did the Examiner or AGIS take the position that a "means for presenting a recipient symbol" include the function of generating a symbol. Accordingly, Defendants respectfully requests that Count IV be dismissed.

## VII.   COUNT V SHOULD BE DISMISSED BECAUSE GOOGLE HAS NOT SUFFICIENTLY PLED UNCONSIONABLE CONDUCT BY AGIS OR ITS ATTORNEYS

The portions of Google's Count V claim of unclean hands which overlap with Count IV should be dismissed for the same reasons as presented above.

In addition, under Rule 12(b)(6), or in the alternative, Rule 12(c), Google's unclean hands count fails because Google has not adequately pleaded that AGIS or their litigation counsel are guilty of any conduct involving fraud, deceit, unconscionability, or bad faith in connection with an allegation of "violat[ing] the protective order in the Google case by advising, consulting, and participating in the

drafting of amended or substitute claims." The protective order in question expressly permitted AGIS's litigation attorneys to participate in the reexamination proceeding of the '970 Patent. Google provides no facts to support an inference that Fabricant LLP attorneys drafted amended claims. Google identifies only the fact that Fabricant LLP participated in examiner interviews. Also present at the examiner interviews was attorney Jialin Zhong of Zhong LLP who was retained to draft and prosecute any claim amendments. Google merely pleads that Fabricant LLP attorneys "were able to assist Jialin Zhong in pursuing amended claims," and fails to identify any facts of any unconscionable or violative conduct. Dkt. 42 at 55 ¶ 267. This claim should be rejected under *Iqbal* and *Twombly*.

The full prosecution history shows that while members of Fabricant LLP participated in the '970 Patent reexamination, an outside attorney, Jialin Zhong of Zhong LLP, was specifically retained to handle claim amendments. Mr. Zhong submitted the amendments to the PTO, Dkt. 10-2 at 38, and he alone argued for the allowance of the amended claims to the Examiners. *Id*. at 23 ("Patent Owner's representative Jialin Zhong discussed new claims."). While Fabricant attorneys attended examiner interviews, their mere presence at those interviews and presentation of arguments is not probative of drafting amended claims. *Id*.

To the contrary, Fabricant LLP's role in the reexamination was expressly permitted by the Protective Order. It states:

> "The prohibitions in this Paragraph ***are not intended to and shall not preclude counsel who obtains, receives or otherwise learns of, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL*** of a technical nature from participating directly or indirectly in reexamination . . . provided that any attorney who obtains, receives, or otherwise learns, in whole or in party, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature produced by another Party may not, directly or indirectly, advise, consult, or participate in the drafting of amended or substitute claims in the proceeding, and will not use any of the producing Party's Protected Material in the proceeding."

Dkt. 10-10 at ¶ 11 (emphasis added).

Google's allegation that the "single most reasonable inference from the record is that Iturralde and Rubino each 'advise[d], consult[ed], [and] participate[d] in the drafting of amended or substitute claims' during the reexamination of the '970 patent" because they did what the Protective Order expressly allows them to do—participate in the reexamination—should be rejected. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 275465, at *7-10 (E.D. Tex. Jan. 20, 2017) ("What is missing from Lilly's proof of unclean hands is any evidence that Dr. Uckert's participation" Defendants cannot point to any conduct so "as to shock the moral sensibilities of the judge" or "offensive to the dictates of natural justice" sufficient to establish unclean hands. *See Gaudioso v. Mellon*, 269 F.2d 873, 882 (3d Cir. 1959); *Aptix*, 269 F.3d at 1375. Google provides no factual support for this theory, which fails to identify the "how" of the inferred theory. In its pleading, Google seeks to expand the breadth of the Protective Order's prohibitions by alleging that any involvement in the reexamination is *prima facie* evidence of a violation. There is no factual link between the expressly permissible participation in reexamination examiner interviews and any allegation of violative conduct. To the contrary, Google previous inquiry into the same questions regarding the protective order resulted in Google dropping their inquiry after Fabricant LLP provided a written explanation of the requirements of the Protective Order and of the extent of Fabricant LLP and Zhong LLP's roles in the reexamination proceeding. This revival is a naked attempt to weaponize the Protective Order and interfere with counsel's representation of their client in the litigation.

