DARIN SNYDER (CA S.B. #136003)
dsnyder@omm.com
LUANN L. SIMMONS (CA S.B. #203526)
lsimmons@omm.com
MARK LIANG (CA S.B. #278487)
mliang@omm.com
BILL TRAC (CA S.B. #281437)
btrac@omm.com
AMY LIANG (CA S.B. #291910)
aliang@omm.com
SORIN ZAHARIA (CA S.B. #312655)
szaharia@omm.com
DANIEL SILVERMAN (CA S.B. #319874)
dsilverman@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:     +1 415 984 8700

*Attorneys for Plaintiff*
*Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE LLC, | Case No. 5:23-cv-03624-BLF |
| Plaintiff, | Hon. Judge Beth L. Freeman |
| v. | **GOOGLE LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER** |
| AGIS HOLDINGS, INC., ADVANCED GROUND INFORMATION SYSTEMS, INC., AND AGIS SOFTWARE DEVELOPMENT LLC, | Date: March 21, 2024 |
| Defendants. | Time: 9:00 a.m. |
| | Location: Courtroom 3 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................... 1

    A.   The Parties ................................................................................................ 1

    B.   '970 Patent Litigation History .................................................................. 2

III.   THIS COURT HAS PERSONAL JURISDICTION OVER THE AGIS ENTITIES ......... 4

    A.   Legal Standard For Personal Jurisdiction ................................................ 4

    B.   AGIS Entities Are Alter Egos For Purposes Of Personal Jurisdiction ................... 4

        1.   There Is Unity Of Interest And Ownership ..................................... 4

        2.   Justice Requires Disregarding AGIS's Putative Separate Identities ........... 7

    C.   AGIS Entities' Contacts With This District Confer Personal Jurisdiction ............. 7

        1.   AGIS's Contacts With Google Confer Personal Jurisdiction ................... 8

            a.   AGIS Purposefully Directed Activities At Google .............................. 8

            b.   AGIS's Contacts With Google Relate To Google's Claims ................. 9

        2.   AGIS's Contacts With Third Parties Establish Personal Jurisdiction ........ 10

    D.   AGIS Has Consented To Jurisdiction In The Northern District Of California ......... 11

    E.   The Exercise Of Personal Jurisdiction Is Fair ........................................ 12

    F.   In The Alternative, Google Requests Jurisdictional Discovery ............... 13

IV.    CLAIM PRECLUSION AND THE *KESSLER* DOCTRINE (COUNT III) ...................... 13

    A.   Legal Standards For Claim Preclusion And The *Kessler* Doctrine ................ 13

    B.   Google Has Sufficiently Pleaded Claim Preclusion And The *Kessler* Doctrine ....... 14

V.     INEQUITABLE CONDUCT (COUNT IV) ..................................................... 17

    A.   Legal Standard Governing Inequitable Conduct ..................................... 17

    B.   Google Has Sufficiently Pleaded Inequitable Conduct ........................... 18

VI.    UNCLEAN HANDS (COUNT V) ................................................................... 19

    A.   Legal Standard Governing Unclean Hands ............................................. 19

    B.   Google Has Sufficiently Pleaded Unclean Hands ................................... 20

VII.   THIS CASE SHOULD NOT BE TRANSFERRED TO THE EDTX ...................... 21

    A.   Legal Standard Governing Transfer ....................................................... 21

    B.   AGIS Fails To Show This Suit Could Have Been Brought In The EDTX ......... 22

    C.   The EDTX Is Not More Convenient Than The NDCA ........................... 22

**TABLE OF CONTENTS**
**(continued)**

Page

1.    Google's Choice Of Forum Weighs Strongly Against Transfer ............... 22

2.    Convenience Of Witnesses Weighs Strongly Against Transfer ............... 22

3.    Access To Sources Of Proof Weighs Strongly Against Transfer ............. 23

4.    Judicial Economy Weighs Strongly Against Transfer ............................. 24

5.    Remaining Factors Weigh Against Transfer Or Are Neutral................... 25

VIII.    CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

Page

<u>CASES</u>

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
975 F. Supp. 2d 1083 (N.D. Cal. 2013) ............................................................... 10

*Acumed LLC v. Stryker Corp.*,
525 F.3d 1319 (Fed. Cir. 2008)............................................................................. 14

*AGIS Software Dev. LLC v. Google LLC*,
No. 2:19-CV-00361-JRG (E.D. Tex.) ........................................................... passim

*AGIS Software Dev. LLC v. Google LLC*,
No. 5:22-CV-04826-BLF .......................................................................................... 3

*AGIS Software Dev. LLC v. Google LLC*,
No. 6:23-CV-00160-DC-DTG .......................................................................... 3, 14

*AGIS Software Dev. LLC v. Samsung Elecs. Co.*,
No. 2:22-cv-263-JRG-RSP ................................................................................... 3, 4

*Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*,
2022 WL 11819975 (D. Del. Oct. 20, 2022) ....................................................... 20

*Apple Inc. v. VoIP-Pal.com, Inc.*,
506 F. Supp. 3d 947 (N.D. Cal. 2020) ................................................................. 12

*Apple Inc. v. Zipit Wireless, Inc.*,
30 F.4th 1368 (Fed. Cir. 2022).................................................................................. 4

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012)....................................................................... 15, 16

*Brain Life, LLC v. Elekta Inc.*,
746 F.3d 1045 (Fed. Cir. 2014)............................................................................. 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).................................................................................... 4, 8, 12

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,
142 F.3d 1266 (Fed. Cir. 1998)............................................................................ 6, 7

*Elecs. for Imaging, Inc. v. Coyle*,
340 F.3d 1344 (Fed. Cir. 2003)................................................................................ 9

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
2017 WL 275465 (E.D. Tex. Jan. 20, 2017) ........................................................ 21

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)............................................................................. 17

*Finjan, Inc. v. Juniper Network, Inc.*,
2018 WL 4181905 (N.D. Cal. Aug. 31, 2018)..................................................... 21

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
721 F.3d 1330 (Fed. Cir. 2013) ............................................................................ 15

**TABLE OF AUTHORITIES**
(continued)

Page

*Gilead Scis., Inc. v. Merck & Co.,*
888 F.3d 1231 (Fed. Cir. 2018) .......................................................................... 19

*Google Inc. v. Eolas Techs. Inc.,*
2014 WL 2916621 (N.D. Cal. June 4, 2014) ...................................................... 11

*Google Inc. v. Rockstar Consortium U.S. LP,*
2014 WL 1571807 (N.D. Cal. Apr. 17, 2014) ................................................... 6, 7

*Graphics Properties Holdings, Inc. v. Google, Inc.,*
2014 WL 6629021 (D. Del. Nov. 20, 2014) ....................................................... 19

*In re Genentech, Inc.,*
566 F.3d 1338 (Fed. Cir. 2009) ..................................................................... 24, 25

*In re Google Inc.,*
2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ....................................................... 25

*In re Google LLC,*
2022 WL 1613192 (Fed. Cir. May 23, 2022) ............................................... passim

*In re Juniper Networks, Inc.,*
14 F.4th 1313 (Fed. Cir. 2021) ........................................................................... 24

*In re PersonalWeb Techs. LLC,*
961 F.3d 1365 (Fed. Cir. 2020) .......................................................................... 17

*In re Samsung Elecs. Co.,*
2 F.4th 1371 (Fed. Cir. 2021) ............................................................................. 23

*Inamed Corp. v. Kuzmak,*
249 F.3d 1356 (Fed. Cir. 2001) .......................................................................... 12

*Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC,*
910 F.3d 1199 (Fed. Cir. 2018) .......................................................................... 11

*Jazz Pharms., Inc. v. Roxane Lab'ys, Inc.,*
2013 WL 6858765 (D.N.J. Dec. 30, 2013) ........................................................ 20

*Laitram Corp. v. NEC Corp.,*
163 F.3d 1342 (Fed. Cir. 1998) .......................................................................... 15

*Laub v. U.S. Dep't of Interior,*
342 F.3d 1080 (9th Cir. 2003) ............................................................................ 13

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.,*
719 F.3d 1367 (Fed. Cir. 2013) .......................................................................... 16

*Life360, Inc. v. AGIS, Inc.,*
No. 15-cv-151-BLF, 2015 WL 5612008 (N.D. Cal. Sept. 21, 2015) .................. 11

*Lyft, Inc. v. AGIS Software Dev. LLC,*
2022 WL 1991265 (N.D. Cal. June 6, 2022) ........................................................ 5

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
*Lyft, Inc. v. AGIS Software Dev. LLC,*
   2022 WL 267409 (N.D. Cal. Jan. 28, 2022) ................................................... 5

4

*Lyft, Inc. v. AGIS Software Dev. LLC,*
   2022 WL 767616 (N.D. Cal. Mar. 14, 2022)....................................... 21, 22, 23

5

*Lyft, Inc. v. AGIS Software Dev. LLC,*
   No. 21-cv-04653-BLF (N.D. Cal.).................................................................. 13

6

7
*Magnacoustics, Inc. v. Resonance Tech. Co.,*
   132 F.3d 49 (Table) (Fed. Cir. 1997) ............................................................ 22