Defendants have presented no facts plausibly suggesting that any Fabricant LLP lawyer participated in the drafting of any amendment claims in the '970 Patent reexamination or otherwise violated the Protective Order. Accordingly, Defendants respectfully requests that Count IV be dismissed.

## VIII.   IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS

### A.   This Action Could Have Been Brought in the Eastern District of Texas

It is undisputed that AGIS Software is a Texas corporation headquartered in Marshall, Texas. Dkt. 42 at 4. EDTX could have properly exercised personal jurisdiction over AGIS Software and venue would have been proper there pursuant to 28 U.S.C. §§ 1391 and 1400(b). *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 265 (2017). EDTX has subject matter jurisdiction over

1   Google's declaratory judgment claims relating to patent infringement under 28 U.S.C. §§ 1331, 1338(a),

2   2201, and 2202. Thus, this action could have properly been brought in EDTX.

3       **B.      This Action Should Be Transferred to the Eastern District of Texas**

4           The judicial resources, court congestion, and local interest public factors, and the plaintiff's

5   choice of forum, convenience, and access to proof private factors strongly favor transfer to EDTX.

6       **1.      Transfer Saves Judicial Resources and Protects Against Inconsistent Rulings**

7           The court's familiarity of the issues can be decisive in highly technical cases such as this. *See*

8   *Regents of Univ. of al. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). In *Regents*, the plaintiff

9   brought suit against Lilly in the NDCA for infringement of its patent covering recombinant DNA

10  technology. *Id.* at 1562. The case was consolidated for discovery purposes with four other cases in the

11  Southern District of Indiana pursuant to multi-district litigation procedures. *Id.* at 1563. The Federal

12  Circuit, in upholding the Indiana court's decision to transfer venue to itself for trial after discovery was

13  complete, provided that where "several highly technical factual issues are presented and the other

14  relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has

15  become familiar with the issues." *Id.* at 1565 (citing *Commodity Futures Trading Comm'n v. Savage*,

16  611 F.2d 270, 279 (9th Cir. 1979)).

17          Likewise, the EDTX has already expended a substantial amount of time and effort in becoming

18  familiar with issues relating to the '970 Patent. The *AGIS I* and *AGIS II* cases involving the '970 Patent

19  proceeded before Chief Judge Gilstrap from filing through just before the pre-trial conferences. To date,

20  EDTX has issued three claim construction orders regarding the '970 Patent and will issue a fourth claim

21  construction order following a November 3, 2023 Markman hearing in *AGIS Software Dev. LLC v.*

22  *Samsung Electronics Co., Ltd.*, *et al.*, No. 2:22-cv-263 (E.D. Tex.). EDTX is familiar with the

23  technology, the detailed disclosures and claim terms for the '970 Patents, the file histories, various expert

24  opinions on the technology and interpretation of various claim terms, and the parties' arguments on

25  various issues. It would be duplicitous for this Court to invest the time and energy to familiarize itself

26  with the relevant technology when Chief Judge Gilstrap and Magistrate Judge Payne of EDTX have

27  already done so, and where transfer would avoid inconsistent rulings. It would also cause unnecessary

28  delay and expense for this Court to familiarize itself with the technology when significant resources have

1  already been spent doing so in EDTX. On the other hand, this Court has no familiarity with the '970

2  Patent, which is not part of the consolidated case, *AGIS Software Dev. LLC v. Google LLC*, Case No.

3  22-cv-04826-BLF (N.D. Cal.). Accordingly, it would serve the interests of justice to transfer this case to

4  the EDTX to save judicial resources and avoid duplicative, and potentially inconsistent, rulings.

**2.      Plaintiff's Choice of Forum Should be Accorded No Weight**

6  Google's choice of forum should receive no weight. AGIS Software and Google first litigated

7  issues involving the '970 Patent when AGIS Software filed a November 4, 2019 complaint against

8  Google in *AGIS I*, which was transferred to this District based on Google's material misrepresentations

9  and omissions to EDTX and to the Federal Circuit regarding the location of sources of proof for FMD.