8

*Natera, Inc. v. Genosity Inc.,*
   2022 WL 767602 (D. Del. Mar. 14, 2022) ..................................................... 19

9

10
*Nilssen v. Osram Sylvania, Inc.,*
   504 F.3d 1223 (Fed. Cir. 2007)...................................................................... 19

11

*Nystrom v. Trex Co.,*
   580 F.3d 1281 (Fed. Cir. 2009) ..................................................................... 13

12

13
*Pactiv Corp. v. Dow Chem. Co.,*
   449 F.3d 1227 (Fed. Cir. 2006)................................................................. 16, 17

14

*Park v. Dole Fresh Vegetables, Inc.,*
   964 F. Supp. 2d 1088 (N.D. Cal. 2013) ......................................................... 22

15

*Ranza v. Nike, Inc.,*
   793 F.3d 1059 (9th Cir. 2015)......................................................................... 4

16

17
*Realtime Adaptive Streaming LLC v. Netflix, Inc.,*
   41 F.4th 1372 (Fed. Cir. 2022)...................................................................... 14

18

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
   148 F.3d 1355 (Fed. Cir. 1998)........................................................................ 9

19

20
*Regeneron Pharm., Inc. v. Merus N.V.,*
   864 F.3d 1343 (Fed. Cir. 2017)...................................................................... 17

21

*Ross v. Abbott Vascular, Inc.,*
   |2020 WL 4934487 (N.D. Cal. Apr. 6, 2020) ................................................. 13

22

*Senju Pharm. Co. v. Apotex Inc.,*
   746 F.3d 1344 (Fed. Cir. 2014)................................................................. 15, 16

23

24
*Stragent, LLC v. BMW of N. Am., LLC,*
   2021 WL 1147468 (D. Del. Mar. 25, 2021) ................................................... 16

25

*Target Training Int'l v. Extended Disc N. Am.,*
   645 F. App'x 1018 (Fed. Cir. 2016) ............................................................... 16

26

27
*Trimble Inc. v. PerDiemCo LLC,*
   997 F.3d 1147 (Fed. Cir. 2021)................................................................. passim

28

v

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG,*
    848 F.3d 1346 (Fed. Cir. 2017) ........................................................................... 4, 9

**STATUTES**

28 U.S.C. § 1404(a) ........................................................................................................ 21

**OTHER AUTHORITIES**

ITC Inv. No. 337-TA-1347 ............................................................................................... 3

**RULES**

Fed. R. Civ. P. 41 ........................................................................................................... 14

Fed. R. Civ. P. 41(a)(1) .................................................................................................. 14

Fed. R. Civ. P. 41(a)(1)(B) ....................................................................................... 14, 17

1    **I.       INTRODUCTION**

2           This Court has personal jurisdiction over the three AGIS defendants (collectively, "AGIS")

3    because of their extensive history of patent licensing and enforcement activities in this District,

4    against plaintiff Google and many other NDCA-based companies.  As AGIS has itself alleged,

5    since 2008, AGIS, Inc. has repeatedly contacted Google to leverage AGIS's patents—all of which

6    are in the '970 Patent family—in an effort to obtain licenses or sell its patents and technology to

7    Google.  Since forming AGIS Software in 2017, AGIS has filed 27 district court cases, 20 of which

8    are against Google and its customers.  Moreover, AGIS has twice ***consented*** to litigating in this

9    District, once in a forum selection clause in an agreement with Google and again in agreeing to

10   transfer one of its Texas cases against Google asserting the '970 Patent, the same patent at issue

11   here, to this District.  AGIS's patent-related activities against Google and other NDCA-based

12   companies and agreements to litigate in this Court confer personal jurisdiction.

13          Google has also more than sufficiently pleaded its causes of action.  For Count III,

14   preclusion, AGIS's ***two*** prior dismissals of claims for relief asserting the '970 Patent have

15   preclusive effect.  For Count IV, inequitable conduct, AGIS failed to disclose a Federal Circuit

16   indefiniteness ruling for a related patent that, based on AGIS's own statements, is directly relevant

17   to AGIS's '970 Patent reexamination claim amendments.  For Count V, unclean hands, the same

18   litigation counsel who reviewed Google's confidential documents for Find My Device ("FMD")

19   software then participated in amending claims that target FMD, directly violating a protective order.

20          Finally, AGIS is not entitled to transfer.  AGIS fails to meet its burden to show that Google

21   could have brought this suit against all three AGIS entities in EDTX.  Moreover, all of the transfer

22   factors weigh strongly against transfer—indeed, both this Court and the Federal Circuit have

23   already found the NDCA to be more convenient than the EDTX in other cases involving AGIS,

24   including a case where AGIS was asserting the '970 Patent against FMD.

25   **II.      FACTUAL AND PROCEDURAL BACKGROUND**

26          **A.       The Parties**

27          Plaintiff Google LLC's principal place of business is in Mountain View, California, in this

28   District.  First Amended Complaint ("FAC"), ECF 42 ¶12; *see also* ECF 48 (unredacted version).

Defendants AGIS, Inc. and AGIS Holdings are Florida corporations with their principal place of business at the same address in Jupiter, Florida.  FAC ¶13.  As detailed in the FAC, from 2008 to the present, AGIS, Inc. has purposefully directed business, patent, and licensing efforts at Google and other NDCA-based companies regarding the '970 Patent or related patents, and AGIS, Inc.'s LifeRing product, which practices the '970 Patent according to AGIS.  *Id.* ¶¶108-155.

On June 1, 2017, AGIS Software was created as a Texas LLC, headquartered at a lawyer's office in Marshall, Texas, blocks away from the EDTX Marshall courthouse.  *Id.* ¶46; *see also* ECF 44-1, Beyer Decl. ¶13.  Two weeks later, AGIS, Inc. assigned the '970 Patent and all its other patents to AGIS Software via AGIS Holdings without consideration.  FAC ¶¶47-48.

AGIS, Inc. and AGIS Software are wholly owned subsidiaries of AGIS Holdings.  *Id.* ¶49.  Malcom K. Beyer, Jr., the named inventor of the '970 Patent, is the CEO of all three AGIS entities.  *Id.* ¶50.  AGIS Software also identifies as its own business address the Jupiter, Florida headquarters of AGIS Holdings and AGIS, Inc., and all of AGIS Software's board members and shareholders are employees, officers, board members, or shareholders of AGIS, Inc.  *Id.* ¶51.

## B.  '970 Patent Litigation History

AGIS Software has asserted the '970 Patent in 18 actions against Google and its customers, alleging infringement based on FMD, summarized below:

2017 Customer Lawsuits:  On June 21, 2017, 20 days after its formation, AGIS Software filed lawsuits asserting the '970 Patent and related patents against Google's customers, HTC, Huawei, ZTE, and LG, based on their smartphones' use of FMD.  *Id.* ¶61.  As part of those cases, AGIS Software served Google with deposition and document subpoenas, requesting testimony, source code, and documents about FMD.  *Id.* ¶62.  The subpoenas identified this District as the place of compliance, and AGIS has since relied on these litigations and the subpoenas to argue Google had notice of infringement of the '970 Patent.  *Id.* ¶¶60-62.

Soon after Google filed an IPR challenging the '970 Patent, AGIS engaged in settlement and patent licensing negotiations with Google, including calls between AGIS and Google on at least June 25, 2018, and July 16, 2018.  *Id.* ¶¶63-65.

2019 "*Google AGIS I*" Litigation:  On November 4, 2019, AGIS Software filed suit against

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1   Google in the Eastern District of Texas ("EDTX") asserting, among other claims, the '970 Patent

2   against FMD.  *AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG (E.D. Tex. Nov.

3   4, 2019) ("*Google AGIS I*"); FAC ¶5.   After the Federal Circuit granted Google's mandamus

4   petition, the *Google AGIS I* case was transferred to this District, and this Court has been presiding

5   over the case since August 25, 2022.  *AGIS Software Dev. LLC v. Google LLC*, No. 5:22-CV-

6   04826-BLF.  After transfer, Google re-filed in this District its motion to dismiss the '970 Patent for

7   lack of subject matter jurisdiction because AGIS Software had substantively amended the patent's

8   asserted claims during an *ex parte* reexamination proceeding filed in 2020.  FAC ¶6.  In response,

9   AGIS Software dismissed the '970 Patent with prejudice.  *Id.*; *see Google AGIS I*, ECF 437, 438.

10      2022 ITC Action:  On November 16, 2022, AGIS Software and AGIS, Inc. together filed

11  an ITC action against Google, Samsung, and eleven other respondents, along with parallel district

12  court actions in the EDTX against each of those eleven other respondents.  *See* ITC Inv. No. 337-

13  TA-1347.   Each  of  the  additional  respondents  are  Google's  customers,  and  AGIS  asserted

14  infringement of the '970 Patent against each respondent based on FMD.  *See id.*

15      2023 WDTX Action:  On March 1, 2023, before dismissing with prejudice the '970 Patent

16  in the NDCA, AGIS Software sued Google in the WDTX, again asserting the '970 Patent against

17  FMD.  *AGIS Software Dev. LLC v. Google LLC*, No. 6:23-CV-00160-DC-DTG ("WDTX Case").

18  Google  then  filed  an  unopposed  motion  for  stay  pending  resolution  of  the  ITC  Action,  which

19  memorialized AGIS's agreement to transfer the WDTX Case to this District:  "[t]he parties have

20  agreed that if and after the requested stay has been lifted, AGIS will not oppose a motion by Google

21  to transfer this case to the Northern District of California following the stay."  WDTX Case, ECF

22  10 at 3 n.1.  On July 20, 2023, AGIS Software dismissed the WDTX Case.  *Id.*, ECF 12.