10  At present, the only district court with a live dispute involving infringement and validity the '970 Patent

11  is EDTX. *See Samsung Texas Case*, Dkt. 1, filed July 14, 2022. Accordingly, Google's choice of forum

12  should be accorded no weight, and this factor should be neutral or weigh in favor of transfer.

**3.      Convenience of the Parties and Witnesses Weighs in Favor of Transfer**

14  The convenience of the parties and witnesses favors transfer to EDTX. In considering transfer

15  motions, courts weigh the desire to avoid multiple litigations based on a single transaction. *Fitbit, Inc.*

16  *v. Koninklijke Philips N.V.,* 336 F.R.D. 574, 587 (N.D. Cal. 2020) (convenience factor favored transfer

17  where related patent actions between the parties were pending in the transferee court). Permitting these

18  parallel actions to proceed in fora approximately two thousand miles apart presents significant challenges

19  and would not outweigh the convenience of adjudicating the actions in a single court.

20  Moreover**,** "the convenience of witnesses is said to be the most important factor in passing on a

21  transfer motion." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501

22  (C.D. Cal. 1981). Of particular importance is the convenience of non-party witnesses and their relative

23  importance in the case. *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160–65 (S.D. Cal. 2005)

24  (convenience factor weighed heavily in favor of transfer where Defendants demonstrated that they had

25  important witnesses with first-hand knowledge relevant and material to Plaintiff's allegations). Two of

26  AGIS Software's key third-party witnesses are located in or near EDTX. AGIS Software's technical

27  experts reside and work in Texas. Dr. Brogioli resides and works in Texas with an office in Austin, TX.,

28  and Mr. McAlexander resides and works in the Eastern District of Texas. Beyer Decl. at 8 ¶ 44. Dr.

1  Brogioli and Mr. McAlexander have confirmed that EDTX is more convenient than NDCA. *Id.*; *see also*

2  *Aloft Media, LLC v. Adobe Sys. Inc.*, No. 6:07-cv-355, 2008 WL 819956, at *5 (E.D. Tex. Mar. 25, 2008)

3  ("[A] patent trial often revolves around the strength of expert witness testimony, and many experts are

4  also non-party witnesses."). EDTX is also more convenient for AGIS Software's other key party and

5  non-party witnesses. First, Eric Armstrong, a full-time consultant for third-party AGIS, Inc., has lived

6  and worked in Allen, Texas, since 2017. Beyer Decl. at 6 ¶ 38. Mr. Armstrong is a programmer and

7  software developer responsible for designing and developing client-side and server-side software for the

8  LifeRing and ASSIST solutions, and thus has relevant knowledge regarding the LifeRing products. *Id.*

9  at 6-7 ¶ 39. Second, Mr. Christopher Rice, a consultant of AGIS, Inc., is a software developer and

10  programmer who works on the LifeRing solution. *Id.* at 8 ¶ 42. Although Mr. Rice is located in Superior,

11  CO, he has confirmed that EDTX is more convenient than this district. *Id.*; *see also Aerielle, Inc. v.*

12  *Monster Cable Prods., Inc.*, No. 2:06-cv-382 (TJW), 2007 WL 951639, at *2 (E.D. Tex. Mar. 26, 2007)

13  (considering several key defendant witness affidavits stating their willingness to travel to the EDTX).

14       AGIS Software's Chief Executive Officer and a named inventor on the '970 Patent, Mr. Malcolm

15  K. Beyer, Jr., resides in Florida. *See* Beyer Decl. at 2 ¶ 4. Moreover, Ronald Wisneski, Margaret Beyer,

16  and George Barros are potential AGIS Software witnesses who live and work in Jupiter, Florida and

17  Vienna, Virginia. *Id.* at 8 ¶ 43. These locations are significantly closer to EDTX than the Northern

18  District of California, and the witnesses would find it more convenient to travel to EDTX. *Id.* 8 ¶ 45.

19  Accordingly, litigation in California is inconvenient for AGIS Software and transferring this case to

20  EDTX would be much more convenient for the parties and non-party witnesses.

21            **4.      The Relative Ease of Access to Sources of Proof**

22       As an initial matter, this factor has diminished importance because: (1) Google will not be able

23  to identify any sources of proof that cannot be transferred electronically; and (2) Google is already