23      2023 Samsung EDTX Action:  On July 14, 2022, AGIS Software sued Samsung in the

24  EDTX.  *AGIS Software Dev. LLC v. Samsung Elecs. Co.*, No. 2:22-cv-263-JRG-RSP ("Samsung

25  EDTX Action").   Initially, in opposing a stay of this case pending resolution of the ITC Action,

26  AGIS stated that it was not asserting infringement by Samsung based on FMD.  *Id.*, ECF 41 at 2.

27  But over a year into the case, on August 24, 2023, AGIS obtained leave to amend its infringement

28  contentions to assert the '970 Patent against FMD.  *Id.*, ECF 115.  Samsung has moved to sever

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

and transfer the FMD claims to this District, and that motion remains pending. *Id.*, ECF 117.

## III.   THIS COURT HAS PERSONAL JURISDICTION OVER THE AGIS ENTITIES

### A.   Legal Standard For Personal Jurisdiction

Federal Circuit law applies for assessing personal jurisdiction in a declaratory judgment matter involving only patent claims. *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017). At the pleading stage and in the absence of an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. *Id.*

Google relies on specific jurisdiction, which requires the existence of "minimum contacts," meaning "(1) the defendant 'purposefully directed' its activities at residents of the forum; and (2) [] the claim 'arise[s] out of or relate[s] to' the defendant's activities within the forum." *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1375 (Fed. Cir. 2022). Alternatively, a party may "consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). Once minimum contacts are shown, the defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

The contacts of related entities may be used to extend personal jurisdiction where one entity is the alter ego of another. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). To satisfy the alter ego test, a plaintiff must make out a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id.*

### B.   AGIS Entities Are Alter Egos For Purposes Of Personal Jurisdiction

Each AGIS defendant entity's contacts with this District can be imputed to the others for personal jurisdiction, as all three are alter egos of each other.

#### 1.   There Is Unity Of Interest And Ownership

AGIS Holdings, AGIS, Inc., and AGIS Software are alter egos of each other because there is complete unity of interest and ownership. The AGIS entities are commonly owned and controlled, and they operate jointly to litigate and license AGIS's patents. Indeed, on similar facts in an AGIS case against Lyft (another NDCA-based company), this Court granted, over AGIS's opposition, Lyft's motion for leave to amend its complaint to add all three AGIS entities as

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

defendants based on an alter ego theory, finding the alter ego relationship to be adequately pleaded and not "futile," as AGIS argued. *Lyft, Inc. v. AGIS Software Dev. LLC*, 2022 WL 1991265, at *2 (N.D. Cal. June 6, 2022).[1]  Here, Google pleads the same allegations as Lyft and much more.

Specifically, AGIS, Inc. alleges it has been leveraging its patent portfolio for licensing and business purposes since at least 2008, when it first allegedly contacted Google regarding its patents and its patent-practicing LifeRing product.  FAC ¶¶113-123.  AGIS, Inc. also contacted Life360, a San Francisco-based company, before filing suit in 2014.  *Id.* ¶¶123-127.   Then, in 2017, AGIS, Inc. assigned (without consideration) its patents to AGIS Software, whose sole purpose is to continue what AGIS, Inc. started—leveraging AGIS's patent portfolio.  *Id.* ¶¶32-33, 46-48, 55, 61.

All three AGIS entities are commonly owned, with AGIS Holdings owning AGIS, Inc. and AGIS Software.  *Id.* ¶49.  And the same officers control all three entities (*id.* ¶¶42-43, 49-50):

| Executive | AGIS Software | AGIS Holdings | AGIS, Inc. |
|---|---|---|---|
| Malcolm K. Beyer Jr. | CEO | CEO / Director / Chairman | CEO / Director / Chairman |
| Margaret Beyer | Secretary | Secretary / Director | Secretary / Director |
| Ronald Wisneski | CFO / Treasurer | CFO / Treasurer | CFO / Treasurer |
| Sandel Blackwell | President | President / Director | President |

Although AGIS Software purports to be a Texas corporation, it has no employees of its own, and no one affiliated with the company is in Texas.  Instead, each of the AGIS entities operates out of the same address in Jupiter, Florida.  *Id.* ¶¶35-39, 54.  AGIS entities also fail to maintain corporate distinctiveness and commingle funds among themselves.  *Id.* ¶¶25-26, 31, 40-41.  Indeed, AGIS Software is undercapitalized and describes itself as an "inanimate entity."  *Id.* ¶¶ 23-24.  The primary source of revenue for all three is licensing of AGIS Software's patents.  *Id.* ¶¶27-29.

AGIS, Inc. and AGIS Holdings remain actively involved in AGIS Software's patent

---

[1] AGIS's motion repeatedly cites an earlier decision from this Court dismissing Lyft's *original* complaint against AGIS.  ECF 44 ("Mot.") at 5, 12, 15 (citing *Lyft, Inc. v. AGIS Software Dev. LLC*, 2022 WL 267409 (N.D. Cal. Jan. 28, 2022)).  AGIS omits that Lyft then moved for leave to amend its complaint to add more allegations to support personal jurisdiction and an alter ego theory, which the Court found sufficient to support granting leave.  *Lyft*, 2022 WL 1991265.

licensing and enforcement efforts.  AGIS Holdings was created in 2017, shortly before AGIS Software, and is merely a holding entity for AGIS Software and AGIS, Inc.  *Id.* ¶¶46, 49.  In November 2022, both AGIS, Inc. and AGIS Software filed the ITC Action against Google and 11 of Google's customers, alleging infringement of the '970 Patent based on FMD.  *Id.* ¶¶17, 53.  The AGIS entities have together licensed their patents to many companies, including Apple, Huawei, HTC, LG, ZTE, WhatsApp/Facebook, Uber, T-Mobile, Smith Micro.  *Id.* ¶¶70-107.  These licenses were not executed solely by AGIS Software, but also include AGIS, Inc. and AGIS Holdings as either express signatories or as AGIS Software's affiliates and beneficiaries of the licenses.  *Id.*

The Federal Circuit has soundly rejected attempts by patent licensors, like AGIS, Inc., to evade jurisdiction based on the mere assignment of patents to a licensing entity.  In *Dainippon Screen Manufacturing Co. v. CFMT, Inc.*, the Federal Circuit found personal jurisdiction over both a business entity, CFM, and a patent holding subsidiary, CFMT, based on the activities of CFM.  142 F.3d 1266, 1271 (Fed. Cir. 1998).  As the Federal Circuit explained, a patent holding entity "cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction."  *Id.*

Similarly, this District has found personal jurisdiction over a newly-created licensing entity based on contacts of a parent.  *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 WL 1571807, at *4 (N.D. Cal. Apr. 17, 2014).  Applying *Dainippon*, the court in *Rockstar* found facts "strongly suggest[ing]" that a patent holding entity was a "sham entity [formed] for the sole purpose of avoiding jurisdiction" where it was formed just a day before a series of lawsuits was filed.  *Id.*  The *Rockstar* court found it noteworthy that the two entities shared employees, officers, and offices.  *Id.*

Google has pleaded even more facts than in *Dainippon* and *Rockstar* showing that AGIS Software is a sham entity.  Indeed, the Federal Circuit has ***already*** confirmed facts indicating that AGIS Software is a sham entity, holding that "the company's Texas office . . . does not appear to be a place of regular business; AGIS's principals and employees do not work from that office."  *In re Google LLC*, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022).  Google's allegations thus plead a prima facie case that the AGIS entities are alter egos of each other.

### 2.   Justice Requires Disregarding AGIS's Putative Separate Identities

It would be unjust to allow AGIS to evade personal jurisdiction by creating sham "separate" entities given its lengthy history of patent-related activities directed at this District, starting in 2008 when, according to AGIS, AGIS, Inc. began its campaign of patent and business-related communications with Google.  AGIS Software was formed in 2017 merely to continue AGIS's licensing efforts.  The facts here are similar to those in *Rockstar*, which found fraud and injustice where the original patent holder, Rockstar, created a licensing entity, MobileStar, just a day before suing several of Google's customers.  2014 WL 1571807, at *4.  Similarly, in *Dainippon*, where the operating company engaged in pre-suit licensing negotiations with the plaintiff, the Federal Circuit found those contacts must be imputed to its related patent holding entity.  142 F.3d at 1268.