24  participating in discovery in the EDTX. *See Hansell v. TracFone Wireless Inc.*, No. C-13-3440-EMC,

25  2013 WL 6155618, at *4 (N.D. Cal. Nov. 22, 2013) (factor weighed "minimally, if at all," where

26  electronic form of relevant documents was undisputed). Further, access to relevant, tangible evidence is

27  easier in Texas. AGIS Software is incorporated and headquartered in EDTX, and maintains its

28  documents, including patents, files histories, assignment records, prosecution records, formation

documents, licenses, agreements, and corporate records at its office in the Eastern District. *See* Beyer Decl. at 5 ¶ 31. AGIS Software's sister entity and non-party source code, technical documents, and other data related to the LifeRing and ASSIST products and solutions, which practice claimed inventions of the '970 Patent, are stored at AGIS's data center in Marshall, Texas, in the EDTX. *Id.* 5 ¶ 32.

In stark contrast, on information and belief, Google's FMD source code, documents, and custodians are in London, England–not California. Based on discovery produced by Google to AGIS in other cases, all witnesses, and sources of proof for the current versions of FMD are located in London, England. To the extent Google disputes these facts, AGIS intends to request the production of that discovery in this case for the Court's consideration of this Motion.

### 5. The Remaining Public and Private Interest Factors Also Favor Transfer

The Federal Rules of Civil Procedure shall "be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Tafolla v. City of Tustin*, 885 F.2d 1473, 1477 (9th Cir. 1989). Transfer to the EDTX ensures expeditious access to judicial resources because Chief Judge Gilstrap is already familiar with the issues. Moreover, this district is significantly more congested than the EDTX. *See Monarch Networking Solutions LLC v. Cisco Sys., Inc.*, No. 2:20-Cv-00015-JRG, fn. 19 (E.D. Tex. Jan. 15, 2021) (citing *National Judicial Caseload Profile,* ADMIN. OFFICE OF U.S. CTS. (Sept. 30, 2020)) ("For the twelve-month period ending September 30, 2020, the median time from filing to trial in civil cases was 18.0 months in [E.D. Tex.] and 44.5 months in the Northern District of California. For the period ending September 30, 2019, those figures were 16.8 months in [E.D. Tex.] and 22.8 months in the Northern District of California."). Finally, there can be no dispute that Texas has a substantial local interest in adjudicating this dispute against AGIS Software, one of its residents. *See, e.g.*, *Seven Networks v. Google LLC*, No. 2:17-cv-00442-JRG, 2018 WL 4026760, at *14 (E.D. Tex. Aug. 14, 2018) ("There is little doubt that this District has a local interest in the disposition of any case involving a resident corporate party."). Therefore, the remaining public and private interest factors strongly favor transferring this case to EDTX.

## IX. CONCLUSION

For the foregoing reasons, AGIS Software respectfully requests that the Court grant dismissal or transfer this action to the United States District Court for the Eastern District of Texas.

DATED: November 27, 2023

Respectfully submitted,

**RUSS AUGUST & KABAT**

By: */s/ Benjamin T. Wang*
  Benjamin T. Wang

**FABRICANT LLP**
Alfred R. Fabricant
ffabricant@fabricantllp.com
Peter Lambrianakos
plambrianakos@fabricantllp.com
Vincent J. Rubino, III
vrubino@fabricantllp.com
411 Theodore Fremd Ave., Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Benjamin T. Wang (CA SBN 228712)
bwang@raklaw.com
Minna Y. Chan (CA SBN 305941)
mchan@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-9226

*Attorneys for Defendants*
*AGIS Holdings, Inc., Advanced Ground*
*Information Systems, Inc., and AGIS*
*Software Development LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 27th day of November 2023, with a copy of this document via the Court's CM/ECF system.

*/s/ Benjamin T. Wang*
Benjamin T. Wang