While AGIS cites to decisions declining to impute contacts of an alter ego, few are in the patent context, and none involves facts comparable to the continuous history of interactions between AGIS and California companies, including Google.  Indeed, in its various litigations against Google, AGIS Software has relied on its years of communications between AGIS, Inc. and Google to allege that AGIS Software provided Google with pre-suit notice of AGIS's patents, including the '970 Patent. FAC ¶¶59-65, 114, 117-120.  It is plainly unfair for AGIS to assert—in an effort to obtain additional damages—that AGIS, Inc.'s alleged communications with Google in early 2008 constitute notice of the AGIS patents and Google's alleged infringement, while simultaneously asserting that AGIS, Inc. and those same communications should be disregarded in evaluating personal jurisdiction.  Justice requires that AGIS, Inc.'s interactions with Google be evaluated in determining personal jurisdiction over the AGIS entities.

### C.   AGIS Entities' Contacts With This District Confer Personal Jurisdiction

AGIS's Motion fails to acknowledge, let alone address, the many contacts between itself and this District.  Indeed, the contacts between AGIS Software alone and this District are sufficient to establish personal jurisdiction over AGIS Software.  But even if not, the combined contacts of all three, alter ego, AGIS entities are more than sufficient to confer personal jurisdiction over each.

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1.     **AGIS's Contacts With Google Confer Personal Jurisdiction**

a.     **AGIS Purposefully Directed Activities At Google**

A party "purposefully directs" its activities at residents of a state when it engages in more than "random," "fortuitous," or "attenuated" contacts with that state and its residents. *Burger King*, 471 U.S. at 475. Here, AGIS's contacts with Google—a California resident—are anything but random. As AGIS has itself argued, since 2008, AGIS, Inc. and subsequently AGIS Software deliberately and repeatedly contacted Google regarding AGIS's patents and its practicing LifeRing product in an attempt to license and sell its patents and technology. AGIS has alleged directing at least five sets of pre-suit communications to Google, and, thus, into California:

1.     AGIS has alleged that in 2008, AGIS, Inc. repeatedly attempted to contact Google's then-CEO, Eric Schmidt, through a relative of Mr. Schmidt, regarding a business partnership or license to AGIS's LifeRing product and its patent portfolio, including by sending a PowerPoint presentation identifying the parent of the '970 Patent, U.S. 7,031,728 ("'728 Patent"). FAC ¶ 114.

2.     From 2011-2012, AGIS, Inc. contacted Google seeking business and licensing partnerships, with AGIS once again leveraging its patents. *Id.* ¶115. During these discussions, AGIS, Inc. and Google entered into a nondisclosure agreement with a forum selection clause, designating Santa Clara, California in this District for disputes arising out of the agreement. *Id.* ¶116. During the discussions, Mr. Beyer offered Google the use of AGIS's patent-protected LifeRing product and boasted about AGIS's patents covering LifeRing. *Id.* ¶¶117-119.

3.     In 2014, AGIS, Inc.'s counsel sent a letter to Mr. Vivek Gundotra of Google, identifying AGIS's patents and inviting discussion with Google about licensing. *Id.* ¶120. AGIS, Inc. then continued to engage with Google, as AGIS sought to integrate features from Google's Maps API service into AGIS's patent-practicing LifeRing product. *Id.* ¶¶120-123.

4.     In 2017, AGIS Software filed suit against four Google customers—Huawei, LG, ZTE, and HTC—alleging, *inter alia*, infringement of the '970 Patent based on Google's FMD software. *Id.* ¶3. In 2018, AGIS Software served a subpoena on Google via its registered agent in the NDCA and specified the NDCA as the place of compliance. *Id.* ¶¶3, 60, 62.

5.     In 2018, after AGIS sued Google's customers, AGIS discussed licensing its patents,

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1   including the '970 Patent, with Google.  *Id.* ¶¶63-64.

2   "Communications sent into a state may create specific personal jurisdiction, depending on

3   the nature and scope of such communications."  *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147,

4   1155 (Fed. Cir. 2021).  "Minimum contacts may be established by 'the threat of an infringement

5   suit, as communicated in a cease-and-desist letter.'"  *Xilinx*, 848 F.3d at 1354 (quoting *Red Wing*

6   *Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998)).  Even a "***single***

7   ***contact*** with a forum state may suffice for personal jurisdiction if it is directly and substantially

8   related to the plaintiff's claim."  *Red Wing*, 148 F.3d at 1359 (emphasis added).  Here, AGIS's own

9   allegations show far more than a single contact.  Rather, AGIS purposely directed communications

10   at Google, a California resident, leveraging its patents in an attempt to license or sell them.

11   b.   **AGIS's Contacts With Google Relate To Google's Claims**

12   "[A] broad set of a defendant's contacts with a forum are relevant to the minimum contacts

13   analysis."  *Trimble*, 997 F.3d at 1156.  Examples of conduct "related to" a patent declaratory

14   judgment action include among others "communications from outside the forum" to a forum

15   resident relating to a patent," "demonstrat[ing] technology underlying the patent" in a forum, and

16   actions "targeting business activities in the forum state" based on a patent.  *Id.* at 1155-56.  In *Elecs.*

17   *for Imaging, Inc. v. Coyle*, for example, the parties signed nondisclosure agreements and the

18   defendant repeatedly telephoned the resident-plaintiff in California "regarding the subject matter

19   of the technology covered by [a] patent application," while the defendant's attorney "contacted [the

20   plaintiff] at various times to report on the progress of the pending [patent] application."  340 F.3d

21   1344, 1351 (Fed. Cir. 2003).  The Federal Circuit found these blended business and patent

22   discussions arose out of and related to the plaintiff's claims, even though the defendant called from

23   out of state, and even though the patent had yet to issue at the time of these negotiations.  *Id.*  Here,

24   AGIS likewise leveraged its patents in an attempt to either license or sell its technology, or enter

25   into a joint venture or other business partnership with Google, a California resident.  FAC ¶¶113-

26   122.  AGIS also likewise signed a nondisclosure agreement as part of its business and patent

27   discussions with Google, with AGIS expressly consenting to venue in Santa Clara county.  *Id.*

28   ¶¶116, 156.  AGIS's activities thus relate to Google's patent claims.

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

Indeed, in the *Google AGIS I* litigation, AGIS relied on each and every one of those pre-suit communications described above as alleged evidence that AGIS put Google "on notice of its infringement" of the '970 Patent.  *Google AGIS I*, ECF 454-2 at 24-25.  AGIS cannot have it both ways and contend here that those many communications with Google in California should be ignored for personal jurisdiction.[2]

The many pre-suit communications that AGIS has itself alleged to have had with Google since 2008 about its patents, LifeRing, and alleged infringement by FMD take this case well beyond the *Avocent*, *Radio Systems*, and *DocuSign* cases cited by AGIS.  ECF 44 ("Mot.") at 10-11.  AGIS contends that those cases rejected personal jurisdiction based on "enforcement activities taking place outside the forum state," or sending just a "single pre-suit email."  *Id*.  But here, AGIS has done materially more than that by directing numerous pre-suit enforcement and licensing activities at Google and its customers for over a decade.  Moreover, AGIS misconstrues *Avocent*, *Radio Systems*, and *DocuSign*—the Federal Circuit in *Trimble* explained "communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction," even if the communications originate "from outside the forum."  997 F.3d at 1155.  AGIS has engaged in precisely such communications in a repeated, continuous manner over many years.

## 2.    AGIS's Contacts With Third Parties Establish Personal Jurisdiction

AGIS's alleged contacts with Google alone are sufficient to confer personal jurisdiction.  AGIS has further engaged in numerous patent licensing efforts with other NDCA companies that also support personal jurisdiction, because to establish minimum contacts, licensing activities "need not be directed at the declaratory judgment plaintiff who is a resident of the forum."  *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1097 (N.D. Cal. 2013).

All three AGIS entities have collectively negotiated and licensed AGIS's patents to numerous companies headquartered in the NDCA, including Apple, WhatsApp and Facebook,

---

[2] Google does not agree that AGIS's alleged pre-suit contacts provided notice of Google's alleged infringement of the '970 Patent.  For example, unlike for pre-suit notice and willfulness, activities predating a patent's issuance may "relate to" a cause of action on that patent for the purposes of personal jurisdiction over a declaratory judgment defendant.  *Elecs. for Imaging*, 340 F.3d at 1351.

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1   Uber, and Life360.  FAC ¶¶70-73, 91-99, 124-127.  Contrary to AGIS's assertions, AGIS's contacts

2   with these NDCA companies were not limited to "out-of-state enforcement actions," but also

3   included in-state, pre-suit letters to California-based Facebook and Life360 in 2014.  *Id.* ¶110.

4   Notably, after AGIS, Inc. filed suit against Life360, Life360 filed a declaratory judgment action in

5   this District.  In that action, this Court denied AGIS, Inc.'s motion to dismiss for lack of personal

6   jurisdiction, citing AGIS, Inc.'s extensive business activities in California.  *Life360, Inc. v. AGIS,*

7   *Inc.*, 2015 WL 5612008, at *8 (N.D. Cal. Sept. 21, 2015).  The Court's finding of personal

8   jurisdiction over AGIS Inc. in *Life360* further supports finding personal jurisdiction over all three

9   AGIS entities here, because, as discussed above, they are all alter egos of each other.

10       AGIS's extensive contacts with companies in this District make this case analogous to the

11   facts in *Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, where the Federal Circuit held

12   personal jurisdiction over a patent licensing entity that "has charged infringement and threatened

13   litigation against numerous banks residing and conducting business in the Northern District [of

14   Texas]," where the declaratory judgment action was brought.  910 F.3d 1199, 1206 (Fed. Cir. 2018).

15   Similarly, the Federal Circuit in *Trimble* found that minimum contacts were "easily satisfied" by a

16   series of communications by an out-of-state entity to a state resident over three months.  997 F.3d

17   at 1156.  Here, AGIS has engaged in a concerted patent licensing campaign aimed at Google,

18   Google's customers using Google software, and many other NDCA companies over several years.

19       **D.**       **AGIS Has Consented To Jurisdiction In The Northern District Of California**

20       Personal jurisdiction is proper over AGIS for another distinct reason—AGIS has twice

21   taken affirmative steps to consent to jurisdiction in this District.

22       First, as part of its business negotiations with Google in 2011-2012, AGIS entered into a

23   nondisclosure agreement that specifically identified Santa Clara in this District as the venue for

24   resolving disputes.  FAC ¶¶116, 156.  AGIS thus knowingly subjected itself to jurisdiction in the

25   NDCA for any issues relating to the parties' negotiations, where AGIS leveraged its patent

26   portfolio.  In *Google Inc. v. Eolas Techs. Inc.*, the court found personal jurisdiction over a defendant

27   that, among other things, entered into an exclusive license agreement consenting to California law.

28   2014 WL 2916621, at *2-3 (N.D. Cal. June 4, 2014).  Here, AGIS consented not merely to

11

California law; it specifically agreed to *venue* in the NDCA.  Moreover, the agreement here is directly between AGIS and Google, not the defendant and a third party, as in *Eolas*.  As the Supreme Court has explained, a party may give "express or implied consent to the personal jurisdiction of the court" through a "freely negotiated" agreement.  *Burger King*, 471 U.S. at 472 n.14.

Second, AGIS consented to transfer to this District its WDTX Case, in which it asserted the '970 Patent against Google and FMD, the very same patent, party, and product at issue in this case. FAC ¶159.  This District has confirmed personal jurisdiction is appropriately found over a party that "stipulat[ed] to transfer" lawsuits to this District.  *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 962–63 (N.D. Cal. 2020).

**E.    The Exercise Of Personal Jurisdiction Is Fair**

Having shown minimum contacts, the burden shifts to the defendant to show that exercising personal jurisdiction is not "reasonable and fair."  *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1363 (Fed. Cir. 2001).  In evaluating fairness, the "primary concern" is assessing "the burden on the defendant." *Trimble*, 997 F.3d at 1157.  Here, there is no unfair burden on AGIS, given its decade-plus history of patent licensing and business development in this District and the many cases AGIS has litigated before this very Court.

First, AGIS has alleged an extensive history of pre-suit interactions with Google to argue that Google had pre-suit knowledge of the '970 Patent and alleged infringement.  *Supra* § IV.C.1. Considering these same contacts for personal jurisdiction is not unfair.   To the contrary, disregarding such contacts would be unfair *to Google*.

Second, AGIS's engagement with Google and this District did not cease after it sued Google.  AGIS consented to transfer its WDTX Case to this District, showing its willingness to litigate here.  FAC ¶¶157-159.  AGIS has also "continued to prosecute its lawsuits in this district" through the *Google AGIS I* lawsuits since mid-2022, a factor which favors exercising personal jurisdiction. *VoIP-Pal.com*, 506 F. Supp. 3d at 962–63.  In addition, AGIS has stipulated to mediate its disputes with Google in *Google AGIS I* before Jeff Kichaven, a California-based mediator, and it further consented to in-person mediation in Menlo Park, California, in this District.  FAC ¶66. AGIS's willingness to negotiate and litigate here confirms that this Court's exercise of jurisdiction

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1    over AGIS is fair and not burdensome.

2          Third, AGIS, Inc.'s long-standing efforts to market and sell in California its LifeRing

3    product—which practices the '970 Patent, according to AGIS—leave no doubt that AGIS is not

4    unfairly burdened.  As detailed in the FAC, AGIS, Inc. repeatedly marketed and demonstrated its

5    LifeRing product in California and to California companies, including to ADI Technology, Maven

6    Consulting, CornerTurn LLC, Integrity Applications, and American Reliance, Inc., among others.

7    *Id*. ¶¶108-156.  AGIS also entered into a "strategic partnership" with California-based Green Hills

8    Software, Inc. *Id.* ¶¶138-144.  These activities further establish personal jurisdiction under *Trimble*,

9    which held that "physically entering the forum to demonstrate the technology underlying the

10   patent" constitutes relevant contacts.  997 F.3d at 1155.

11         Given AGIS's extensive contacts with California, it is fair and reasonable to exercise

12   personal jurisdiction over AGIS.

13         **F.     In The Alternative, Google Requests Jurisdictional Discovery**

14         Google has made a prima facie case that jurisdiction exists.  If the Court disagrees, Google

15   respectfully requests that the Court stay this motion for 90 days so that Google may conduct limited

16   jurisdictional discovery consisting of five interrogatories and two four-hour depositions.  A request

17   for jurisdictional discovery should be granted when "the jurisdictional facts are contested or more

18   facts are needed."  *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).  Thus, "a

19   plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain

20   jurisdictional discovery," but merely needs to present a "'colorable basis' for jurisdiction." *Ross v.

21   Abbott Vascular Inc.*, 2020 WL 4934487, at *7 (N.D. Cal. Apr. 6, 2020).  The Court previously

22   granted Lyft's motion for similar jurisdictional discovery in response to AGIS's motion to dismiss.

23   *Lyft, Inc. v. AGIS Software Dev. LLC*, No. 21-cv-04653-BLF, ECF 61 (N.D. Cal. Jan. 28, 2022).

24   **IV.   CLAIM PRECLUSION AND THE *KESSLER* DOCTRINE (COUNT III)**

25         **A.     Legal Standards For Claim Preclusion And The *Kessler* Doctrine**

26         Claim preclusion bars re-litigation of a claim for relief (also sometimes referred to as a

27   "cause of action") ended by either the court's judgment or parties' consent.  *Nystrom v. Trex Co.*,

28   580 F.3d 1281, 1284-85 (Fed. Cir. 2009).  Claim preclusion applies when: "(1) the same parties, or

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1   their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim

2   or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment

3   on the merits." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (quoting Ninth

4   Circuit standard).  Closely related to claim preclusion is the *Kessler* doctrine that grants a "limited

5   trade right" attaching to the product previously accused of infringement itself and that may bar suit

6   against the same accused infringer and product from the prior litigation.  *Brain Life, LLC v. Elekta*

7   *Inc.*, 746 F.3d 1045, 1057 (Fed. Cir. 2014).

8       **B.    Google Has Sufficiently Pleaded Claim Preclusion And The *Kessler* Doctrine**

9       Claim preclusion and the *Kessler* doctrine each independently bar AGIS from asserting a

10  claim for alleged infringement of the '970 Patent against Google and FMD because AGIS has twice

11  voluntarily dismissed under Fed. R. Civ. P. 41 prior actions asserting the same such claim.  AGIS

12  first stipulated to dismiss, and this Court then dismissed with prejudice, AGIS's allegations in

13  *Google AGIS I* based on the original claims of the '970 Patent.  ECF 437, 438.  Because that

14  dismissal was with prejudice, it operates as a dismissal on the merits and bars all further suits based

15  on the same claim for relief—i.e., alleged infringement of the '970 Patent by FMD.

16      AGIS then also dismissed the WDTX Case, in which AGIS asserted the amended claims of

17  the '970 Patent against Google and FMD.  WDTX Case, ECF 1 ¶¶1, 14, 22.  There, AGIS filed a

18  notice of voluntary dismissal pursuant to Rule 41(a)(1).  *Id.*, ECF 12.  Although AGIS purported

19  to dismiss that action without prejudice, Fed. R. Civ. P. 41(a)(1)(B) states that "if the plaintiff

20  previously dismissed any federal- or state-court action based on or including the same claim, a

21  notice of dismissal operates as an adjudication on the merits."  Courts have confirmed that under

22  this language of Rule 41(a)(1)(B), a second dismissal of the same claim without prejudice is "an

23  adjudication on the merits" that effectively operates as a dismissal with prejudice.  *Realtime*

24  *Adaptive Streaming LLC v. Netflix, Inc.*, 41 F.4th 1372, 1381 (Fed. Cir. 2022).  Thus, AGIS's

25  second dismissal bars AGIS from again asserting infringement of the '970 Patent against FMD,

26  under both claim preclusion and the *Kessler* doctrine.

27      AGIS contests Google's preclusion claims on three grounds, each of which fails.  First,

28  AGIS contends that the *Google AGIS I* case concerned the original claims of the '970 Patent,

14

whereas the second WDTX Case involved the amended claims and thus presented a different claim for relief.  But the Federal Circuit has twice held that reexamination amendments to patent claims do not create new claims for relief when the amended claims are not "materially different" from the original claims.  *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014); *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012).  As the Federal Circuit also explained in those cases, amended claims are ***not*** "materially different" if they only add limitations to the original claims to overcome prior art—thus, an action based on such amended patent claims constitutes the same claim for relief as, and is therefore precluded by, a prior unsuccessful case based on the original patent claims.  *Senju*, 746 F.3d at 1350-54; *Aspex*, 672 F.3d at 1340-42.  Like in *Senju* and *Aspex*, AGIS's reexamination amendments to the '970 Patent claims added limitations to the original claims only to overcome prior art.  FAC ¶¶ 192-194.  The '970 Patent's amended claims, therefore, are not "materially different" from the original claims asserted in *Google AGIS I* and present the same claim for relief.

AGIS correctly notes that Google argued in a Rule 12 motion to dismiss for lack of subject matter jurisdiction in *Google AGIS I* that the '970 Patent's amended claims are "substantively changed" from the original claims, but it incorrectly contends that Google's motion contradicts its position here for preclusion.  Mot. at 17.  AGIS ignores that the legal standards for subject matter jurisdiction and claim preclusion are different—amendments may result in "substantively changed" claims for subject matter jurisdiction without being "materially different" for claim preclusion.  For jurisdiction, the Federal Circuit has held that under the reexamination statute, if an "original claim is cancelled or ***amended to cure invalidity***, the patentee's cause of action is extinguished and the suit fails."  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1337-40 (Fed. Cir. 2013) (emphasis added).  Thus, amendments made to cure invalidity—such as to overcome prior art— result in "substantively changed" claims.  *See, e.g.*, *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998) (finding reexamination claims "substantively" changed where they were amended to overcome a prior rejection, and remarking that "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment").  For preclusion, by contrast, as the Federal Circuit held

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1   in *Senju* and *Aspex*, amendments narrowing original claims to overcome prior art are not "material

2   changes" that create a new claim for relief.  746 F.3d at 1350-54; 672 F.3d at 1340-42.

3       AGIS's reliance on *Target Training Int'l v. Extended Disc N. Am.*, 645 F. App'x 1018 (Fed.

4   Cir. 2016), is inapposite.  In *Target*, the court determined the reexamination claims were "materially

5   different" because they were ***entirely new*** and all the original claims were ***canceled***.  *Id.* at 1021.

6   Here, by contrast, the re-examined '970 Patent has no entirely new claims; instead, the original

7   claims were ***amended*** to add limitations to overcome prior art, just like in *Senju* and *Aspex*.

8       Second, AGIS contends that the first dismissal of the '970 Patent, in *Google AGIS I*, was

9   for lack of jurisdiction, not on the merits, and claim preclusion only applies to a final judgment on

10  the merits.  Although AGIS is now conceding that this Court lacked jurisdiction over the original

11  claims of the '970 Patent in *Google AGIS I*, AGIS did not concede that point in *Google AGIS I*

12  when it dismissed the '970 Patent voluntarily.  In any event, the decisive factor for applying

13  preclusion is "the nature of the dismissal (with prejudice) and not the basis for it (lack of

14  jurisdiction)."  *Stragent, LLC v. BMW of N. Am., LLC*, 2021 WL 1147468, at *4 (D. Del. Mar. 25,

15  2021).  A "voluntary dismissal with prejudice . . . constitut[es] an adjudication on the merits for

16  claim-preclusion purposes."  *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d

17  1367, 1372 (Fed. Cir. 2013); *see also Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1230 (Fed.

18  Cir. 2006) ("[a] dismissal with prejudice is a judgment on the merits for purposes of claim

19  preclusion").  Because the *Google AGIS I* dismissal was with prejudice, that dismissal operates as

20  a judgment on the merits with preclusive effect, irrespective of AGIS's alleged reasons for its

21  voluntary dismissal.  *Google AGIS I*, ECF 438 at 1.

22      AGIS again misapplies *Target*, claiming that a dismissal of pre-examination patent claims

23  for lack of jurisdiction is not a merits decision.  In *Target*, the court explained that the dismissal

24  was for mootness and did not "specify whether it was dismissing with or without prejudice."  645

25  F. App'x at 1021-22; Ex. A.  In contrast, this Court specifically dismissed AGIS's '970 Patent

26  claims "with prejudice," as AGIS voluntarily requested, and not for mootness or for lack of

27  jurisdiction.  *Google AGIS I*, ECF 438 at 1; *see also Stragent*, 2021 WL 1147468, at *4 & n.6

28  (holding there was a final judgment on the merits because prior dismissals with prejudice "were a

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1    result of Plaintiff's voluntary concession" even though jurisdictional challenges had been raised).

2           Third, AGIS states that a footnote in the *Google AGIS I* dismissal order excluded the

3    amended '970 Patent claims from dismissal.  But the footnote did not **expressly reserve** AGIS's

4    right to assert the amended claims in the future.  *Google AGIS I*, ECF 438 at 1 n.1.  This is critical

5    because under the Federal Circuit's holding in *Pactiv*, such an "express reservation" in a dismissal

6    order is required to overcome normal rules of claim preclusion.  449 F.3d at 1231.  Like the plaintiff

7    in *Pactiv*, AGIS "has the standard backwards":  "The question is not whether the [*Google AGIS I*

8    dismissal order] precluded [AGIS] from future litigation; the question is whether the [order]

9    **expressly permitted** [AGIS] to participate in future litigation."  *Id.*  The dicta that AGIS cites from

10   *In re PersonalWeb Techs. LLC* does not suggest otherwise; instead, *PersonalWeb* held that the

11   plaintiff's claims were barred by the *Kessler* doctrine, while remarking that "settling parties" can,

12   in theory, limit the scope of any dismissal.  961 F.3d 1365, 1379 (Fed. Cir. 2020).  Nothing in

13   *PersonalWeb* suggests the scope of claims not dismissed is necessarily preserved for future

14   assertion, as it is up to the plaintiff to "fram[e] the dismissal agreement to preserve any such [future]

15   rights," and to make clear "the downstream effect of the dismissal."  *Id.*

16          The *Google AGIS I* dismissal order precludes AGIS from asserting the '970 Patent against

17   FMD again in this case, as does AGIS's later dismissal of the WDTX Case pursuant to Rule

18   41(a)(1)(B).  Thus, Google sufficiently pleads claim preclusion and *Kessler* doctrine claims.

19   **V.**      **INEQUITABLE CONDUCT (COUNT IV)**

20           **A.**      **Legal Standard Governing Inequitable Conduct**

21          "[I]nequitable conduct[ ] . . . must be [pleaded] with particularity under Rule 9(b)."  *Exergen*

22   *Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).  Pleadings for inequitable

23   conduct must allege "facts from which a court may reasonably infer that a specific individual (1)

24   knew of the withheld material information or of the falsity of the material misrepresentation, and

25   (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Id.* at

26   1328-29.  Withheld information is "but-for material if the PTO would not have allowed a claim had

27   it been aware of the undisclosed" information.  *E.g.*, *Regeneron Pharm., Inc. v. Merus N.V.*, 864

28   F.3d 1343, 1350 (Fed. Cir. 2017).

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1

## B.    Google Has Sufficiently Pleaded Inequitable Conduct

2  In its motion, AGIS omits the basis for Google's inequitable conduct claim:  that AGIS

3  intentionally withheld from the PTO in the '970 Patent reexamination the *Life360* litigation history,

4  including a Federal Circuit decision finding indefiniteness of a related AGIS patent that directly

5  undermines AGIS's claim amendments to the '970 Patent made during that reexamination.

6  Specifically, in *Life360*, the Federal Circuit affirmed a district court's finding of indefiniteness

7  because the means-plus-function term "symbol generator" lacked adequate disclosure of algorithm

8  or structure in the specification of the '728 Patent—a parent to the '970 Patent that is expressly

9  incorporated by reference in the '970 Patent.  FAC ¶227.  The Federal Circuit found, for example,

10  that the '728 Patent's specification at 8:45-50 did not disclose any algorithm corresponding to the

11  function of the "symbol generator," i.e., to "generate symbols that represent each of the

12  participants' cell phones in the communication network on the display screen."  *Id*. ¶¶232-233.

13  Despite the *Life360* indefiniteness ruling, during reexamination of the '970 Patent, AGIS

14  proposed an amendment to add a means-plus-function term, "means for presenting," with nearly

15  the same function as the "symbol generator," namely, "presenting a recipient symbol on the

16  geographical map corresponding to a correct geographical location of the recipient PDA/cell

17  phone."  *Id*. ¶220.  AGIS further "indicated that the corresponding structure" for the new claims

18  was "found in the '728 patent, incorporated by reference into the '970 patent."  *Id*. ¶¶220-221.

19  AGIS, however, did not disclose the litigation history of the '728 Patent, including the Federal

20  Circuit's finding that the '728 Patent specification failed to disclose a structure or algorithm for

21  performing essentially the same function for the "symbol generator" term.  *Id*. ¶231.

22  AGIS disputes none of these facts.  Rather, AGIS contests only whether Google has

23  adequately pleaded that the *Life360* indefiniteness ruling was "material" to the patentability of the

24  '970 Patent's amended claims, given that "symbol generator" and "means for presenting" are

25  different terms recited in different patents.  But Google's FAC has pleaded materiality in exhaustive

26  detail, including explaining why the putative differences between the two terms are superficial in

27  light of AGIS's own admissions and the reexamination record.  *Id*. ¶¶206-233.  First, AGIS has

28  itself described the function of the "symbol generator" in the '728 Patent as being the same as the

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1    function of the "means for presenting" in the '970 Patent—i.e., both terms are directed to displaying

2    symbols of other devices on a correct location on a map.  *Id*. ¶229.  Second, during reexamination,

3    the examiner twice stated that the alleged specification support for the "means for presenting a

4    recipient symbol" limitation was at 5:28-44 in the '970 Patent, which is essentially identical to the

5    portion of the '728 Patent at 8:45-50 that the Federal Circuit found not to disclose a structure at all,

6    let alone a structure for the "symbol generator" limitation.  *Id*. ¶¶212, 218, 232-233.

7         Given the similarities between the "symbol generator" and "means for presenting" (as

8    admitted by AGIS and found by the PTO), Google has pleaded a prima facie case that the *Life360*

9    indefiniteness findings are material to the validity of the '970 Patent's claims.  Indeed, courts have

10   found previous litigation can be material to patentability where it involved related patents and only

11   ***allegations*** of invalidity.  *Natera, Inc. v. Genosity Inc.*, 2022 WL 767602, at *4-6 (D. Del. Mar. 14,

12   2022) (denying motion to dismiss inequitable conduct defense that alleged that the inventor

13   intended to deceive PTO by failing to disclose documents from earlier litigation involving

14   allegations that claims in a related patent were invalid under § 112); *see also Nilssen v. Osram*

15   *Sylvania, Inc.*, 504 F.3d 1223, 1234 (Fed. Cir. 2007) ("[T]he existence of the litigation itself is

16   material information that an examiner needs to have.").

17        Ultimately, AGIS's disagreements about differences in claim language go to disputes over

18   claim construction and the ***merits*** of the inequitable conduct claim and, thus, do not support

19   dismissal at the pleading stage.  *Graphics Properties Holdings, Inc. v. Google, Inc.*, 2014 WL

20   6629021, at *2 (D. Del. Nov. 20, 2014) (granting motion to add inequitable conduct as a defense

21   and holding that "[w]hile it is true these are different claim terms, they are at minimum related, and

22   any differences between them do not render Defendant's inequitable conduct claims futile").

23   AGIS's motion to dismiss Google's inequitable conduct claim should be denied.

24   **VI.     UNCLEAN HANDS (COUNT V)**

25        **A.     Legal Standard Governing Unclean Hands**

26        The doctrine of unclean hands "closes the doors of a court of equity to one tainted with

27   inequitableness or bad faith relative to the matter in which he seeks relief."  *Gilead Scis., Inc. v.*

28   *Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018). Courts have applied the doctrine of unclean

hands when, like here, the patent owner used confidential information about an accused infringer's products obtained from litigation for filing and prosecuting patent claims reading on those products. *E.g.*, *Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, 2022 WL 11819975, at \*4 (D. Del. Oct. 20, 2022); *Jazz Pharms., Inc. v. Roxane Lab'ys, Inc.*, 2013 WL 6858765, at \*6 (D.N.J. Dec. 30, 2013).

### B.   Google Has Sufficiently Pleaded Unclean Hands

Google's unclean hands claim is based on AGIS's litigation attorneys' blatant disregard of the prohibitions in the Protective Order in *Google AGIS I*.  In that case, AGIS's litigation attorneys (Vincent Rubino and Enrique Iturralde) at Fabricant LLP reviewed highly confidential documents and source code for FMD in the district court case, but then participated in amending the claims of the '970 Patent during reexamination proceedings to read on FMD.  FAC ¶¶259-267.  In particular, Messrs. Rubino and Iturralde participated in interviews with U.S. Patent Office examiners where claim amendments for the '970 Patent were discussed.  *Id.* ¶¶259, 265-266.  Their participation plainly violated the prosecution bar of the *Google AGIS I* Protective Order, which barred AGIS's litigation counsel from "directly or indirectly, advis[ing], consult[ing], or participat[ing]" in any claim amendments in U.S. Patent Office proceedings.  *Id.* ¶262.  The prosecution bar's prohibition is broad in scope, precluding not only direct involvement with drafting and filing amended claims, but also precluding any "indirect" consultation or participation in claim amendments.

AGIS attempts to circumvent the prosecution bar by characterizing the Fabricant attorneys as silent observers at the examiner interviews, while also asserting that a separate attorney from another firm, Mr. Zhong, "submitted the amendments to the PTO" and "alone argued for the allowance of the amended claims to the Examiners."  Mot. at 20.  But the PTO's interview summaries contradict AGIS's contention that Mr. Zhong alone discussed the amended claims.  The summaries identify Fabricant attorneys Rubino and Iturralde as present in those interviews and expressly notes that AGIS "representative**s**"—i.e., more than one representative, so not Mr. Zhong alone—specifically discussed the claim amendments.  FAC ¶265.  Mr. Iturralde then participated in another examiner interview on September 13, 2021, when the sole item on the agenda was "entry of proposed amendments to claims 14-15 and new claims 16-21."  *Id.* ¶266.

At any rate, AGIS's arguments again go to the merits of Google's claim, not to any alleged

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

deficiency in Google's pleading.  At the pleading stage, the question for the Court is whether Google's assertions, "when accepted as true," demonstrate unclean hands.  *Finjan, Inc. v. Juniper Network, Inc.*, 2018 WL 4181905, at *6 (N.D. Cal. Aug. 31, 2018).  At a minimum, Messrs. Rubino and Iturralde's participation in interviews about claim amendments permits a reasonable inference that they violated the Protective Order.

AGIS's remaining arguments also fail.  *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, cited by AGIS, is inapposite—that case did not involve breach of a prosecution bar or other provision preventing prosecution.  2017 WL 275465, at *10 (E.D. Tex. Jan. 20, 2017) (rejecting Eli Lilly's reliance on disclosure requirements of a third-party scientific journal as a basis for unclean hands).  Finally, AGIS's allegation that Google "dropp[ed] their inquiry" into AGIS's misconduct (Mot. at 21) is simply wrong.  Google pleaded and moved for discovery (including subpoenas to Fabricant LLP) on unclean hands in the ITC Action, before AGIS voluntarily dismissed that action, and Google's counsel is currently pursuing unclean hands and the same discovery in the pending Samsung EDTX Action.  Google has pleaded facts that, accepted as true, demonstrate unclean hands based on the prosecution and amendment of the '970 Patent claims.

## VII.    THIS CASE SHOULD NOT BE TRANSFERRED TO THE EDTX

AGIS's alternative motion to transfer should be denied for two reasons:  (1) AGIS fails to meet its burden to show that Google could have filed this declaratory judgment action against all three AGIS entities in the EDTX, and (2) the transfer factors clearly weigh against transfer. Notably, the Federal Circuit already transferred this very dispute between AGIS and Google regarding the '970 Patent from the EDTX to the NDCA, in *Google AGIS I.  Google*, 2022 WL 1613192, at *5.  And this Court denied AGIS's similar attempt to transfer Lyft's declaratory judgment action to the EDTX.  *Lyft, Inc. v. AGIS Software Dev. LLC*, 2022 WL 767616, at *1 (N.D. Cal. Mar. 14, 2022).  AGIS's current attempt to have this dispute resolved in the EDTX only fares worse than its previous attempts, given this Court's experience with *Google AGIS I* since 2022.

### A.    Legal Standard Governing Transfer

A court may transfer a case in the interest of justice for the convenience of the parties and witnesses.  28 U.S.C. § 1404(a).  It first determines whether the case could have been brought in

the transferee forum.  *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013).  If so, it considers eight private and public interest factors.  *Lyft*, 2022 WL 767616, at *2.

### B.      AGIS Fails To Show This Suit Could Have Been Brought In The EDTX

AGIS's transfer motion should be denied because AGIS fails to meet its burden to show that Google could have sued all three AGIS entities in the EDTX.  "[I]n an action involving multiple defendants[,] venue and jurisdiction requirements must be met as to each defendant." *Magnacoustics, Inc. v. Resonance Tech. Co.*, 132 F.3d 49 (Table), at *1 (Fed. Cir. 1997).  AGIS's motion argues only that AGIS Software could have been sued in the EDTX, while failing even to mention AGIS, Inc. or AGIS Holdings, both Florida corporations.  Mot. at 21-22.  AGIS cannot have it both ways—if the AGIS entities should be treated as three separate entities, as AGIS argues in attempting to avoid the jurisdiction of this Court (a position that fails for the reasons provided above), then AGIS must show that each entity could have been sued in EDTX.  Because AGIS does not even attempt to meet that burden, its motion should be denied on that basis alone.  The motion should independently be denied because the factors weigh strongly against transfer.

### C.      The EDTX Is Not More Convenient Than The NDCA

#### 1.      Google's Choice Of Forum Weighs Strongly Against Transfer

Just as this Court gave "substantial weight" to Lyft's choice of forum, *Lyft*, 2022 WL 767616, at *3 (citing cases), Google's choice of forum in this District also is entitled to "substantial weight" because it is Google's home forum and where the accused products were developed. AGIS's only retort is to accuse Google of misrepresenting the location of sources of proof, without any explanation or support.  AGIS's accusation is false and irrelevant to this factor.

#### 2.      Convenience Of Witnesses Weighs Strongly Against Transfer

This factor weighs strongly against transfer because three relevant Google witnesses and ten prior art witnesses are located in California, as shown in the table below, which also identifies other relevant Google witnesses knowledgeable about FMD.  Google Decl. ¶¶2-3; Exs. B-L.

| Witness | Location | Title / Relevance |
| --- | --- | --- |
| Shambavi Krishnamurthi | San Francisco Bay Area | Google Product Manager for FMD |
| Ronald Ho | San Francisco Bay Area | Google Product Manager (on FMD |

| | | team from Nov. 2021 to July 2023) |
|---|---|---|
| William Luh | San Francisco Bay Area | Google Product Manager (on FMD team from Nov. 2021 to July 2023) |
| Jonathan Brunsman | Boulder, Colorado since April 2022 | Google Software Engineer (on FMD team through 2020) |
| Sorin Dinu | London, United Kingdom | Google Software Engineer (on FMD team from June 2019 to Sept. 2023) |
| David Lazarov | Tel Aviv, Israel | Google Software Engineer for FMD |
| Neil Siegel | Rancho Palos Verdes CA (near Los Angeles) | Inventor of Force XII Battle Command, Brigade and Below ("FBCB2") |
| Richard Haney | Union City, CA | Inventor of US 7,353,034 ("Haney") |
| Scott Forstall Imran Chaudhri Marcel Van Os Stephen Lemay Patrick Coffman Elizabeth Furches Gregory Christie Michael Matas | San Francisco Bay Area | Inventors of US 7,975,242 ("Forstall") |

By contrast, AGIS does not identify a single fact witness in Texas.  Instead, AGIS argues that technical experts, whom AGIS hired for its other litigations, are located in Texas.  Mot. at 23-24.  Even assuming AGIS hires those same experts for this case, this Court already explained to AGIS that "[e]xpert witnesses do not weigh heavily in the § 1404 inquiry."  *Lyft*, 2022 WL 767616, at *6.  This factor is neutral for AGIS's party witnesses, such as Mr. Beyer in Florida, who "will be required to travel for a significant amount of time regardless of whether or not the case is transferred."  *Id.* at *4.  Finally, former AGIS, Inc. employee Eric Armstrong is irrelevant, as the Federal Circuit has already concluded that he "appears to have disclaimed material knowledge of those products before the applicable priority dates."  *Google*, 2022 WL 1613192, at *3.

Thus, this factor weighs heavily against transfer because at least six relevant witnesses are in this District and none is in the EDTX.  *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021) ("with nothing on the other side of the ledger, the factor strongly favors" the venue where more witnesses are located).

### 3.     Access To Sources Of Proof Weighs Strongly Against Transfer

This factor weighs strongly against transfer because evidence related to FMD, the accused

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1   Google devices that run FMD, and prior art are in the possession of Google or third parties in the

2   NDCA.   In patent cases, "the bulk of the relevant evidence usually comes from the accused

3   infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

4   In *Google AGIS I*, the Federal Circuit similarly held that the location of sources of proof for

5   Google's accused software, including FMD, strongly favored the NDCA.  2022 WL 1613192, at

6   *3.  The facts have not changed materially since then.  Documents for FMD continue to be created

7   and maintained in the NDCA.  Google Decl. ¶4.  Although some of FMD's development has shifted

8   from the NDCA to London and Israel, the London team's work has focused on backend server

9   functionality of FMD, not the frontend user interface features that are the focus of AGIS's

10   infringement theories.  *Id.* ¶3.d.  In any event, London is far from both this District and the EDTX

11   and is thus neutral.  *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021).  The same

12   is true of the Google engineers in Israel whose changes to FMD to date have been limited to minor

13   user interface updates that do not change FMD's functionality.  Google Decl. ¶3.e.

14   Further, prior art documents are in the NDCA.  Google identified ten prior art authors

15   located in California, including one in the NDCA.  They may have documents relating to their prior

16   art references, such as the FBCB2 prior art system developed by Neil Siegel.  *See* § VIII.C.2.

17   While AGIS points to its Marshall office, where it stores patent-related documents and

18   corporate records, the Federal Circuit already dismissed that office and those documents as serving

19   "no meaningful purpose[] . . . except to attempt to establish a presence for forum selection for

20   patent cases." *Google*, 2022 WL 1613192, at *4.  As the Federal Circuit held, AGIS Software and

21   its Marshall office were formed only weeks before it filed its first wave of patent litigations in 2017.

22   *Id.*   This factor weighs strongly against transfer.

23   **4.      Judicial Economy Weighs Strongly Against Transfer**

24   Judicial economy strongly favors keeping this case in the NDCA, where *Google AGIS I* has

25   now been pending for 18 months before this Court.  Indeed, the Court recently issued a summary

26   judgment order on patents related to the '970 Patent and made findings of non-infringement for

27   FMD, evidencing the Court's familiarity with AGIS's patents and FMD.  *Google AGIS I*, ECF 470.

28   While AGIS identifies work previously done in the EDTX as part of *Google AGIS I* and in

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1    the pending Samsung EDTX Action, those facts should be given no weight.  The work done in

2    *Google AGIS I* was completed before the Federal Circuit granted mandamus relief, concluding that

3    the case never should have proceeded there to begin with and ordering transfer to this District.

4    2022 WL 1613192, at *5.  As for the Samsung EDTX Action, AGIS's original complaint against

5    Samsung did not accuse FMD; instead, those allegations were added only recently in August 2023.

6    *Id.*, ECF 115.  Since then, Samsung has moved to sever and transfer to this District the '970 Patent

7    allegations against FMD—allegations identical to those the Federal Circuit transferred in *Google*

8    *AGIS I*—and that motion remains pending.  *Id.*, ECF 117.  Given that those newly-added claims

9    accusing FMD are subject to a pending transfer motion, their consideration should be discounted

10   in the analysis here.  *In re Google Inc.*, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) (holding

11   court erred by finding judicial economy factor favored the forum with co-pending related cases,

12   while ignoring co-pending transfer motions and their merits).

13                    **5.      Remaining Factors Weigh Against Transfer Or Are Neutral**

14          This District has a strong local interest in resolving this dispute about its resident, Google,

15   because the accused FMD product was developed in the NDCA and its overall strategy continues

16   to be handled by Google employees in the NDCA.  By contrast, AGIS Software's presence in the

17   EDTX "serve[s] no meaningful purpose" and its "minimal presence, apparently tied to filing suit

18   in the [EDTX] where no AGIS employees usually work, is insufficient to establish a comparable

19   interest" there.  *Google*, 2022 WL 1613192, at *4.

20          The remaining factors are entitled to little weight or are neutral.  The expeditious-litigation

21   factor is given little weight as it is "most speculative."  *Genentech*, 566 F.3d at 1347.  Familiarity

22   with the applicable law is neutral, as both the NDCA and the EDTX are well versed in patent law,

23   and there is no prospect for conflict of laws.

24   **VIII.   CONCLUSION**

25          For the foregoing reasons, AGIS's motion to dismiss should be denied in its entirety, and

26   this case should not be transferred to the EDTX.

27

28

GOOGLE OPP. TO MTD OR TRANSFER
5:23-CV-03264-BLF

1

Dated:  December 29, 2023

O'MELVENY & MYERS LLP

2

3

By:      /s/ *Darin Snyder*

4

Darin Snyder

5

Darin W. Snyder
Luann L. Simmons

6

Mark Liang
Bill Trac

7

Amy Liang
Sorin Zaharia

8

Daniel Silverman
**O'MELVENY & MYERS LLP**

9

Stacy Yae (S.B. #315663)

10

syae@omm.com
**O'MELVENY & MYERS LLP**

11

400 South Hope Street, 18th Floor
Los Angeles, California 90071

12

Telephone:     +1 213 430 6000

13

Cason Cole (*pro hac vice*)
ccole@omm.com

14

Grant Gibson (*pro hac vice*)
ggibson@omm.com

15

**O'MELVENY & MYERS LLP**
2801 N. Harwood St., Suite 1800

16

Dallas, Texas 75201
Telephone:     +1 972 360 1916

17

*Attorneys for Plaintiff Google LLC*

18

19

20

21

22

23

24

25

26

27

28

26